# ORIGINAL



FILED
LODGED
RECEIVED
**MAIL**

APR 03 2017

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                                    DEPUTY

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| ROBINSON, BARBARA,<br><br>            Plaintiff,<br><br>    vs.<br><br>Defendants<br>WELLS FARGO BANK NATIONAL<br>ASSOCIATION, AS TRUSTEE FOR THE<br>CERTIFICATE HOLDERS OF THE MLMI<br>TRUST, MORTGAGE LOAN ASSET-<br>BACKED CERTIFICATES, SERIES 2005<br>WMC2; MORTGAGE ELECTRONIC<br>REGISTRATION SYSTEMS, INC.;<br>NATIONSTAR MORTGAGE BANK<br>OFAMERICA; JAY BRAY; AZTEC<br>FORECLOSURE CORPORATIONOF<br>WASHINGTON, et al<br>            Defendants. | Case No.  2:17-CV-00061-JLR<br><br>PLAINTIFF'S REQUEST FOR JUDICIAL<br>NOTICE PURSUANT TO FEDERAL<br>RULES OF EVIDENCE RULE 201<br><br>[Filed concurrently with Order Dismissing all<br>Defendants Motions for Dismissal in the Form<br>of an Affidavit with Interrogatories, Motion<br>for Leave to Amend Complaint, and<br>Complaint for FDCPA Violations, Emergency<br>Injunctive and Declaratory Relief to Stay<br>Foreclosure Sale] |

In support of her Motion for Leave to Amend Complaint, and Complaint for FDCPA Violations,

Emergency Injunctive and Declaratory Relief to Stay Foreclosure Sale under Federal Rules of

Evidence Rule 201 (Rule 201), Robinson, Barbara hereinafter "Plaintiff" requests that the court take judicial notice of the following decisions, documents, papers and records pursuant to Rule 201. Under Rule 201, facts appropriate for judicial notice are those "not subject to reasonable dispute in that either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Federal Rules of Evidence 201(b). The Court may take judicial notice of its own records and records of other court cases.

**LIST OF EXHIBITS:**

A – Credit report from Credit Karma.

B – Validation Letter 1.

C – Response and Statements from NationStar.

D – UCC Presentment.

E – USC Validation.

F – Validation Letter 2.

G – Credit Report from Credit Karma

H – FDCPA $1,000 Fine.

I – CFPB Bulletin.

J – UCC Negotiable Instrument

K- Response from WELLS FARGO

L- MERS Non-Disclosure

M- Notice of Special Deposit

N- Notice of Default, Adverse Claim and Injunction

O- 1099 A and OID 2016 and 2017

P- Security Agreement

Q- Mailings to Aztec Foreclosure

R- Notice of Trustees Sale

S- Notice of Appointment of Fiduciary

Respectfully Submitted By Special Deposit,
Barbara Robinson

# EXHIBIT A

# Credit Reports From Credit Karma

# EXHIBIT B

# Validation Letter With Promissory Note

From:    Barbara Ann Robinson
         c/o 13540 SE 159ᵗʰ Place
         Renton, washington republic
         Hereinafter collectively referred to as Claimant

To:      JAY BRAY d/b/a C.E.O.
         NATIONSTAR MORTGAGE
         8950 Cypress Waters Boulevard,
         Coppell, Texas, 75019
         Hereinafter referred to as Respondent


October 21, 2016

VIA: Certified Mail #7016 1370 0000 4868 3367

Re: Loan #~~~~~~~~~ in the amount of $641,791.80, originally dated February 16, 2005.

You are hereby in receipt of notice under the authority of the Fair Debt Collections Practices Act
regarding your above referenced file number that part, or all, of the alleged debt is DISPUTED and
hereby demand validation and verification, in writing, as follows:

1) An authentic signed contract between you and Barbara Ann Robinson showing proof that you and
that person and you are now or were at one time in business together and other supporting
documentation that gave rise to the alleged obligation NATIONSTAR MORTGAGE is claiming owed.

2) An authentic invoice for goods and/or services you provided.

3) Statement, under penalty of perjury that:
a. You are the bonafide party in interest of the contract and will produce said authentic signed contract
(#1 above) for my own and a judge's inspection should there be a trial to contest these matters.
b. The name and address of all persons, corporations, associations, legal firms or any other parties and
entities having an interest in the collection or legal proceedings regarding the alleged debt.
c. As a debt collector you have not purchased evidence of debt and are proceeding with this collection
activity solely in the name of the original contracting party.
d. You know and understand that certain clauses in a contract of adhesion are unenforceable unless the
party to whom the contract is extended could have selectively rejected the clause.
e. You will provide written verification from the stated NATIONSTAR MORTGAGE that you are
authorized to act on their behalf in this debt collection action.
f. You have taken reasonable and prudent diligence to verify that the amount claimed owed is in fact a
legitimate debt prior to instigating this action and making said claims, and that all relevant
correspondence has been reviewed prior to initiating this claim.
g. You will prove that you are the original NATIONSTAR MORTGAGE, if in fact you claim to be, and
that the United States, Federal Reserve nor any other entity besides your organization originated these
funds.

4) Production of the account and general ledger statement showing the full accounting of the alleged
obligation you are attempting to collect from me, signed and sworn by the person responsible for

maintaining these records and having first-hand knowledge as to their accuracy and authenticity, and able to testify under oath to that effect.

5) Under the Truth in Lending Act pursuant to *15 USC §§ 1601-1667j* (full disclosure), I have a right to know who the true party of interest in this transaction is. As such, I am asking you to stipulate whether you are the holder in due course for my promissory note. If you are not the holder, then you admit to being the servicer of this obligation.

6) Please also stipulate for the record whether or not my loan has been securitized, and if so, the name of the REMIC/Trust my loan is bundled with.

7) If my loan has been securitized, then please provide me the pooling and servicing agreement that names my loan as well as any documentation that explicitly gives you the right to service my loan as well as enforce the promissory note in the event of a foreclosure. If you are hiding these facts from my despite my request, then you are hereby notified that you are committing fraud and shall be named in a wrongful foreclosure civil action.

8) Pursuant of RCW 62A.3-501 (b) 2 (1), I am entitled to demand presentation of the negotiable instrument. That demand is hereby ordered. I demand that you present for my visual inspection MY ORIGINAL WET INK SIGNATURE PROMISSORY NOTE This is required to establish your right of enforcement as Holder in Due Course via a chain of assignment as evidenced by the Note. Claiming to be the "the holder in due course" as a statement is insufficient proof of status and is/will be rejected. A photocopy of the documents is insufficient proof as it does not answer the question of who CURRENTLY is the rightful and lawful holder in Due Course.

If you are unable to provide this proof as I have requested within 30 days, then you admit to not being a party of interest and cannot rightfully enforce your claim under RCW 62A.3-301.  If you are unable to provide this proof as I have requested within 30 days, then you admit to not being a party of interest and cannot rightfully enforce your claim under RCW 62A.3-301.

9) Under US Code TITLE 15 > CHAPTER 41 > SUBCHAPTER V > § 1692g part b), this debt is now officially in dispute. By law, all collection activities must cease until this matter is resolved. You are hereby given notice. Blatant disregard for this law is subject to fines by the FTC. You are advised to consult legal counsel on this matter.

10) I am giving you formal notice that failure to respond to this letter through a verified and validated proof of claim within 30 days as I have asked for, point for point will be taken as an <u>administrative default</u>.

<u>Please be advised</u>. <u>A COPY of the said Note nor an Affidavit of Loss or any other forms will not be acceptable.</u>


Please provide me the following:

1.    A statement admitting whether you are the holder in due course or whether you are a servicer.

2.    A statement admitting whether you have sold my note in a pooling and servicing agreement. This is also known as securitization.

3.    The identity of the true holder in due course for my loan. If the loan has been securitized, the name of the REMIC my loan was sold to.

4.    The CUSIP number under which my loan was securitized to.

5.    Make available for visual inspection my original wet ink promissory note (not a photocopy).

Please contact me in writing to arrange for an appropriate point of inspection.

This is my good faith attempt to resolve this matter before I am forced to litigate against your company. I am pleading with you to resolve this matter privately and civilly as to avoid burdening our courts with this matter. If I have to, I will see you in court.

Contacting me again after receipt of this notice without providing procedurally proper validation of the alleged debt constitutes a scheme of fraud by advancing a writing that you know or should know is false, with the intention that the courts and/or others rely on the written communication to impair or damage my credit rating, my reputation, my standing in the community as well as intentionally inflicting financial and emotional harm upon me. I take this notice, and my rights, very seriously and expect NATIONSTAR MORTGAGE to do the same.

In the event that this debt is not validated by you, as required by the Fair Debt Collections Practices Act, you have a legal responsibility to terminate the claim and correct any negative credit reporting which may have been made in connection with this alleged debt. You may want to obtain a legal opinion on this, but I believe that would constitute a scheme of fraud if this debt were to be resold; assuming that NATIONSTAR MORTGAGE has in fact purchased evidence of debt in this matter.

I also will not respond to any future correspondence that is not signed or does not indicate who at your firm has sent the demand for payment.

I expect timely responses to the above confirmations and that they be made in writing and sent via certified mail to the address listed below. Alternately, a letter from your firm that the matter has been satisfied and a copy of the letter you sent to all 3 credit reporting agencies asking them that any adverse credit reporting relating to this transaction to be expunged by these three major credit reporting agencies immediately.

Failure to provide these items shall mean your admission that you have no claim, your agreement not to report negatively to the credit bureaus, and your agreement never to contact me or the person named in your correspondence again.  Included please find a Notice and Demand for Payment in case you are not able to validate the debt your assets will be given a Notice of Lien in the amount and at the interest rate of your invalidated alleged and now illegally collected debt.

By: *Barbara Ann Robinson*

**Barbara Ann Robinson**

Subscribed and declared before me this
21 day of October, 2016

Notary Public
State of Washington
GRICELDA RIOS
My Appointment Expires Oct 28, 2017

From:   Barbara Ann Robinson
        c/o 13540 SE 159th Place
        Renton, washington republic
        Hereinafter collectively referred to as Claimant

To:     JAY BRAY d/b/a C.E.O.
        NATIONSTAR MORTGAGE
        8950 Cypress Waters Boulevard,
        Coppell, Texas, 75019
        Hereinafter referred to as Respondent


November 14, 2016


VIA: Certified Mail # 7016 1370 0000 4868 3633

**Re: Loan #**⬛⬛⬛⬛⬛ in the amount of $641,791.80, originally dated February 16, 2005.


This letter is a follow up letter to the validation request letter previously sent to you via certified mail.

This letter is being sent to you in response to a listing on my credit reports. This notice is sent pursuant to the Fair Debt Collection Practices Act, 15 USC 1692g Sec. 809 (b), that your claim is disputed, that you were required to provide validation, and that you are now in violation of Federal and State law because you did not provide proper validation within the required time frame.

My previous letter to NATIONSTAR MORTGAGE. (hereinafter "Collector") stated that I was disputing the above account and requesting that Collector provide legal validation of the alleged debt. I did not request "verification" or proof of my mailing address, but a request for validation made pursuant to the above named Title and Section. The FDCPA states you must cease collection activity until you have produced validation of the alleged debt, if so requested. As per the Federal Trade Commission, this includes reporting to the credit bureaus, which Collector obviously has done illegally.

By law, Collector must validate the debt and must cease collection activity during the period Collector is validating the alleged debt. At the end of 30 days, NATIONSTAR MORTGAGE must have either provided the required validation or permanently cease collection activity. Additionally, Collector is required by law to notify credit reporting agencies that the account is in dispute.

At this time I will also inform you that if Collector has reported invalidated information to any of the 3 major Credit Bureaus (Equifax, Experian or TransUnion) this action may constitute fraud under both Federal and State Laws. Due to this fact, if any negative mark is found on any of my credit reports by NATIONSTAR MORTGAGE or the client that you represent, I will not hesitate in bringing legal action against you and your client for the following, at a minimum:
1) Violation of the Fair Debt Collection Practices Act
2) Defamation of Character

Collector is surely aware of the consequences in violating the Fair Debt Collection Practices Act as well as the multiple violations for which Collector is now responsible. If not, let me point them out for you:

1. FDCPA § 805. Communication in connection with debt collection [15USC1692c] (c) Ceasing Communication

2. FDCPA § 809. Validation of debts [15 USC 1692g]

3. FDCPA § 813. Civil liability [15 USC 1692k] (a) Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this title with respect to any person is liable to such person in an amount equal to the sum of: (1) any actual damage sustained by such person as a result of such failure; (2) (A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000.

There are local and state laws also that have been violated and you will be held accountable for those violations as well if you do not remove these derogatory tradelines from the 3 credit reporting agencies.

Be advised I have written reports from the major credit reporting agencies that show Collector verified the above account with them during the period in which Collector knew the account was in dispute, and that I had requested validation; and that Collector did not report the account to the agencies as being in dispute.

Collector failed to validate the debt and must now, in accordance with the Fair Debt Collection Practices Act, permanently cease all collection activity related to the above-referenced account.

I am in communication with the three major credit reporting agencies and have copies of my consumer credit files. Collector has not indicated to the credit reporting agencies that this account is in dispute. That is, as I pointed out above, a violation of the FDCPA.

Your failure to respond, on a point by point basis, in writing, hand signed, and in a timely manner, has worked as a waiver to any and all of your claims in this matter, and entitles me to presume that you reported these accounts incorrectly to the credit reporting agencies, and under the doctrine of estoppel by silence, I may presume that no proof of the alleged debt, nor therefore any such debt, in fact exists. I demand that Collector delete any and all information it has reported to Equifax, Experian, TransUnion or any other credit reporting agency within five (5) days of Collector's receipt of this notice; and that I be provided with documentation to show same. To reiterate, all references to this account must be deleted and completely removed from my consumer credit files and a copy of such deletion requests shall be sent to me immediately.

According to the Federal Trade Commission, in the present circumstance, a collection agency: "...must delete the information from credit bureau files within five days." Original creditors are also treated as debt collection agencies under the FDCPA according to CFPB, Consumer Financial Protection Bureau, which oversees the administration of the FDCPA, when they stated that in regard to Title X of the Dodd-Frank Act (the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010) and the FDCPA that "The FDCPA and the Dodd-Frank Act together prohibit covered persons or service providers, including debt collectors, from engaging in deception while collecting or attempting to collect on consumer debts." Notice this says service providers, which also makes the rest of these laws relate to original creditors and to those servicing the debts and therefore the collection of those debts. In short, the FDCPA does pertain to original creditors.

If Collector fails to comply with applicable requirements of the Fair Debt Collection Practices Act, litigation shall likely ensue. I have documentation for at least eight--and possibly more--blatant violations of federal law, each of which may incur a $1,000 penalty; and, several likely violations of applicable state and local laws as well. Cure the problem or face the likelihood of explaining these violations to a judge.

Additionally, should Collector fail to cure the violations within the stated period, formal complaints will be filed with the Federal Trade Commission; the American Collectors Association International; the United States Postal Inspection Service Mail Fraud Division; and the Better Business Bureau, State Insurance Commissioner, Better Business Bureau, Secret Service (for counterfeiting), Treasury Department, and others if need be.

Collector may wish to check on the Statute of Limitations for this type of debt.

While I prefer not to litigate, if Collector fails to delete the information from the credit reporting agencies within five (5) days of receipt of this certified letter, I will find it necessary to sue Collector for damages and declaratory relief under the Fair Debt Collection Act. Because the Fair Credit Reporting Act provides concurrent jurisdiction in federal and state courts.

If litigation against Collector is necessary, it will also involve Collector's client if it is a different party than yourself since they are liable and responsible for Collector's actions.

You did not answer my requests point by point as required by law. I had requested that you provided proof of claim. A copy of the security instrument is not a sufficient proof of claim as per U.C.C. - ARTICLE 3 -§3-501 (b) 2 (1). Under this code, I am entitled to have the instrument presented to me as you are required to upkeep the legal document entrusted to you.

Under USC Title 18 Chapter 25, you are engaging in counterfeiting and such behavior is a felony. Providing a photocopy of a security instrument is not only unconscionable but is illegal. I had asked for the visual inspection of the original promissory note, not a copy.

You did not provide any proof to sufficiently satisfying your claim under U.C.C. - ARTICLE 3 -§3-302 that you are a note holder in due course.
You did not stipulate whether or not you were the holder in due course.
You did not stipulate whether this loan was securitized as required by law.

Therefore, you admit to the following:
**1) You admit that you are a servicer of the promissory note.**
**2) You admit that the loan has been securitized.**
**3) You admit that you are not a real party of interest in this controversy.**
**4) You admit that you are a debt collector that is not the original creditor.**

Under the Federal Rules of Civil Procedure Rule 36, you are advised to notify me within 14 days should you wish to contest any of the above allegations with specific proof. Failure to do so means that you fully admit to all allegations as truth. These admissions will be used as evidence against you in any future controversy involving this matter.

Cease and Desist: I am requesting, in writing, that no telephone contact be made by Collector to my home or other telephone. If Collector attempts telephone communication with me it will be considered harassment and I will have no choice but to file suit. Should any telephonic communication be made by Collector, be advised that the communication will be recorded for use as evidence.

All future communications with me must be done in writing and sent to the postal address noted in this letter.

Best Regards,

*Barbara Ann Robinson*

**Barbara Ann Robinson**

Cc: Federal Trade Commission, U.S. Postal Inspection Service - Mail Fraud

Notice of Lien

From:    Barbara Ann Robinson
   c/o 13540 SE 159th Place
   Renton, washington republic


To:  JAY BRAY d/b/a C.E.O.
   NATIONSTAR MORTGAGE
   8950 Cypress Waters Boulevard,
   Coppell, Texas, 75019

**November 14, 2016**

Notice to Agent is notice to principle. Notice to principle is notice to agent. This Notice of Lien is to recoup the exact value of the illegally collected debt in the amount of $ 641,791.80 as of the date of this notice currently on the Barbara Robinson SOCIAL SECURITY ██████868, 2%.

This injury and harm to the person will be offset in the exact amount illegally collected as compensatory damages. To get a Satisfaction of Lien and dismissal of current and future court actions, simply mark the credit reports of the Barbara Robinson person as paid in full and on time. In addition, email **MrsBarbara@hotmail.com** to arrange pick up of documents. No mail will be accepted except email. No service of process will be granted.

Revelation **9:11** (KJV)
[11] And they had a king over them, which is the angel of the bottomless pit, whose name in the Hebrew tongue is Abaddon, but in the Greek tongue hath his name Apollyon.

Psalm 23:4 (KJV)
[4] Yea, though I walk through the valley of the shadow of death, I will fear no evil: for thou art with me; thy rod and thy staff they comfort me.

By: _Barbara Ann Robinson_
 **Barbara Ann Robinson**


King County _KING_   )
        ) ss:
Washington State _Wn_  )

> **CHRISTOPHER BRODIE NELSON**
> **NOTARY PUBLIC**
> **STATE OF WASHINGTON**
> My Commission Expires April 29, 2020

I have hereunto set my hand and seal of office On this _15th_ Day of _November_, 2016

Notary Public _Chm M_

<u>PRIVATE AND CONFIDENTIAL</u>

Robinson, Barbara Ann
c/o 13540 SE 159th Place
Renton, Washington Republic
Near [98058]

JAY BRAY d/b/a Chief Financial Officer
NATIONSTAR MORTGAGE
8950 Cypress Waters Boulevard
Coppell, Texas 75019

CC: AZTEC FORECLOSURE CORPORATION OF WASHINGTON Collections Department

September 8, 2016

**Re: Account Number:** ⬛⬛⬛⬛⬛

Dear JAY BRAY
This is a LAWFUL NOTICE and not a letter.
Please find the enclosed Promissory Note, as payment and final settlements regarding Bill of Costs. I require, after receipt of this lawful document and (demand letter of acceptance) and transactions for settlements, after (7) Seven business days (if not heard back from) NATIONSTAR of deposit in receipt of **Promissory Note No: 197565PN-BAR** from ISSUER, Registered No: RE739897455US, it will be assented, concurred, affirmed and agreed that promissory note has been acknowledged and accepted by NATIONSTAR on this account herein and a letter for pay-off be returned as satisfied.

**NOTICE:** NATIONSTAR, you may return all origin documents intact that is being forwarded to you if you do not believe that my promissory note is valid, whatever being lawfully deficient I require that you send a certified letter as a bona_fide true and correct by NATIONSTAR signed in wet blue ink under penalties of perjury indicating specific defects for resolution, or we have an agreement if held in your possession within (7) seven days receipt herein that will be self authenticating that this account has been tendered and you agree that a notice for pay-off will be issued As Soon As Possible (a.s.a.p) to the woman Barbara A Robinson at her location above, as been satisfied and discharged herein.

This purchase payment being an acceptable specie of payment under **The Bills of Exchange Act (1882)**. However, should you not accept this form of payment, then please return the Bank Note, along with a full written explanation of why your organization is exempt from the legislation as outlined above, or why the Commercial Instrument is unacceptable under penalty of perjury.

**"Obligations of the United States", "Legal Tender". And "United States Currency"** on the same par and category with Federal Reserve Notes, Notes; Cash, Checks, Bank Checks, Wire Transfers, Bank Transfers, Electronic Funds Transfer, Certified Checks, Treasurer's Check, Money Orders, Bank Deposits, U.S. Currency, and other currency.

**ALL RIGHTS EXCLUSIVELY RESERVED**
Robinson, Barbara Ann

<u>**PRIVATE AND CONFIDENTIAL**</u>

**RCW 62A.3-603**

**TENDER OF PAYMENT**

(a) If tender of payment of an obligation to pay an instrument is made to a person entitled to enforce the instrument, the effect of tender is governed by principles of law applicable to tender of payment under a simple contract.

(b) If tender of payment of an obligation to pay an instrument is made to a person entitled to enforce the instrument and the tender is refused, there is discharge, to the extent of the amount of the tender, of the obligation of an indorser or accommodation party having a right of recourse with respect to the obligation to which the tender relates.

**FAS95, Footnote 1** – Consistent with common usage, *cash* includes not only currency on hand but demand deposits with banks or other financial institutions. *Cash* also includes other kinds of accounts that have the general characteristics of demand deposits in that the customer may deposit additional funds at any time and also effectively may withdraw funds at any time without prior notice or penalty. All charges and credits to those accounts are cash receipts or payments to both the entity owning the account and the bank holding it.

**[31 United States Code § 5153]** - Disbursing officials of the United States Government and officers of national banks shall stamp or mark the word "counterfeit", "altered", or "worthless" on counterfeit notes intended to circulate as currency that are presented to them. An official or officer wrongfully stamping or marking an item of genuine United States currency (including a Federal reserve note or a circulating note of Federal reserve banks and national banks) shall redeem the currency at face value when presented.

**If you do not understand this, please take legal advice.**

Yours, Without Dishonour, Ill Will or Frivolity. All Rights Reserved. Non Assumpsit. Errors and Omissions Excepted.

Executed without the UNITED STATES INC., I declare under penalty of perjury under the laws of the united states of America that the foregoing is true and correct.

Executed this   9   day of _September_ , 2016.   by _Robinson, Barbara Ann_
                                                    Robinson, Barbara Ann: Authorized Representative

King County          )
                     ) ss:
Washington State     )

I have hereunto set my hand and seal of office On this   9   Day of May, 2016

Notary Public _____

Notary Public
State of Washington
GRICELDA RIOS
My Appointment Expires Oct 28, 2017

**Page 2 of 2**
**ALL RIGHTS EXCLUSIVELY RESERVED**
Robinson, Barbara Ann

**Promissory Note: NO:** 197565PN-BAR        **Reg. NO:** RE739897455US

Tender in terms of the Negotiable Instruments Act, 1881; Public Law 73-10, Chapter 48, 48 Stat 112; 12 U.S.C.
411; Securities Act § 2(1), 3(a)(3); AND settlement in terms of Congressional Statutes At Large, Title 62

This Promissory Note was Issued at:

13540 SE 159th PL

RENTON, WA **Republic uSA** (Place)

Date: September 9 , 20 16

**AMOUNT: $** 660,346.03 (in numbers)

**AMOUNT:** Six hundred-sixty thousand, forty Cent three hundred forty six **UNITED STATES**

**DOLLARS\*\*\*\*\*\* USD**

This Certifies that .

I, Barbara A Robinson , ID/Account Number: ~~████~~ 8040 Hereby promise to pay

NATIONSTAR MORTGAGE (HOLDER) the full amount specified, on this NOTE, for value received.

### Terms & Conditions

The Payment will be made in monthly installments of $400.00 ( Four hundred dollars ) per month, on the 9th (Ninth) day of

every consecutive month starting October 9 20 16 , until the obligation has been fulfilled.

The payment can be obtained from the ISSUER at c/o 13540 SE 159th PL RENTON, WA Republic USA

I hereby give permission to the **HOLDER** and/or the **HOLDER IN DUE COURSE** of this Promissory Note, to use this NOTE in any way
necessary as a negotiable instrument to be financially traded on; whereas such trade shall terminate the obligation herein.

Barbara A Robinson

Signature/Autograph

Print: Barbara A Robinson , Sui Juris

American Citizen in Foreign State

Date Medallion
Securities Signature
Transfer Stamp

### {ACKNOWLEDGMENT}

_____ Republic

County of King

The foregoing Promissory Note was acknowledged before me this 5 day of Sept , 20 16

by Barbara A. Robinson who produced a WA State Drivers License as Identification.

**WITNESS my hand and official seal**

**Signature of Notary Public:** _____

**Date:** 5 Sept , 20 16
       **Month**    **Year**

My commission expires: 12/21/2019

```
SEAL
Notary Public
State of Washington
JARED HOOSER
My Appointment Expires Dec 21, 2019
```

Jared Hooser

NOTE: The above noted Certifying NOTARY PUBLIC is not an attorney licensed to practice law in any State and has not given legal advise or accepted fees for legal advise; provided no assistance in the preparation of the above referenced documents, and has no interest in any issue referenced therein. The above noted Certified NOTARY PUBLIC is NOT a party to this action and is ONLY acting in an authorized capacity requested as a third party witness to CERTIFY the signatures indicated herein in accordance with Notary Protest that is a Law of the Sea and Maritime Admiralty law CONCERNING A SECURITIES INSTRUMENT, PROMISSORY NOTE. The Certifying NOTARY is and independent contractor and not a party to this claim. In fact the Certifying NOTARY is a Federal Witness Pursuant to TITLE 18, PART I, CHAPTER 73, SEC. 1512. Tampering with a witness, victim, or an informant. The Noted Certifying NOTARY also performs the functions of a Quasi-Postal Inspector under the Homeland Security Act by being compelled to report any violation of the U.S. Postal regulations as Officer of the Executive Department of the UNITED STATES Government. The Noted Certifying NOTARY is a State Officer of the Court, and a Deputy Secretary of State Appointed and Commissioned by the State Government with Representative Authority to Issue Notary Protest Certificates of Default and Summary Judgment under the Administrative Procedure Act of 1946 and Notary Protest on negotiable instruments such as Promissory Notes, Stocks, and Bonds.

All postage paid for with lawful money per Title 12 USC 411 and P.L. 73-10, Chapter 48, 48 Stat. 112

# Nationstar MORTGAGE

**MORTGAGE LOAN STATEMENT**

RETURN SERVICE ONLY
PLEASE DO NOT SEND MAIL TO THIS ADDRESS
P.O. BOX 619063
DALLAS, TX 75261-9063

*(handwritten across document:)* REFUSE FOR CAUSE AND FRAUD / WITHOUT DISHONOR / FAIL IN INVOLVE / I AM IN NO WAY LIABLE FOR CPA 15 USC 1692 / VALID PROOF OF CLAIM / NATIONAL CURRENCY / AND UNDER YOUR REQUESTING / FOR THE VALID / BY: Barbara Ann Robinson Authorized Representative UCC 1-308 WITHOUT PREJUDICE UCC 1-308 / MY SIGNATURE / DO NOT CONSTITUTE A BOND / DO NOT CONSTITUTE A VALID / OF CLAIM IS REQUIRED / USC 15 USC 1692 / PA 1692 3-501

CONTACT INFORMATION

Customer Service: 1-888-480-2432
Monday - Thursday; 8 a.m. - 8 p.m. CT
Friday; 8 a.m. - 6 p.m. CT and Saturday; 8 a.m. - 2 p.m. CT
MyNationstar.com

Your Dedicated Loan Specialist is Breshee Harris and can be reached at (888) 850-9396 EXT. 4670746 or via mail at:
8950 Cypress Waters Blvd, Coppell, TX 75019

9-692-68573-0026267-002-1-000-081-000-000

BARBARA ROBINSON
13540 SE 159TH PL
RENTON WA 98058-5809

| Statement Date: | 09/20/2016 |
| Loan Number: | |
| Payment Due Date: | 10/01/2016 |
| **Amount Due:** | **$35,386.14** |

If payment is received on or after 10/17/16, $0.00 late fee will be charged.

Property Address:
13540 SE 159TH PL
RENTON WA 98058

## Account Information

| | |
|---|---|
| Interest Bearing Principal Balance | $641,791.80 |
| Interest Rate (Until 09/01/2017) | 2.000% |
| Escrow Balance | -$6,373.78 |

The Principal Balance does not represent the payoff amount of your account and is not to be used for payoff purposes.

## Explanation of Amount Due

| | |
|---|---|
| Principal | $1,028.94 |
| Interest | $1,069.65 |
| Escrow Amount (for Taxes & Insurance) | $1,028.05 |
| Optional Products and Services | $0.00 |
| **Regular Monthly Payment** | **$3,126.64** |
| Total Fees and Charges | $3,454.45 |
| Overdue Payment(s) | $28,805.05 |
| Partial Payment (Unapplied) | $0.00 |
| **Total Amount Due** | **$35,386.14** |

Please call Nationstar to request the full amount owed on your account as the amount due may be different than stated here due to interest and other charges or credits.

## Lender Paid Expense Summary

| | Activity Since Last Statement | Total |
|---|---|---|
| Legal Fees | $0.00 | $641.21 |
| Property Inspections | $15.00 | $420.00 |
| **Total** | **$15.00** | **$1,053.21** |

## Past Payment Breakdown

| | Payments Rec'd Since 09/1/2016 | Paid Year to Date |
|---|---|---|
| Principal | $0.00 | $1,027.22 |
| Interest | $0.00 | $1,071.37 |
| Escrow (Taxes & Insurance) | $0.00 | $1,028.05 |
| Optional Insurance | $0.00 | $0.00 |
| Fees and Charges | $0.00 | $14.00 |
| Lender Paid Expenses | $0.00 | $0.00 |
| Partial Payment (Unapplied) | $0.00 | $0.00 |
| **Total** | **$0.00** | **$3,140.64** |

## Transaction Activity (08/19/2016 to 09/20/2016)

| Date | Description | Total | Principal | Interest | Escrow | Other |
|---|---|---|---|---|---|---|
| 08/31/2016 | Property Inspections | $15.00 | | | | $15.00 |
| 08/29/2016 | Disbursement-Suspense | -$15.00 | | | | -$15.00 |
| 08/29/2016 | Partial Payment | $15.00 | | | | $15.00 |
| 08/28/2016 | Property Inspections | $15.00 | | | | $15.00 |
| 08/26/2016 | Property Inspections | $15.00 | | | | $15.00 |

*(handwritten:)* ARE YOU PARTICIPATING IN THIS PATTERN

## Important Messages

*(See Reverse Side for Additional, Critical Notices)*

As shown above, your escrow account has a negative balance. This shortage may result in an increase in your monthly escrow payment. We recommend you make additional payments to your escrow to eliminate or reduce the shortage.

"Lender Paid Expenses" are funds paid by Nationstar on your behalf to another company. These expenses may include, but are not limited to, Legal Fees, Property Taxes, Homeowners Insurance, and Property Inspections.

"Other Unpaid Fee(s)" include, but are not limited to, phone pay fees, insufficient fund fees, or convenience fees.

If you do not wish to receive paper statements, simply log into your account at MyNationstar.com and alter your selection to eCorrespondence. eCorrespondence offers convenient monthly email reminders, no lost mail, and archived online access to view or download to your personal computer.

*(handwritten:)* TO COLLECT / THE LENDER MAY / BE IN VIOLATION OF 18 U.S.C. § 1341, 1343, 1961, 1967

This is an attempt to collect a debt and any information obtained will be used for that purpose.

DETACH HERE AND RETURN WITH YOUR PAYMENT. PLEASE ALLOW A MINIMUM OF 7 TO 10 DAYS FOR POSTAL DELIVERY

# Nationstar MORTGAGE

MyNationstar.com

☐ PLEASE CHECK BOX IF MAILING ADDRESS OR PHONE NUMBER HAS CHANGED. ENTER CHANGES ON BACK OF COUPON.
BARBARA ROBINSON

| ACCOUNT NUMBER | TOTAL AMOUNT DUE* |
|---|---|
| 0609972989 | 10/01/2016   $35,386.14 |

| WRITE YOUR LOAN NUMBER ON YOUR CHECK OR MONEY ORDER AND MAKE PAYABLE TO NATIONSTAR MORTGAGE | PAYMENT DUE IF RECEIVED ON OR AFTER |
| | 10/17/2016   $35,386.14 |

NATIONSTAR MORTGAGE
PO BOX 650783
DALLAS, TX 75265-0783

| ADDITIONAL ESCROW | $_____ |
| **ADDITIONAL PRINCIPAL | $_____ |

| TOTAL AMOUNT OF YOUR CHECK | $_____ |
| DO NOT SEND CASH | |

**All amounts must be paid in full before additional principal reduction can be made.

0609972989   0035386614   0035386614

From:   Barbara Ann Robinson
        c/o 13540 SE 159ᵗʰ Place
        Renton, washington republic
        Hereinafter collectively referred to as Claimant

To:     JAY BRAY d/b/a C.E.O.
        NATIONSTAR MORTGAGE
        8950 Cypress Waters Boulevard,
        Coppell, Texas, 75019
        Hereinafter referred to as Respondent


November 14, 2016

VIA: Certified Mail #7016 1370 0000 4868 3633

Re: Loan #▮▮▮▮▮▮▮ in the amount of $149,000.00, originally dated February 16, 2005.

You are hereby in receipt of notice under the authority of the Fair Debt Collections Practices Act regarding your above referenced file number that part, or all, of the alleged debt is DISPUTED and hereby demand validation and verification, in writing, as follows:

1) An authentic signed contract between you and Barbara Ann Robinson showing proof that you and that person and you are now or were at one time in business together and other supporting documentation that gave rise to the alleged obligation NATIONSTAR MORTGAGE is claiming owed.

2) An authentic invoice for goods and/or services you provided.

3) Statement, under penalty of perjury that:
a. You are the bonafide party in interest of the contract and will produce said authentic signed contract (#1 above) for my own and a judge's inspection should there be a trial to contest these matters.
b. The name and address of all persons, corporations, associations, legal firms or any other parties and entities having an interest in the collection or legal proceedings regarding the alleged debt.
c. As a debt collector you have not purchased evidence of debt and are proceeding with this collection activity solely in the name of the original contracting party.
d. You know and understand that certain clauses in a contract of adhesion are unenforceable unless the party to whom the contract is extended could have selectively rejected the clause.
e. You will provide written verification from the stated Creditor that you are authorized to act on their behalf in this debt collection action.
f. You have taken reasonable and prudent diligence to verify that the amount claimed owed is in fact a legitimate debt prior to instigating this action and making said claims, and that all relevant correspondence has been reviewed prior to initiating this claim.
g. You will prove that you are the original NATIONSTAR MORTGAGE, if in fact you claim to be, and that the United States, Federal Reserve nor any other entity besides your organization originated these funds.

4) Production of the account and general ledger statement showing the full accounting of the alleged obligation you are attempting to collect from me, signed and sworn by the person responsible for

maintaining these records and having first-hand knowledge as to their accuracy and authenticity, and able to testify under oath to that effect.

5) Under the Truth in Lending Act pursuant to *15 USC §§ 1601-1667j* (full disclosure), I have a right to know who the true party of interest in this transaction is. As such, I am asking you to stipulate whether you are the holder in due course for my promissory note. If you are not the holder, then you admit to being the servicer of this obligation.

6) Please also stipulate for the record whether or not my loan has been securitized, and if so, the name of the REMIC/Trust my loan is bundled with.

7) If my loan has been securitized, then please provide me the pooling and servicing agreement that names my loan as well as any documentation that explicitly gives you the right to service my loan as well as enforce the promissory note in the event of a foreclosure. If you are hiding these facts from my despite my request, then you are hereby notified that you are committing fraud and shall be named in a wrongful foreclosure civil action.

8) Pursuant of RCW 62A.3-501 (b) 2 (1), I am entitled to demand presentation of the negotiable instrument. That demand is hereby ordered. I demand that you present for my visual inspection MY ORIGINAL WET INK SIGNATURE PROMISSORY NOTE This is required to establish your right of enforcement as Holder in Due Course via a chain of assignment as evidenced by the Note. Claiming to be the "the holder in due course" as a statement is insufficient proof of status and is/will be rejected. A photocopy of the documents is insufficient proof as it does not answer the question of who CURRENTLY is the rightful and lawful holder in Due Course.

If you are unable to provide this proof as I have requested within 30 days, then you admit to not being a party of interest and cannot rightfully enforce your claim under RCW 62A.3-301. If you are unable to provide this proof as I have requested within 30 days, then you admit to not being a party of interest and cannot rightfully enforce your claim under RCW 62A.3-301.

9) Under US Code TITLE 15 > CHAPTER 41 > SUBCHAPTER V > § 1692g part b), this debt is now officially in dispute. By law, all collection activities must cease until this matter is resolved. You are hereby given notice. Blatant disregard for this law is subject to fines by the FTC. You are advised to consult legal counsel on this matter.

10) I am giving you formal notice that failure to respond to this letter through a verified and validated proof of claim within 30 days as I have asked for, point for point will be taken as an <u>administrative default</u>.

<u>Please be advised. A COPY of the said Note nor an Affidavit of Loss or any other forms will not be acceptable.</u>

Please provide me the following:

1. A statement admitting whether you are the holder in due course or whether you are a servicer.

2. A statement admitting whether you have sold my note in a pooling and servicing agreement. This is also known as securitization.

3. The identity of the true holder in due course for my loan. If the loan has been securitized, the name of the REMIC my loan was sold to.

4. The CUSIP number under which my loan was securitized to.

5. Make available for visual inspection my original wet ink promissory note (not a photocopy).

Please contact me in writing to arrange for an appropriate point of inspection.

This is my good faith attempt to resolve this matter before I am forced to litigate against your company. I am pleading with you to resolve this matter privately and civilly as to avoid burdening our courts with this matter. If I have to, I will see you in court.

Contacting me again after receipt of this notice without providing procedurally proper validation of the alleged debt constitutes a scheme of fraud by advancing a writing that you know or should know is false, with the intention that the courts and/or others rely on the written communication to impair or damage my credit rating, my reputation, my standing in the community as well as intentionally inflicting financial and emotional harm upon me. I take this notice, and my rights, very seriously and expect NATIONSTAR MORTGAGE to do the same.

In the event that this debt is not validated by you, as required by the Fair Debt Collections Practices Act, you have a legal responsibility to terminate the claim and correct any negative credit reporting which may have been made in connection with this alleged debt. You may want to obtain a legal opinion on this, but I believe that would constitute a scheme of fraud if this debt were to be resold; assuming that NATIONSTAR MORTGAGE has in fact purchased evidence of debt in this matter.

I also will not respond to any future correspondence that is not signed or does not indicate who at your firm has sent the demand for payment.

I expect timely responses to the above confirmations and that they be made in writing and sent via certified mail to the address listed below. Alternately, a letter from your firm that the matter has been satisfied and a copy of the letter you sent to all 3 credit reporting agencies asking them that any adverse credit reporting relating to this transaction to be expunged by these three major credit reporting agencies immediately.

Failure to provide these items shall mean your admission that you have no claim, your agreement not to report negatively to the credit bureaus, and your agreement never to contact me or the person named in your correspondence again. Included please find a Notice and Demand for Payment in case you are not able to validate the debt your assets will be given a Notice of Lien in the amount and at the interest rate of your invalidated alleged and now illegally collected debt.

By: _Barbara Ann Robinson_____
**Barbara Ann Robinson**

> CHRISTOPHER BRODIE NELSON
> NOTARY PUBLIC
> STATE OF WASHINGTON
> My Commission Expires April 29, 2020

King County _KING_          )
                            ) ss:
Washington State _WA_       )
I have hereunto set my hand and seal of office On this __15th__ Day of __November__, 2016

Notary Public _____

## Notice and Demand for Payment

From:   Barbara Ann Robinson
        c/o 13540 SE 159th Place
        Renton, washington republic

To:     JAY BRAY d/b/a C.E.O.
        NATIONSTAR MORTGAGE
        8950 Cypress Waters Boulevard,
        Coppell, Texas, 75019

November 14, 2016

VIA: Certified Mail #7016 1370 0000 4868 3633

Notice to Agent is notice to principle. Notice to principle is notice to agent. This Notice and Demand for Payment is to recoup the exact value of the illegally collected debt in the amount of $149,000.00, interest rate is set at 2%, as of the date of this notice currently on the Barbara Ann Robinson Social Security ██████ 8868 personal credit reports. A Notice of Lien will be placed against the property of the corporations and persons involved with the illegal collection of this debt. 30 days from receipt of this notice will be allowed for cure. Prior settlement offers are null and void.

It is accepted that NATIONSTAR MORTGAGE, by not validating the alleged debt, are the illegal collectors of this debt and that their assets and the assets of the employees, owners and partners of these corporations are severally, individually and personally liable for this amount in this Notice and Demand for Payment. Though validation of the debt was attempted through mail, no validation occurred and the debt is now being collected illegally.

This injury and harm to the person will be offset in the exact amount illegally collected as compensatory damages. To get a Satisfaction of Lien and dismissal of current and future court actions, simply mark the credit reports of the Barbara Ann Robinson person as paid in full and on time.

Revelation 9:11 (KJV)
[11] And they had a king over them, which is the angel of the bottomless pit, whose name in the Hebrew tongue is Abaddon, but in the Greek tongue hath his name Apollyon.

Psalm 23:4 (KJV)
[4] Yea, though I walk through the valley of the shadow of death, I will fear no evil: for thou art with me; thy rod and thy staff they comfort me.

By: *Barbara Ann Robinson*
    **Barbara Ann Robinson**
King County  *KING*     )
                        ) ss:
Washington State *A*     )
I have hereunto set my hand and seal of office On this  *15*  Day of *November*, 2016

Notary Public  _____

CHRISTOPHER BRODIE NELSON
NOTARY PUBLIC
STATE OF WASHINGTON
My Commission Expires April 29, 2020

<u>**PRIVATE AND CONFIDENTIAL**</u>

Robinson, Barbara Ann
c/o 13540 SE 159th Place
Renton, Washington Republic
Near [98058]

JAY BRAY d/b/a Chief Financial Officer
NATIONSTAR MORTGAGE
8950 Cypress Waters Boulevard
Coppell, Texas 75019

CC: Collections Department

November 17, 2016

**Re:** Loan # ████████

Dear JAY BRAY
This is a LAWFUL NOTICE and not a letter.
Please find the enclosed Promissory Note, as payment and final settlements regarding Bill of Costs. I
require, after receipt of this lawful document and (demand letter of acceptance) and transactions for
settlements, after (7) Seven business days (if not heard back from) NATIONSTAR of deposit in receipt
of **Promissory Note No: 1975652PN-BAR** from ISSUER, Registered No: RE739897557US, it will be
assented, concurred, affirmed and agreed that promissory note has been acknowledged and accepted by
NATIONSTAR on this account herein and a letter for pay-off be returned as satisfied.

**NOTICE:** NATIONSTAR, you may return all origin documents intact that is being forwarded to you if
you do not believe that my promissory note is valid, whatever being lawfully deficient I require that
you send a certified letter as a bona_fide true and correct by NATIONSTAR signed in wet blue ink
under penalties of perjury indicating specific defects for resolution, or we have an agreement if held in
your possession within (7) seven days receipt herein that will be self authenticating that this account
has been tendered and you agree that a notice for pay-off will be issued As Soon As Possible (a.s.a.p) to
the woman Barbara A Robinson at her location above, as been satisfied and discharged herein.

This purchase payment being an acceptable specie of payment under **The Bills of Exchange Act
(1882)**. However, should you not accept this form of payment, then please return the Bank Note, along
with a full written explanation of why your organization is exempt from the legislation as outlined
above, or why the Commercial Instrument is unacceptable under penalty of perjury.

**"Obligations of the United States", "Legal Tender". And "United States Currency"** on the same
par and category with Federal Reserve Notes, Notes; Cash, Checks, Bank Checks, Wire Transfers,
Bank Transfers, Electronic Funds Transfer, Certified Checks, Treasurer's Check, Money Orders, Bank
Deposits, U.S. Currency, and other currency.

**Promissory Note: NO:** 1975652PN-BAR     **Reg. NO:** RE73989755 1US

Tender in terms of the Negotiable instruments Act, 1881; Public Law 73-10, Chapter 48, 48 Stat 112; 12 U.S.C. 411; Securities Act § 2(1), 3(a)(3); AND settlement in terms of Congressional Statutes At Large, Title 62

This Promissory Note was Issued at:     **AMOUNT:** $ 149,007.00 _____ (in numbers)

13540 SE 159th Pl

Renton Washington **Republic uSA** (Place)     **AMOUNT:** one hundred fortynine thousand on seven dollars _____ **UNITED STATES**

Date: November 12th , 20 16     **DOLLARS****** USD**

This Certifies that

I, Barbara A. Robinson _____ , ID/Account Number: ROBINBA474RB _____ Hereby promise to pay

Nationstar Mortgage _____ (HOLDER) the full amount specified, on this NOTE, for value received.

**Terms & Conditions**

The Payment will be made in monthly installments of $ 400.00 ( four hundred dollars ) per month, on the 9ᵗʰ (Ninth) day of

every consecutive month starting December 09 20 16 until the obligation has been fulfilled.

The payment can be obtained from the ISSUER at c/o 13540 SE 159th Pl Renton washington republic. USA

I hereby give permission to the **HOLDER** and/or the **HOLDER IN DUE COURSE** of this Promissory Note, to use this NOTE in any way
necessary as a negotiable instrument to be financially traded on; whereas such trade shall terminate the obligation herein.

_____     Barbara A. Robinson

Date Medallion     Signature/Autograph
Securities Signature     Print: Barbara A. Robinson ; Sui Juris
Transfer Stamp     American Citizen in Foreign State

**{ACKNOWLEDGMENT}**

Washington State **Republic**

County of King _____

The foregoing Promissory Note was acknowledged before me this 16ᵗʰ day of November , 20 16

by Barbara Robinson _____ who produced a Washington Drivers License as Identification.
**WITNESS my hand and official seal:**

**Signature of Notary Public:** Miranda Mackey     My commission expires: May 1, 2019

Date: 16 , November , 20 16
        **Month**        **Year**

MIRANDA MACKEY
STATE OF WASHINGTON
NOTARY PUBLIC
MY COMMISSION EXPIRES
05-01-19

NOTE: The above noted Certifying NOTARY PUBLIC is not an attorney licensed to practice law in any State and has not given legal advise or accepted fees for legal advise; provided no assistance in the preparation of the above referenced documents, and has no interest in any issue referenced therein. The above noted Certified NOTARY PUBLIC is NOT a party to this action and is ONLY acting in an authorized capacity requested as a third party witness to CERTIFY the signatures indicated herein in accordance with Notary Protest that is a Law of the Sea and Maritime Admiralty law CONCERNING A SECURITIES INSTRUMENT, PROMISSORY NOTE. The Certifying NOTARY is and independent contractor and not a party to this claim. In fact the Certifying NOTARY is a Federal Witness Pursuant to TITLE 18, PART I, CHAPTER 73, SEC. 1512. Tampering with a witness, victim, or an informant. The Noted Certifying NOTARY also performs the functions of a Quasi-Postal Inspector under the Homeland Security Act by being compelled to report any violation of the U.S. Postal regulations as Officer of the Executive Department of the UNITED STATES Government. The Noted Certifying NOTARY is a State Officer of the Court, and a Deputy Secretary of State Appointed and Commissioned by the State Government with Representative Authority to Issue Notary Protest Certificates of Default and Summary Judgment under the Administrative Procedure Act of 1946 and Notary Protest on negotiable instruments such as Promissory Notes, Stocks, and Bonds.

All postage paid for with lawful money per Title 12 USC 411 and P.L. 73-10, Chapter 48, 48 Stat. 112



Full Credit Report | Cred ✕

https://www.creditkarma.com/myfinances/creditreport/transunion#accounts

▾ NATIONSTAR          🏠 Home Equity          Feb 16, 2005          Closed                              $0

Account Details                                                    Payment History

Last Reported                    Mar 20, 2015                      Latest Status: Collection/Charge-Off
Creditor Name                    NATIONSTAR                        No payment history has been reported by this creditor.
Account Type                     Second Mortgage
Account Status                   Closed - Derogatory               Creditor Contact Details
Opened Date                      Feb 16, 2005
Closed Date                      Mar 20, 2015                      NATIONSTAR MORTGAGE LLC
Limit                            --                                350 HIGHLAND
Term                             180 Months                        HOUSTON, TX
Monthly Payment                  $1,019                            77067
Responsibility                   Individual
Balance                          $0                                Direct Dispute™ NEW
Highest Balance                  $149,007
Payment Status                   Collection/Charge-Off             See something wrong?
Worst Payment Status             Unknown                           We can help you dispute an error with TransUnion.
Date of Last Payment             --
Amount Past Due                  $0
Times 30/60/90 Days Late         0/0/0
Remarks                          Payment after charge
                                 off/collection
                                 Transferred to recover

# EXHIBIT C

# Responses and Statements from NATIONSTAR MORTGAGE



P.O. Box 612488
Dallas, TX 75261-2488

October 25, 2016

Barbara Robinson
13540 SE 159th Pl
Renton, WA 98058

RE: Research Reference #RR-462133

Dear Barbara Robinson:

This is in response to your request received September 22, 2016.

Unfortunately, Nationstar Mortgage LLC cannot accept your Promissory Note offer pursuant to the Bills of Exchange Act of 1882. As you may recall, on February 16, 2005, you executed a Note, in the amount of $149,007.00, and a Deed of Trust, which secured your promise to repay the Note. These two documents were validly executed without any objection from you. If you are delinquent under the terms and conditions of the Note and Deed of Trust that you agreed to, please seek the advice of counsel who may be able to discuss with you alternative options to foreclosure that may be available. Enclosed is your Note and Deed of Trust for review.

Should you have any additional questions regarding your account or to view details about your loan summary and recent account activity, visit us online at www.MyNationstar.com. To get started, click 'Register' and see how easy it is to manage your mortgage online. You will have immediate access to:

- Frequently asked questions
- A full payment history
- Escrow information
- Automatic payment enrollment
- Mortgage Loan, Escrow Account Disclosure and Tax and Interest Statements

As a valued borrower, your satisfaction is our top priority. If we can be of further assistance, you can contact us directly at research.department@nationstarmail.com or you can call our Customer Service Department at 1-888-480-2432.

Sincerely,

Research and Response Department
Nationstar Mortgage LLC

*Nationstar is a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose. However, if you are currently in bankruptcy or have received a discharge in bankruptcy, this communication is not an attempt to collect a debt from you personally to the extent that it is included in your bankruptcy or has been discharged, but is provided for informational purposes only.*

GEN001`





February 2, 2016

Barbara Robinson
13540 South East 159th Place
Renton, WA 98058

RE:    Nationstar Reference Number – CN-01-16-01278
        Mortgagor – Barbara Robinson
        Property Address – 13540 South East 159th Place Renton, WA 98058
        Loan Number – ███████

Dear Barbara Robinson,

Nationstar Mortgage LLC (Nationstar) is in receipt of your correspondence, received on January 15, 2016, regarding the mortgage loan account described above. We appreciate you bringing this to our attention, as we take all matters such as this seriously.

Some information you have requested does not pertain directly to the servicing of the loan, does not identify any specific servicing errors, and/or is considered proprietary and confidential. Therefore, this information is considered outside the scope of information that must be provided. In addition, Nationstar does not agree nor consent to any of the terms and conditions mentioned in your complaint. However, the information below and enclosed documents should address any of your relevant questions and requests. Enclosed, you will find the following documents:

- Note and Security Instrument

    o The Note and Security Instrument will validate the above-mentioned loan. These documents will explain our rights to:

        ▪ Collect any remaining debt owed under the Note and Security Instrument

        ▪ Assess fees and costs to the loan as necessary, including late fees if a payment is received after the specified grace period and legal fees if a loan is in default.

        ▪ Inspect the property and charge applicable fees

        ▪ Purchase lender placed insurance

        ▪ Pay taxes on the mortgagor's behalf

- Payment History

    o The payment history reflects a complete history for the period Nationstar has serviced the loan. Late fees are assessed any time the contractual payment is received after the grace period, as indicated in the Note. Please note, late fees are not considered interest and are not reported to the IRS on IRS form 1098. If a payment was applied to the suspense account, it will be indicated in the code description column. Payments can be applied to the suspense account if the funds received do not represent the full

*Nationstar is a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose. However, if you are currently in bankruptcy or have received a discharge in bankruptcy, this communication is not an attempt to collect a debt from you personally to the extent that it is included in your bankruptcy or has been discharged, but is provided for informational purposes only*



**Corporate Trust Services**
Legal Notice Processing Group
MAC R1204-010
9062 Old Annapolis Road
Columbia, MD 21045
Wells Fargo Bank, N.A.

Monday, May 09, 2016

**Sent Via FedEx**
Barbara Ann Robinson
13540 Southeast 159th Place
Renton, WA 98058

Dear Barbara Ann Robinson,

Wells Fargo Bank, N.A., as Trustee of the securitization that holds your loan, has received and reviewed your recent correspondence.

I am forwarding your Demand and Notice of Default to the Servicer of your mortgage, Nationstar, as the appropriate party to receive and respond to this type of request.

Sincerely,

Kitty Dean
Research/Remediation Analyst
Wells Fargo Bank, N.A., as Trustee

cc: File
ID: 168153532

Together we'll go far

Wells Fargo Bank, N.A.



February 24, 2016

Barbara Robinson
13540 Southeast 159th Place
Renton, WA 98058

RE:    Nationstar Reference Number – CN-02-16-04323
        Mortgagor – Barbara Robinson
        Property Address – 13540 Southeast 159th Place, Renton, WA 98058
        Loan Number – ███████

Dear Barbara Robinson:

Nationstar Mortgage LLC (Nationstar) is in receipt of your correspondence, on February 8, 2016, regarding the mortgage loan account described above. We appreciate you bringing this to our attention, as we take all matters such as this seriously.

The asserted error is substantially the same as an error previously asserted, for which Nationstar has previously complied with its obligation to respond. Unless there is new and material information that has not been provided to Nationstar Mortgage for investigation, Nationstar Mortgage considers this matter resolved. We have enclosed the previous resolution letter, dated February 2, 2016, and its enclosures, for your records.

As of the date of this correspondence, the account is approximately two payments delinquent and contractually due for the January 1, 2016 monthly installment. Enclosed is the most recent monthly Billing Statement that indicates the current unpaid principal balance, the current escrow balance, and the suspense balance.

The most recent Escrow Analysis is enclosed and will reflect any escrow balance, shortages, or deficiencies, if any, existing at the time the Escrow Analysis was performed. Please note that, escrow amounts may have changed since that time due to any changes in taxes or insurance.

As of the date of this letter, our records indicate that Wells Fargo Bank, N.A., solely as Trustee for MLMI 2005-WMC2, is the current owner of the loan. In accordance with the state of Washington guidelines, we have provided the contact information below:

Wells Fargo Bank, N.A., as Trustee
9062 Old Annapolis Rd MAC R1202-010
Columbia, MD 21045
CTSRegInquiry@wellsfargo.com

At Nationstar, customer concerns are important to us. Should you have any general questions other than those referenced in your correspondence, please contact:

Account Resolutions Department
Monday through Thursday, 7:00 a.m. to 10:00 p.m. Central
Friday, 7:00 a.m. to 6:00 p.m. Central
Saturday, 8:00 a.m. to 12:00 p.m. Central
Toll-free Number: 1.888.811.5279

*Nationstar is a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose. However, if you are currently in bankruptcy or have received a discharge in bankruptcy, this communication is not an attempt to collect a debt from you personally to the extent that it is included in your bankruptcy or has been discharged, but is provided for informational purposes only.*



www.NationstarMtg.com
NER160



If you have any questions regarding this correspondence, please contact me directly.

Sincerely,

*Gayla L Goddard*

Gayla Goddard
Customer Relations Specialist
Nationstar Mortgage LLC
P.O. Box 619098
Dallas, TX 75261-9741
Phone: 1.877.783.7480
Facsimile: 972.315.7371
E-mail: gayla.goddard@nationstarmail.com

Enclosures 8
By Standard Mail

*Nationstar is a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose. However, if you are currently in bankruptcy or have received a discharge in bankruptcy, this communication is not an attempt to collect a debt from you personally to the extent that it is included in your bankruptcy or has been discharged, but is provided for informational purposes only.*





monthly mortgage payment due or if Nationstar is not informed of where the payment is to be applied. Furthermore, this payment history reflects:

- When payments were received

- How the payments were applied to the loan

- Any disbursements made from the loan, including, but not limited to, disbursements for taxes, insurance, property inspections, brokers price opinions (BPOs), and legal fees.

- A description for each transaction, with running balances of the unpaid principal and escrow accounts

- The date fees and charges were assessed, if any

- Any amounts paid towards fees

- Any waivers/reversals of fees

- Most Recent Billing Statement

  o The billing statement will reflect the current amount due on the loan and will also provide a breakdown of any fees assessed, including any lender paid expenses or corporate advance fees.

- Notice of Servicing Transfer, also known as Welcome Letter

  o The Servicing Transfer Notice will detail the date and terms of the service transfer from the prior servicer to Nationstar. This document evidences Nationstar's right to service the loan.

- Most Recent Escrow Analysis Statement

  o The most recent Escrow Analysis is enclosed and will reflect any escrow balances, shortages, or deficiencies, if any, existing at the time the Escrow Analysis was performed Please note that, escrow balances may have changed since that time due to any changes in taxes and insurance. The Escrow Analysis will provide a detailed description of all disbursements made from the escrow account as well as any payments towards the escrow account for the prior year. It will also provide a breakdown of how the current escrow payment has been calculated, including any shortages that may exist.

- Payoff Quote

  o The Payoff Quote will include the full amount necessary to pay the loan in full. This document is sent for informational purposes only and is no way a demand to pay the loan in full and will not result in any additional fees being assessed to the loan.

Furthermore, our records indicate Wells Fargo Bank as Trustee for MLMI 2005-WMC2, is the current owner of the Note. As requested, we have provided the address and phone number below:

Wells Fargo Bank N.A. as Trustee
9062 Old Annapolis Road MAC R1202-010
Columbia, MD 21045
CTSRegInquiry@wellsfargo.com

*Nationstar is a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose. However, if you are currently in bankruptcy or have received a discharge in bankruptcy, this communication is not an attempt to collect a debt from you personally to the extent that it is included in your bankruptcy or has been discharged, but is provided for informational purposes only*





Please note that Nationstar is the servicer of the loan and will be responsible for responding to any concerns regarding the servicing of the loan. Servicing matters include but are not limited to the following:

- Payment assistance and modifications
- Payment posting
- Validation of the debt
- Foreclosure proceedings
- Payment adjustments

Please direct any communication related to these matters to Nationstar using the contact information below. Please note Wells Fargo Bank will not be able to assist with any of these matters.

Upon receipt of this correspondence, the above mentioned loan and related documents were reviewed and found to comply with all state and federal guidelines that regulate them. As such, the above mentioned loan account will continue to be serviced appropriate to its status.

Furthermore, the payment history appears to be reported accurately to the main credit repositories. If you have documentation that substantiates that any of the information reported by Nationstar on the credit report is incorrect, please provide the detailed information for review.

As of the date of this correspondence, the account is approximately 2 payments delinquent and contractually due for the January 1, 2016 monthly installment. Enclosed is the most recent monthly billing statement that indicates the current unpaid principal balance, the current balance, and the suspense balance.

At Nationstar, customer concerns are important to us. Should you have any questions, please contact me directly; or, if you have general questions regarding the account, please contact:

<u>Customer Service Department</u>
Monday through Thursday, 8 a.m. to 8 p.m. Central
Friday, 8 a.m. to 6 p.m. Central
Saturday, 8:00 a.m. -2:00 p. m. Central
Toll-free number: 1.888.480.2432

Sincerely,

Anniemythia Bright
Customer Relations Specialist
Nationstar Mortgage LLC
P.O. Box 619098
Dallas, TX 75261-9741
Phone: 469.240.4574
Facsimile: 972.459.7653
E-mail: Anniemythia.Bright@nationstarmail.com

Enclosures
By U. S. Standard Mail

*Nationstar is a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose. However, if you are currently in bankruptcy or have received a discharge in bankruptcy, this communication is not an attempt to collect a debt from you personally to the extent that it is included in your bankruptcy or has been discharged, but is provided for informational purposes only*

(Page 1 of 13)

**Copy**

When Recorded Mail To:
WMC MORTGAGE CORP.

6320 CANOGA AVE 8TH FLOOR

WOODLAND HILLS, CA 91367

Attn:    (EQUITY SERVICES)

Prepared By:
ROSINA EMMA

WMC MORTGAGE CORP.

6320 CANOGA AVENUE 10TH FL
(MAILROOM)

WOODLAND HILLS, CA 91367

Serv #: 11129867                    **DEED OF TRUST**          ROBINSON
Abbr. Legal Description:                                        Loan #:
                                                               PIN:
                                                               MIN:   100136500111298674

    THIS DEED OF TRUST is made this 16th  day of February, 2005          , among the Grantor,
BARBARA ROBINSON AND SUGAR RAY ROBINSON, HUSBAND AND WIFE


(herein "Borrower"),    BISHOP & LYNCH OF KING COUNTY

(herein "Trustee"), and the Beneficiary, MERS. MERS is Mortgage Electronic Registration Systems, Inc.
MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and
assigns. MERS is organized and existing under the laws of Delaware, and has an address and telephone number
of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. WMC MORTGAGE CORP.


a corporation organized and existing under the laws of    CALIFORNIA
whose address is    P.O. BOX 54089, LOS ANGELES, CA 90054-0089
                                                            (herein "Lender").


    BORROWER, in consideration of the indebtedness herein recited and the trust herein created,
irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located
in the County of  KING                        , State of Washington:
LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AND KNOWN AS
EXHIBIT 'A'.


which has the address of   13540 SOUTHEAST 159TH PLACE
                                                [Street]
RENTON                              , Washington 98058       (herein "Property Address");
                    [City]                        [Zip Code]

WASHINGTON - SECOND MORTGAGE - 1/80 - FNMA/FHLMC UNIFORM INSTRUMENT with MERS
DOCUTWA1                                        Page 1 of 8                          Form 3848
DDCU7WA1.VTX  07/06/2004

I do hereby certify this to be a true
copy of the original document.

Bv: _____

(Page 2 of 13)

Copy

 

11129867                                                        11129867

    TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents (subject however to the rights and authorities given herein to Lender to collect and apply such rents), all of which shall be deemed to be and remain a part of the property covered by this Deed of Trust; and all of the foregoing, together with said property (or the leasehold estate if this Deed of Trust is on a leasehold) are hereinafter referred to as the "Property". Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

    TO SECURE to Lender the repayment of the indebtedness evidenced by Borrower's note dated **February 16, 2005** and extensions and renewals thereof (herein "Note"), in the principal sum of U.S. **$149,007.00**, with interest thereon, providing for monthly installments of principal and interest, with the balance of the indebtedness, if not sooner paid, due and payable on **March 1, 2020** the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed of Trust; and the performance of the covenants and agreements of Borrower herein contained.

    Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims an demands, subject to encumbrances of record.

    UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

    1.    **Payment of Principal and Interest.** Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note and late charges as provided in the Note.

    2.    **Funds for Taxes and Insurance.** Subject to applicable law or a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Deed of Trust, and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such a holder is an institutional lender.

    If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a Federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Deed of Trust that interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Deed of Trust.

    If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Copy

11129867                                                                          11129867

Upon payment in full of all sums secured by this Deed of Trust, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed of Trust.

3.    **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraph 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.

4.    **Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments, and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed of Trust, and leasehold payments or ground rents, if any.

5.    **Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage", and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Deed of Trust.

6.    **Preservation and Maintenance of Property; Leasehold; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed of Trust is on a leasehold. If this Deed of Trust is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

7.    **Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorney's fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Deed of Trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Deed of Trust. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payments thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

Copy

11129867

11129867

8.    **Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefore related to Lender's interest in the Property.

9.    **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

10.    **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Deed of Trust granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Deed of Trust by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

11.    **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to , the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Deed of Trust, but does not execute the Note, (a) is co-signing this Deed of Trust only to grant and convey that Borrower's interest in the Property of Trustee under the terms of this Deed of Trust, (b) is not personally liable on the Note or under this Deed of Trust, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Deed of Trust or the Note, without that Borrower's consent and without releasing that Borrower or modifying this Deed of Trust as to that Borrower's interest in the Property.

12.    **Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed of Trust shall be given by delivering it or mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

13.    **Governing Law; Severability.** The state and local laws applicable to this Deed of Trust shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of Federal law to this Deed of Trust. In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Deed of Trust and the Note are declared to be severable. As used herein, "costs", "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

14.    **Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Deed of Trust at the time of execution or after recordation hereof.

15.    **Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

16.    **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require

**Copy**

11129867                                          11129867

immediate payment in full of all sums secured by this Deed of Trust. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Deed of Trust.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Deed of Trust. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Deed of Trust without further notice or demand on Borrower.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17.      **Acceleration; Remedies.** Except as provided in paragraph 16 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Deed of Trust, including the covenants to pay when due any sums secured by this Deed of Trust, Lender prior to acceleration shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Deed of Trust and sale of the Property at public auction at a date not less than 120 days in the future. The notice shall further inform Borrower of (i) the right to reinstate after acceleration, (ii) the right to bring a court action to assert the nonexistence of a default or any other defense of Borrower to acceleration and foreclosure, and (iii) any other matters required to be included in such notice by applicable law. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Deed of Trust to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorneys' fees.

If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Lender or Trustee shall take such action regarding notice of sale and shall give such notices to Borrower and to other persons as applicable by law may require. After the lapse of such time as may be required by applicable law and after publication of the notice of sale, Trustee, without demand on borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in such order as Trustee may determine. Trustee may postpone sale of the Property for a period or periods not exceeding at total of 30 days by public announcement at the time and place fixed in the notice of sale. Lender or Lender's designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property so sold without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all reasonable costs and expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees and costs of title evidence; (b) to all sums secured by this Deed of Trust; and (c) the excess, if any, to the person or persons legally entitled thereto, or to the Clerk of the Superior Court of the County in which the sale took place.

18.      **Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Deed of Trust due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Deed of Trust discontinued at any time prior to the earlier to occur of (i) the fifth day before sale of the Property pursuant to the power of sale contained in this Deed of Trust or (ii) entry of a judgment enforcing this Deed of Trust if : (a) Borrower pay Lender all sums which would be then due under this Deed of Trust and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Deed of Trust; (c) Borrower pays all reasonable expenses incurred by Lender and Trustee in enforcing the covenants and agreements of Borrower contained in this Deed of Trust, and in enforcing Lender's and Trustee's remedies as provided in paragraph 17 hereof, including, but not limited

(Page 6 of 13)

**Copy**

11129867                                                    11129867

to, reasonable attorneys' fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Deed of Trust, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Deed of Trust shall continue unimpaired. Upon such payment and cure by Borrower, this Deed of Trust and the obligation secured hereby shall remain in full force and effect as if no acceleration had occurred.

19. **Assignment of Rents; Appointments of Receiver; Lender in Possession.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.

20. **Reconveyance.** Upon payment of all sums secured by this Deed of Trust, Lender shall request Trustee to reconvey the Property and shall surrender this Deed of Trust and all notes evidencing indebtedness secured by this Deed of Trust to Trustee. Trustee shall reconvey the Property without warranty and without charge to the person or persons legally entitled thereto. Such person or persons shall pay all costs of recordation, if any.

21. **Substitute Trustee.** Lender, at Lender's option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon the Trustee herein and by applicable law.

22. **Use of Property.** The Property is not used principally for agricultural or farming purposes.

REFERENCE IS HEREBY MADE TO THE RIDER(S) ATTACHED HERETO AND MADE A PART HEREOF FOR ALL PURPOSES:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☒ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☐ 1-4 Family Rider | ☒ Other(s) [specify]Balloon Rider | |

Copy

11129867                                                            11129867

## REQUEST FOR NOTICE OF DEFAULT
## AND FORECLOSURE UNDER SUPERIOR
## MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Deed of Trust to give Notice to Lender, at Lender's address set forth on page one of this Deed of Trust, of any default under the superior encumbrance and of any sale or other foreclosure action.

IN WITNESS WHEREOF, Borrower has executed this Deed of Trust.

*Barbara Robinson 2/18/05*

- Borrower - BARBARA ROBINSON - Date -

*Sugar Ray Robinson 2/17/05*

SUGAR RAY ROBINSON

(Page 8 of 13)

**Copy**

11129867                                                              11129867

STATE OF WASHINGTON,    County ss: KING

On this 15TH day of Feb 2005                  , before me, the undersigned, a Notary
Public in and for the State of Washington, duly commissioned and sworn, personally appeared

BARBARA Robinson

to me known to be the individual(s) described in and who executed the foregoing instrument, and acknowledged
to me that She signed and sealed the said instrument as her free and voluntary act and deed, for the
uses and purposes therein mentioned.

Witness my hand and official seal affixed the day and year in this certificate first above written.

_____
Notary Public in and for the State of Washington

My Commission Expires: 1·22·2007

Residing at: Sultan

> BRIEANNE N. R. SUDDERTH
> STATE OF WASHINGTON
> NOTARY — • — PUBLIC
> MY COMMISSION EXPIRES  01-22-07

---

[Space Below This Line Reserved For Lender and Recorder]

DOCUTWA8
DOCUTWA8.VTX  07/05/2004          *Page 8 of 8*          Form 3848

Copy

(Individual)

STATE OF WASHINGTON                    }
                                       }    SS.
County of KING                         }

I certify that I know or have satisfactory evidence that _Sugar Ray Robinson_ (is/are) the person(s) who appeared before me, and said person(s) acknowledged that (he/she/they) signed this instrument and acknowledged it to be (his/her/their) free and voluntary act for the uses and purposes mentioned in this instrument.

DATED: Feb. 17, 2005

BRIEANNE N. R. SUDDERTH
STATE OF WASHINGTON
NOTARY — • — PUBLIC
MY COMMISSION EXPIRES   01-22-07

Name (typed or printed) BRIEANNE N. R. SUDDERTH
NOTARY PUBLIC in and for the State of WA
Residing at SULTAN
My appointment expires: 1-22-2005

This jurat is page____ of____ and attached to _____ dated_____.

**Copy**

[Space Above This Line For Recording Data]

## BALLOON RIDER

Serv #: 11129867

ROBINSON
Loan #: ████████
MIN:  100136300111298674

   THIS BALLOON RIDER is made this **16th**     day of **February, 2005** , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note (the "Note") to **WMC MORTGAGE CORP.**

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:
**13540 SOUTHEAST 159TH PLACE RENTON, WA 98058**

[Property Address]

   The interest rate stated on the Note is called the "Note Rate". The date of the Note is called the "Note Date". I understand the Lender may transfer the Note, Security Instrument and this Rider. The Lender or anyone who takes the Note, the Security Instrument and this Rider by transfer and who is entitled to receive payments under the Note is called the "Note Holder".

   **ADDITIONAL COVENANTS.** In addition to the covenants and agreements in the Security Instrument, Borrower and Lender further covenant and agree as follows (despite anything to the contrary contained in the Security Instrument or the Note):

**THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.**

**BALLOON RIDER-MULTISTATE (01/97)**
DOCUBRID
DOCUBRRL.VTX   07/23/2004                    Page 1 of 2

I do hereby certify this to be a true
copy of the original document.

By: _____

Copy

11129867

11129867

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Balloon Rider.

*Barbara Robinson* 2/18/05
- Borrower - BARBARA ROBINSON - Date -

*Sugar Ray Robins* 2/14/05
SUGAR RAY ROBINSON

Copy

Servicing Number:  11129867

ROBINSON
Loan Number:  11129867

## PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this **16th** day of **February 2005** , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to  **WMC MORTGAGE CORP.**

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:
**13540 SOUTHEAST 159TH PLACE RENTON, WA 98058**

[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in
**THE COVENANTS, CONDITIONS AND RESTRICTIONS FILED OF RECORD THAT AFFECT THE PROPERTY.**

(the "Declaration"). The Property is a part of a planned unit development known as
**CEDARWOOD DIVISION VI**

[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association;

MULTISTATE PUD RIDER--Single Family/Second Mortgage--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3150 1/01
DOCUZPTI
DOCUZPTI.VTX  04/04/2003                                      *(page  1 of 3 pages)*                                      Amended

I do hereby certify this to be a true
copy of the original document.

By: _____

Copy

**Servicing Number: 11129867**                                  11129867
and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

B. **Hazard Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and hazards included within the term "extended coverage," then:

(i) Lender waives the provision in Uniform Covenant 2 for the monthly payment to Lender of the yearly premium installments for hazard insurance on the Property; and

(ii) Borrower's obligation under Uniform Covenant 5 to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage provided by the master or blanket policy.

In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, with any excess paid to Borrower.

C. **Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

D. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Uniform Covenant 9.

E. **Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

F. **Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

# MORTGAGE LOAN STATEMENT

**Nationstar**
MORTGAGE

RETURN SERVICE ONLY
PLEASE DO NOT SEND MAIL TO THIS ADDRESS
PO BOX 619063
DALLAS, TX 75261-9063

## CONTACT INFORMATION

Customer Service: **1-888-480-2432**
Monday - Thursday, 8 a.m. - 8 p.m. CT
Friday, 8 a.m. - 6 p.m. CT and Saturday, 8 a.m. - 2 p.m. CT
MyNationstar.com
Your Dedicated Loan Specialist is Breshea Harris and can be reached
at (888) 850-9398 EXT. 4070746 or via mail at:
8950 Cypress Waters Blvd, Coppell, TX 75019

1-800-72667-0014319-001-1-000-001-000-000

BARBARA ROBINSON
13540 SE 159TH PL
RENTON WA 98058-8809

| | |
|---|---|
| Statement Date: | 10/18/2016 |
| Loan Number: | |
| Payment Due Date | 11/01/2016 |
| **Amount Due:** | **$38,959.84** |

If payment is received on or after 11/17/16; $0.00 late fee will be charged.

Property Address:
13540 SE 159TH PL
RENTON WA 98058

## Account Information

| | |
|---|---|
| Interest Bearing Principal Balance | $641,101.50 |
| Interest Rate (Until 09/01/2017) | 2.000% |
| Escrow Balance | $1,277.63 |

The Principal Balance does not represent the payoff amount of your account and is not to be used for payoff purposes.

## Explanation of Amount Due

| | |
|---|---|
| Principal | $1,028.94 |
| Interest | $1,069.65 |
| Escrow Amount (for Taxes & Insurance) | $1,028.05 |
| Optional Products and Services | $0.00 |
| **Regular Monthly Payment** | **$3,126.64** |
| Total Fees and Charges | $3,454.45 |
| Overdue Payment(s) | $32,378.75 |
| Partial Payment (Unapplied) | -$0.00 |
| **Total Amount Due** | **$38,959.84** |

Please call Nationstar to request the full amount owed on your account as the amount due may be different than stated here due to interest and other charges or credits.

## Lender Paid Expense Summary

| | Activity Since Last Statement | Total |
|---|---|---|
| Legal Fees | $46.00 | $737.21 |
| Property Inspections | $15.00 | $435.00 |
| Total | $111.00 | $1,172.21 |

## Past Payment Breakdown

| | Payments Rec'd since 09/21/2016 | Paid Year to Date |
|---|---|---|
| Principal | $0.00 | $1,027.22 |
| Interest | $0.00 | $1,071.37 |
| Escrow (Taxes & Insurance) | $0.00 | $1,028.05 |
| Optional Insurance | $0.00 | $0.00 |
| Fees and Charges | $0.00 | $14.00 |
| Lender Paid Expenses | $0.00 | $0.00 |
| Partial Payment (Unapplied) | $0.00 | $0.00 |
| Total | $0.00 | $3,140.64 |

## Transaction Activity (09/21/2016 to 10/18/2016)

| Date | Description | Total | Principal | Interest | Escrow | Other |
|---|---|---|---|---|---|---|
| 10/14/2016 | Legal Fees | -$85.20 | | | | -$85.20 |
| 10/04/2016 | Legal Fees | -$10.80 | | | | -$10.80 |
| 09/30/2016 | Disbursement-County Tax | $5,103.85 | | | $5,103.85 | |
| 09/30/2016 | Property Inspections | -$15.00 | | | | -$15.00 |

## Important Messages                    (See Reverse side for Additional Critical Notices)

As shown above, your escrow account has a negative balance. This shortage in your escrow account may result in an increase in your monthly escrow payment. We recommend you make additional payments to your escrow to eliminate or reduce the shortage.

"Lender Paid Expenses" are funds paid by Nationstar on your behalf to another company. These expenses may include, but are not limited to, Legal Fees, Property Taxes, Homeowners Insurance, and Property Inspections.

"Other Unpaid Fee(s)" include, but are not limited to, phone pay fees, insufficient funds fees, or convenience fees.

If you do not wish to receive paper statements, simply log into your account at MyNationstar.com and alter your selection to eCorrespondence. eCorrespondence offers convenient monthly email reminders, no lost mail, and archived online access to view or download to your personal computer.

This is an attempt to collect a debt and any information obtained will be used for that purpose.

DETACH HERE AND RETURN WITH YOUR PAYMENT. PLEASE ALLOW A MINIMUM OF 7 TO 10 DAYS FOR POSTAL DELIVERY

**Nationstar**
MORTGAGE
MyNationstar.com

☐ PLEASE CHECK BOX IF MAILING ADDRESS OR PHONE NUMBER HAS CHANGED. ENTER CHANGES ON BACK OF COUPON.

BARBARA ROBINSON

NATIONSTAR MORTGAGE
PO BOX 650783
DALLAS, TX 75265-0783

| ACCOUNT NUMBER | TOTAL AMOUNT DUE | |
|---|---|---|
| 0609972989 | 11/01/2016 | $38,959.84 |

WRITE LOAN NUMBER ON YOUR CHECK OR MONEY ORDER AND MAKE PAYABLE TO NATIONSTAR MORTGAGE.

| | PAYMENT DUE IF RECEIVED ON OR AFTER | |
|---|---|---|
| | 11/17/2016 | $38,959.84 |

| | |
|---|---|
| ADDITIONAL ESCROW | $_____ |
| **ADDITIONAL PRINCIPAL | $_____ |
| TOTAL AMOUNT OF YOUR CHECK DO NOT SEND CASH | $_____ |

**All amounts must be paid in full before additional principal reduction can be made.

0609972989 003895984 003895984

# EXHIBIT D

# UCC PRESENTMENT



(https://www.cornell.edu)Cornell University Law School (http://www.lawschool.cornell.edu/)Search Cornell (https://www.cornell.edu/search/)

Uniform Commercial Code (/ucc) › U.C.C. - ARTICLE 3 - NEGOTIABLE INSTRUMENTS (2002) (/ucc/3) › PART 5. DISHONOR (/ucc/3/part_5)

# § 3-501. PRESENTMENT.

(a) "**Presentment**" means a demand made by or on behalf of a person entitled to enforce (/ucc/3/3-301#Personentitledtoenforce) an instrument (/ucc/3/3-104#Instrument) (i) to pay the instrument made to the drawee (/ucc/3/3-103#Drawee) or a party (/ucc/3/3-103#Party) obliged to pay the instrument or, in the case of a note (/ucc/3/3-104#Note) or accepted draft (/ucc/3/3-104#Draft) payable at a bank, to the bank, or (ii) to accept a draft made to the drawee.

(b) The following rules are subject to Article 4, agreement of the parties, and clearing-house rules and the like:

(1) Presentment may be made at the place of payment of the instrument (/ucc/3/3-104#Instrument) and must be made at the place of payment if the instrument is payable at a bank in the United States; may be made by any commercially reasonable means, including an oral, written, or electronic communication; is effective when the demand for payment or acceptance (/ucc/3/3-409#Acceptance) is received by the person to whom presentment (/ucc/3/3-501#Presentment) is made; and is effective if made to any one of two or more makers (/ucc/3/3-103#Maker), acceptors (/ucc/3/3-103#Acceptor), drawees (/ucc/3/3-103#Drawee), or other payors.

(2) Upon demand of the person to whom presentment (/ucc/3/3-501#Presentment) is made, the person making presentment must (i) exhibit the instrument (/ucc/3/3-104#Instrument), (ii) give reasonable identification and, if presentment is made on behalf of another person, reasonable evidence of authority to do so, and (iii) sign a receipt on the instrument for any payment made or surrender the instrument if full payment is made.

(3) Without dishonoring the instrument (/ucc/3/3-104#Instrument), the party (/ucc/3/3-103#Party) to whom presentment (/ucc/3/3-501#Presentment) is made may (i) return the instrument for lack of a necessary indorsement (/ucc/3/3-204#Indorsement), or (ii) refuse payment or acceptance (/ucc/3/3-409#Acceptance) for failure of the presentment to comply with the terms of the instrument, an agreement of the parties, or other applicable law or rule.

(4) The party (/ucc/3/3-103#Party) to whom presentment (/ucc/3/3-501#Presentment) is made may treat presentment as occurring on the next business day after the day of presentment if the party to whom presentment is made has established a cut-off hour not earlier than 2 p.m. for the receipt and processing of instruments (/ucc/3/3-104#Instrument) presented for payment or acceptance (/ucc/3/3-409#Acceptance) and presentment is made after the cut-off hour.

| ‹ PART 5. DISHONOR (/ucc/3/part_5) | up (/ucc/3/part_5) | § 3-502. DISHONOR. › (/ucc/3/3-502) |
|---|---|---|

## UCC Toolbox

- Search UCC (/search/ucc)
- About Uniform Laws (/ucc/uniform)
- State Uniform Commercial Codes (/wex/table_ucc)

## Find a Lawyer

SPONSORED LISTINGS

P R E M I U M

### Harold F. Vhugen (https://lawyers.law.cornell.edu/lawyer/harold-f-vhugen-845866)

(http://lawyers.law.cornell.edu/lawyer/harold-f-vh‑

845        Seattle, WA
**(800) 448-8008 (tel:8004488008)**
Arbitration & Mediation, Business Law, Maritime, Personal Injury, Insurance Claims

| website | email | profile |
|---|---|---|

P R E M I U M

### Christopher M. Larson (https://lawyers.law.cornell.edu/lawyer/christopher-m-larson-1490929)

(https://lawyers.law.cornell.edu/lawyer/christopher-m-larson-

# EXHIBIT E

# USC VALIDATION

Cornell University
Law School

Search Law School    Search Cornell

**LII** / Legal Information Institute

home    search    find a lawyer    donate

## U.S. Code

main page  faq  index  search



TITLE 15 > CHAPTER 41 > SUBCHAPTER V > § 1692g

## § 1692g. Validation of debts

### (a) Notice of debt; contents

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

**(1)** the amount of the debt;

**(2)** the name of the creditor to whom the debt is owed;

**(3)** a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

**(4)** a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

**(5)** a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

### (b) Disputed debts

If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

### (c) Admission of liability

The failure of a consumer to dispute the validity of a debt under this section may not be construed by any court as an admission of liability by the consumer.

### (d) Legal pleadings

A communication in the form of a formal pleading in a civil action shall not be treated as an initial communication for purposes of subsection (a).

### (e) Notice provisions

The sending or delivery of any form or notice which does not relate to the collection of a debt and is expressly required by title 26, title V of Gramm-Leach-Bliley Act [15 U.S.C. 6801 et seq.], or any provision of Federal or State law relating to notice of data security breach or privacy, or any regulation prescribed under any such provision of law, shall not be treated as an initial communication in connection with debt collection for purposes of this section.

**Ask A Lawyer Online.**
Get an Answer ASAP!

Donations cover only 20% of our costs.

# EXHIBIT F

# Validation Letter 2

From:    Barbara Ann Robinson
         c/o 13540 SE 159th Place
         Renton, washington republic
         Hereinafter collectively referred to as Claimant

To:      JAY BRAY d/b/a C.E.O.
         NATIONSTAR MORTGAGE
         8950 Cypress Waters Boulevard,
         Coppell, Texas, 75019
         Hereinafter referred to as Respondent

November 14, 2016

VIA: Certified Mail # 7016 1370 0000 4868 3633

**Re: Loan #**▮▮▮▮▮▮▮ in the amount of $641,791.80, originally dated February 16, 2005.

This letter is a follow up letter to the validation request letter previously sent to you via certified mail.

This letter is being sent to you in response to a listing on my credit reports. This notice is sent pursuant to the Fair Debt Collection Practices Act, 15 USC 1692g Sec. 809 (b), that your claim is disputed, that you were required to provide validation, and that you are now in violation of Federal and State law because you did not provide proper validation within the required time frame.

My previous letter to NATIONSTAR MORTGAGE. (hereinafter "Collector") stated that I was disputing the above account and requesting that Collector provide legal validation of the alleged debt. I did not request "verification" or proof of my mailing address, but a request for validation made pursuant to the above named Title and Section. The FDCPA states you must cease collection activity until you have produced validation of the alleged debt, if so requested. As per the Federal Trade Commission, this includes reporting to the credit bureaus, which Collector obviously has done illegally.

By law, Collector must validate the debt and must cease collection activity during the period Collector is validating the alleged debt. At the end of 30 days, NATIONSTAR MORTGAGE must have either provided the required validation or permanently cease collection activity. Additionally, Collector is required by law to notify credit reporting agencies that the account is in dispute.

At this time I will also inform you that if Collector has reported invalidated information to any of the 3 major Credit Bureaus (Equifax, Experian or TransUnion) this action may constitute fraud under both Federal and State Laws. Due to this fact, if any negative mark is found on any of my credit reports by NATIONSTAR MORTGAGE or the client that you represent, I will not hesitate in bringing legal action against you and your client for the following, at a minimum:
1) Violation of the Fair Debt Collection Practices Act
2) Defamation of Character

Collector is surely aware of the consequences in violating the Fair Debt Collection Practices Act as well as the multiple violations for which Collector is now responsible. If not, let me point them out for you:

1. FDCPA § 805. Communication in connection with debt collection [15USC1692c] (c) Ceasing Communication
2. FDCPA § 809. Validation of debts [15 USC 1692g]
3. FDCPA § 813. Civil liability [15 USC 1692k] (a) Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this title with respect to any person is liable to such person in an amount equal to the sum of: (1) any actual damage sustained by such person as a result of such failure; (2) (A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000.

There are local and state laws also that have been violated and you will be held accountable for those violations as well if you do not remove these derogatory tradelines from the 3 credit reporting agencies.

Be advised I have written reports from the major credit reporting agencies that show Collector verified the above account with them during the period in which Collector knew the account was in dispute, and that I had requested validation; and that Collector did not report the account to the agencies as being in dispute.

Collector failed to validate the debt and must now, in accordance with the Fair Debt Collection Practices Act, permanently cease all collection activity related to the above-referenced account.

I am in communication with the three major credit reporting agencies and have copies of my consumer credit files. Collector has not indicated to the credit reporting agencies that this account is in dispute. That is, as I pointed out above, a violation of the FDCPA.

Your failure to respond, on a point by point basis, in writing, hand signed, and in a timely manner, has worked as a waiver to any and all of your claims in this matter, and entitles me to presume that you reported these accounts incorrectly to the credit reporting agencies, and under the doctrine of estoppel by silence, I may presume that no proof of the alleged debt, nor therefore any such debt, in fact exists. I demand that Collector delete any and all information it has reported to Equifax, Experian, TransUnion or any other credit reporting agency within five (5) days of Collector's receipt of this notice; and that I be provided with documentation to show same. To reiterate, all references to this account must be deleted and completely removed from my consumer credit files and a copy of such deletion requests shall be sent to me immediately.

According to the Federal Trade Commission, in the present circumstance, a collection agency: "...must delete the information from credit bureau files within five days." Original creditors are also treated as debt collection agencies under the FDCPA according to CFPB, Consumer Financial Protection Bureau, which oversees the administration of the FDCPA, when they stated that in regard to Title X of the Dodd-Frank Act (the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010) and the FDCPA that "The FDCPA and the Dodd-Frank Act together prohibit covered persons or service providers, including debt collectors, from engaging in deception while collecting or attempting to collect on consumer debts." Notice this says service providers, which also makes the rest of these laws relate to original creditors and to those servicing the debts and therefore the collection of those debts. In short, the FDCPA does pertain to original creditors.

If Collector fails to comply with applicable requirements of the Fair Debt Collection Practices Act, litigation shall likely ensue. I have documentation for at least eight--and possibly more--blatant violations of federal law, each of which may incur a $1,000 penalty; and, several likely violations of applicable state and local laws as well. Cure the problem or face the likelihood of explaining these violations to a judge.

Additionally, should Collector fail to cure the violations within the stated period, formal complaints will be filed with the Federal Trade Commission; the American Collectors Association International; the United States Postal Inspection Service Mail Fraud Division; and the Better Business Bureau, State Insurance Commissioner, Better Business Bureau, Secret Service (for counterfeiting), Treasury Department, and others if need be.

Collector may wish to check on the Statute of Limitations for this type of debt.

While I prefer not to litigate, if Collector fails to delete the information from the credit reporting agencies within five (5) days of receipt of this certified letter, I will find it necessary to sue Collector for damages and declaratory relief under the Fair Debt Collection Act. Because the Fair Credit Reporting Act provides concurrent jurisdiction in federal and state courts.

If litigation against Collector is necessary, it will also involve Collector's client if it is a different party than yourself since they are liable and responsible for Collector's actions.

You did not answer my requests point by point as required by law.  I had requested that you provided proof of claim.  A copy of the security instrument is not a sufficient proof of claim as per U.C.C. - ARTICLE 3 -§3-501 (b) 2 (1).  Under this code, I am entitled to have the instrument presented to me as you are required to upkeep the legal document entrusted to you.

Under USC Title 18 Chapter 25, you are engaging in counterfeiting and such behavior is a felony. Providing a photocopy of a security instrument is not only unconscionable but is illegal.  I had asked for the visual inspection of the original promissory note, not a copy.

You did not provide any proof to sufficiently satisfying your claim under U.C.C. - ARTICLE 3 -§3-302 that you are a note holder in due course.
You did not stipulate whether or not you were the holder in due course.
You did not stipulate whether this loan was securitized as required by law.

Therefore, you admit to the following:
**1) You admit that you are a servicer of the promissory note.**
**2) You admit that the loan has been securitized.**
**3) You admit that you are not a real party of interest in this controversy.**
**4) You admit that you are a debt collector that is not the original creditor.**

Under the Federal Rules of Civil Procedure Rule 36, you are advised to notify me within 14 days should you wish to contest any of the above allegations with specific proof.  Failure to do so means that you fully admit to all allegations as truth. These admissions will be used as evidence against you in any future controversy involving this matter.

Cease and Desist: I am requesting, in writing, that no telephone contact be made by Collector to my home or other telephone. If Collector attempts telephone communication with me it will be considered harassment and I will have no choice but to file suit. Should any telephonic communication be made by Collector, be advised that the communication will be recorded for use as evidence.

All future communications with me must be done in writing and sent to the postal address noted in this letter.

Best Regards,

*Barbara Ann Robinson*

**Barbara Ann Robinson**

Cc: Federal Trade Commission, U.S. Postal Inspection Service - Mail Fraud

<u>Notice of Lien</u>

From:   Barbara Ann Robinson
        c/o 13540 SE 159th Place
        Renton, washington republic


To:     JAY BRAY d/b/a C.E.O.
        NATIONSTAR MORTGAGE
        8950 Cypress Waters Boulevard,
        Coppell, Texas, 75019

**November 14, 2016**

Notice to Agent is notice to principle.  Notice to principle is notice to agent. This Notice of Lien is to
recoup the exact value of the illegally collected debt in the amount of $ 641,791.80 as of the date of this
notice currently on the Barbara Robinson SOCIAL SECURITY #████████868, 2%.

This injury and harm to the person will be offset in the exact amount illegally collected as
compensatory damages.  To get a Satisfaction of Lien and dismissal of current and future court actions,
simply mark the credit reports of the Barbara Robinson person as paid in full and on time.  In addition,
email **MrsBarbara@hotmail.com** to arrange pick up of documents. No mail will be accepted except
email.  No service of process will be granted.

Revelation **9:11** (KJV)
[11] And they had a king over them, which is the angel of the bottomless pit, whose name in the Hebrew
tongue is Abaddon, but in the Greek tongue hath his name Apollyon.

Psalm 23:4 (KJV)
[4] Yea, though I walk through the valley of the shadow of death, I will fear no evil: for thou art with me;
thy rod and thy staff they comfort me.

By: *Barbara Ann Robinson*
**Barbara Ann Robinson**

King County  KING        )
                         ) ss:
Washington State  Wa     )

CHRISTOPHER BRODIE NELSON
NOTARY PUBLIC
STATE OF WASHINGTON
My Commission Expires April 29, 2020

I have hereunto set my hand and seal of office On this 15th Day of November, 2016

Notary Public _____

# EXHIBIT G

# Credit Report From Credit Karma

Full Credit Report | Cred...  ×

Credit Karma Inc. [US] | https://www.creditkarma.com/myfinances/creditreport/transunion#accounts



NATIONSTAR          Home Equity          Feb 16, 2005     Closed                                    $0

**Account Details**

| | | |
|---|---|---|
| Last Reported | Mar 20, 2015 | |
| Creditor Name | NATIONSTAR | |
| Account Type | Second Mortgage | |
| Account Status | Closed - Derogatory | |
| Opened Date | Feb 16, 2005 | |
| Closed Date | Mar 20, 2015 | |
| Limit | -- | |
| Term | 180 Months | |
| Monthly Payment | $1,019 | |
| Responsibility | Individual | |
| Balance | $0 | |
| Highest Balance | $149,007 | |
| Payment Status | Collection/Charge-Off | |
| Worst Payment Status | Unknown | |
| Date of Last Payment | -- | |
| Amount Past Due | $0 | |
| Times 30/60/90 Days Late | 0/0/0 | |
| Remarks | Payment after charge off/collection Transferred to recover | |

**Payment History**

Latest Status: Collection/Charge-Off

No payment history has been reported by this creditor.

**Creditor Contact Details**

NATIONSTAR MORTGAGE LLC
350 HIGHLAND
HOUSTON, TX
77067

Direct Dispute™  NEW

See something wrong?
We can help you dispute an error with TransUnion.

# EXHIBIT H

# FDCPA $1,000 Fine



Cornell University
Law School

**LII** / Legal Information Institute

## U.S. Code

main page  faq  index  search



TITLE 15 > CHAPTER 41 > SUBCHAPTER V > § 1692k

### § 1692k. Civil liability

#### (a) Amount of damages

Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—

**(1)** any actual damage sustained by such person as a result of such failure;

**(2)**

> **(A)** in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000; or

> **(B)** in the case of a class action, (i) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector; and

**(3)** in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court. On a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs.

#### (b) Factors considered by court

In determining the amount of liability in any action under subsection (a) of this section, the court shall consider, among other relevant factors—

**(1)** in any individual action under subsection (a)(2)(A) of this section, the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional; or

**(2)** in any class action under subsection (a)(2)(B) of this section, the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, the resources of the debt collector, the number of persons adversely affected, and the extent to which the debt collector's noncompliance was intentional.

#### (c) Intent

A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

#### (d) Jurisdiction

An action to enforce any liability created by this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within one year from the date on which the violation occurs.

#### (e) Advisory opinions of Commission

No provision of this section imposing any liability shall apply to any act done or omitted in good faith in conformity with any advisory opinion of the Commission, notwithstanding that after such act or omission has occurred, such opinion is amended, rescinded, or determined by judicial or other authority to be invalid for any reason.

**Ask A Lawyer Online.**
Get an Answer ASAP!

Donations cover only 20% of our costs.

Ads by Google

# EXHIBIT I

# CFPB Bulletin

**cfpb** Consumer Financial
Protection Bureau

1700 G Street, N.W., Washington, DC 20552

**CFPB Bulletin 2013-08 (Fair Debt Collection Practices Act and the Dodd-Frank Act)**

**Date:  July 10, 2013**

**Subject: Representations Regarding Effect of Debt Payments on Credit Reports and Scores**

In response to recent practices observed during supervisory examinations and enforcement investigations, the Consumer Financial Protection Bureau (CFPB or Bureau) issues this bulletin to provide guidance to creditors, debt buyers, and third-party collectors about compliance with the Fair Debt Collection Practices Act (FDCPA)[1] and sections 1031 and 1036 of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 (Dodd-Frank Act)[2] when making representations about the impact that payments on debts in collection may have on credit reports and credit scores.

### A.  Legal Background

The Dodd-Frank Act granted the CFPB authority to issue regulations and guidance related to the FDCPA and Title X of the Dodd-Frank Act.[3] The FDCPA makes it illegal for a debt collector to "use any false, deceptive, or misleading representation or means in connection with the collection of any debt."[4]  In addition, it is illegal for any covered person or service provider of consumer financial products or services to engage in any deceptive act or practice in violation of the Dodd-Frank Act.[5]  The FDCPA and the Dodd-Frank Act together prohibit covered persons or service providers, including debt collectors, from engaging in deception while collecting or attempting to collect on consumer debts.

### B.  Deceptive Claims Regarding Debt Payments and Credit Reports and Scores

While communicating with consumers, creditors and debt buyers (collectively "debt owners") and third-party debt collectors often make material representations intended to persuade consumers to pay debts in collection.[6]  Such representations may include, but are not limited to, statements regarding the relationship between:

- Paying debts in collection and improvements in a consumer's credit report;
- Paying debts in collection and improvements in a consumer's credit score;
- Paying debts in collection and improvements in a consumer's creditworthiness; or

---

[1] 15 U.S.C. § 1692 *et seq.*
[2] 12 U.S.C. §§ 5531, 5536.
[3] 12 U.S.C. § 5512(b).
[4] 15 U.S.C. § 1692e.
[5] 12 U.S.C. §§ 5531(a), 5536(a)(1)(B).
[6] For the purposes of this bulletin, "debts" refers to debts in collection.

**consumerfinance.gov**

- Paying debts in collection and the increased likelihood of a consumer receiving credit or more favorable credit terms from a lender.

Representations like those discussed in this bulletin are likely to be important to many consumers who view credit reporting as an important determinant of their future access to credit and other opportunities. Based on its supervision, enforcement, and other activities, the CFPB is aware that these types of representations are being made and is concerned that some of them may be deceptive under the FDCPA, the Dodd-Frank Act, or both.[7]

## 1. Effects on Credit Reports

One example of a potentially deceptive claim concerns representations that debt owners and third-party debt collectors may make about obsolete debt, which can be defined for the purposes of this bulletin as debt that the Fair Credit Reporting Act (FCRA) prohibits consumer reporting agencies from including on credit reports for most purposes due to the length of time that has passed since a consumer initially defaulted. The FCRA imposes time limits (usually seven years) on including information about debts in certain credit reports.[8] A debt owner or third-party debt collector representing that payments on obsolete debts will result in the removal of information about the debt from the consumer's credit report may well deceive consumers, because such information likely would not have appeared on reports for most purposes even if the debt had remained unpaid.

Another example of a potentially deceptive claim involves representations that debt owners and third-party debt collectors may make about non-obsolete debts. Payments on debts in collection will change credit reports only if debt owners or third-party debt collectors furnish information about the payments to credit reporting agencies and the agencies add the information to credit files and credit reports. If debt owners or third-party debt collectors do not furnish payment information to credit reporting agencies, then it may well be deceptive for them to make representations about how debt payments will be reflected on a consumer's credit report.[9]

## 2. Effects on Credit Scores

Another potentially deceptive claim involves representations that debt owners and third-party debt collectors may make about how paying debts in collection will improve credit scores. Even assuming that debt owners and third-party collectors report payments on debts in collection to consumer reporting agencies, in light of the numerous factors that influence an individual consumer's credit score, such payments may not improve the credit score of the consumer to whom the representation is being made. Consequently, debt owners or third-party debt collectors

---

[7] Collectors who make claims are responsible for both the literal language of their representations and claims that reasonable consumers take away from those representations. *See FTC Policy Statement on Deception* (Oct. 14, 1983), *published at* 103 F.T.C. 110, 174 (1984). The CFPB is informed by the FTC's standard for deception. CFPB Supervision and Examination Manual, UDAAP 5 (Oct. 2012) (online at http://files.consumerfinance.gov/f/201210_cfpb_supervision-and-examination-manual-v2.pdf).

[8] Section 605 of the FCRA, 15 U.S.C. § 1681c. We note that there are exceptions to the general rule and, as a result, information about debts that are more than seven years old may appear under some circumstances or in certain consumer reports.

[9] *See American Express Centurion Consent Order, American Express Bank, FSB Consent Order, and American Express Travel Related Services Company, Inc. Consent Order* (collectively "American Express Consent Orders"), October 1, 2012, http://www.consumerfinance.gov/pressreleases/cfpb-orders-american-express-to-pay-85-million-refund-to-consumers-harmed-by-illegal-credit-card-practices/.

may well deceive consumers if they make representations that paying debts in collection will improve a consumer's credit score.

### 3. Effect on Creditworthiness

A third example of a potentially deceptive claim involves representations that owners of debts and third-party debt collectors may make about how paying debts in collection will improve creditworthiness or enhance the likelihood that a consumer will subsequently receive credit from a lender.  Potential lenders may use a variety of sources of information to assess the creditworthiness of prospective borrowers, including credit report or credit score information.  Even where they use the same information, potential lenders may assign different weight to information in evaluating the creditworthiness of prospective borrowers.  The nature and extent of the impact of a payment on a particular debt in collection to a prospective borrower's creditworthiness may depend on all of the information potential lenders consider and how they weigh that information, factors that debt owners or third-party debt collectors often will not know.  Debt owners or third-party debt collectors may well deceive consumers if they make representations about the nature or extent of improved creditworthiness that result from paying debts in collection.

### C.  CFPB Expectations

The examples of potentially deceptive claims concerning the effect of paying debts in collection on credit reports, credit scores, and creditworthiness set forth in this bulletin are illustrative and non-exhaustive.  The prevalence of these types of potentially deceptive claims is a matter of significant concern to the CFPB.

Debt owners and third-party debt collectors should take steps to ensure that any claims that they make about the effect of paying debts in collection on consumers' credit reports, credit scores, and creditworthiness are not deceptive.  In the course of supervision activities or enforcement investigations, the CFPB may review communication materials, scripts, and training manuals and related documentation to assess whether owners of debts and third-party debt collectors are making these types of claims and the factual basis for them.  In addition, the CFPB will assess whether additional supervisory, enforcement, or other actions may be necessary to ensure that the debt collection market functions in a fair, transparent, and competitive manner.

# EXHIBIT J

# UCC Negotiable Instrument



Cornell University
Law School

Search Law School      Search Cornell

# LII / Legal Information Institute

# UCC: uniform commercial code

**U.C.C. - ARTICLE 3 - NEGOTIABLE INSTRUMENTS
..PART 1. GENERAL PROVISIONS AND DEFINITIONS**

## § 3-104. NEGOTIABLE INSTRUMENT.

- (a) Except as provided in subsections (c) and (d), **"negotiable instrument"** means an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it:
  - (1) is payable to bearer or to order at the time it is issued or first comes into possession of a holder;
  - (2) is payable on demand or at a definite time; and
  - (3) does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order may contain (i) an undertaking or power to give, maintain, or protect collateral to secure payment, (ii) an authorization or power to the holder to confess judgment or realize on or dispose of collateral, or (iii) a waiver of the benefit of any law intended for the advantage or protection of an obligor.
- (b) **"Instrument"** means a negotiable instrument.
- (c) An order that meets all of the requirements of subsection (a), except paragraph (1), and otherwise falls within the definition of "check" in subsection (f) is a negotiable instrument and a check.
- (d) A promise or order other than a check is not an instrument if, at the time it is issued or first comes into possession of a holder, it contains a conspicuous statement, however expressed, to the effect that the promise or order is not negotiable or is not an instrument governed by this Article.
- (e) An instrument is a **"note"** if it is a promise and is a **"draft"** if it is an order. If an instrument falls within the definition of both "note" and "draft," a person entitled to enforce the instrument may treat it as either.
- (f) **"Check"** means (i) a draft, other than a documentary draft, payable on demand and drawn on a bank or (ii) a cashier's check or teller's check. An instrument may be a check even though it is described on its face by another term, such as "money order."
- (g) **"Cashier's check"** means a draft with respect to which the drawer and drawee are the same bank or branches of the same bank.
- (h) **"Teller's check"** means a draft drawn by a bank (i) on another bank, or (ii) payable at or through a bank.
- (i) **"Traveler's check"** means an instrument that (i) is payable on demand, (ii) is drawn on or payable at or through a bank, (iii) is designated by the term "traveler's check" or by a substantially similar term, and (iv) requires, as a condition to payment, a countersignature by a

person whose specimen signature appears on the instrument.

- (j) **"Certificate of deposit"** means an <u>instrument</u> containing an acknowledgment by a bank that a sum of money has been received by the bank and a <u>promise</u> by the bank to repay the sum of money. A certificate of deposit is a <u>note</u> of the bank.

<u>previous section</u> | <u>next section</u>
<u>overview</u>
<u>notes</u>

© Copyright 2005 by The American Law Institute and the National Conference of Commissioners on Uniform State Laws; reproduced, published and distributed with the permission of the Permanent Editorial Board for the Uniform Commercial Code for the limited purposes of study, teaching, and academic research.

# EXHIBIT K

# Blank Endorsement on Loan

(Page 1 of 5)

947637

## ADJUSTABLE RATE NOTE
### (LIBOR Index - Rate Caps)

ROBINSON
Loan #:
MIN:

Servicing Number:

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

DURING THE FIRST **Five** ( **5.000** ) YEARS, INTEREST ONLY PAYMENTS WILL BE REQUIRED TO BE MADE. THIS MEANS THAT THE REGULAR MONTHLY PAYMENT WILL NOT REDUCE THE AMOUNT I OWE DURING THE FIRST **Five** ( **5.000** ) YEARS OF MY LOAN.

**February 16, 2005**          **BELLEVUE**                    **Washington**
[Date]                         [City]                          [State]

**13540 SOUTHEAST 159TH PLACE, RENTON, WA 98058**

[Property Address]

### 1. BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S. $ **596,031.00** (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **WMC MORTGAGE CORP.**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST
Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **5.990** %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

### 3. PAYMENTS
**(A) Time and Place of Payments**
I will pay interest and, following the "interest-only period" described below, principal by making a payment every month.

I will make my monthly payments on the **1st** day of each month beginning on **April 1, 2005**. I will make payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before principal. If, on **March 1, 2035**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **6501 IRVINE CENTER DRIVE, IRVINE, CA 92618** or at a different place if required by the Note Holder.

**(B) Amount of My Monthly Payment**
Each of my initial monthly payments will be in the amount of U.S. $ **2,975.19**. This payment amount may change. I will make payments of interest only on the entire unpaid principal balance every month for the **Sixty** ( **60** ) payments due under this Note (the "interest-only period"). Following the interest-only period, I will pay principal and interest by making payments every month thereafter in an amount sufficient to fully amortize and repay the unpaid principal balance of the Note over the then-remaining term of the Note in substantially equal monthly payments, based upon the then in effect interest rate from time to time.

DOCUMSC
WMCMSP1.VTX  07/05/2004

Page 1 of 5



**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the first day of  March, 2007          , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index." If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information.

The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **Seven**                                percentage point(s) (  7.000 %) to the Current Index for such Change Date. The Note Holder will then round the result of the addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D), this rounded amount will be my new interest rate until the next Change Date.

During the "interest-only period," the Note Holder will determine the amount of the monthly payment that would be sufficient to pay accrued interest only on the unpaid principal balance.  This will be the amount of my monthly payment until the earlier of the next Change Date or the end of the "interest-only period" unless I make a voluntary prepayment of principal during such period.  If I make a voluntary prepayment of principal during the "interest-only period," my payment amount for subsequent payments during the "interest-only period" will be reduced to the amount necessary to pay interest only at the then current interest rate on the  remaining unpaid principal balance.

At the end of the "interest-only period" and on each Change Date thereafter, the Note Holder will determine the amount of the monthly payment that would be sufficient to repay in full the unpaid principal balance that I will owe at that Change Date in substantially equal monthly payments over the remaining term of the Note. The result of this calculation will be the new amount of my monthly payment.  After the end of the "interest-only period," my payment amount will not be adjusted due to voluntary principal payment until the next Change Date.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than  8.990    % or less than  5.990    %.  Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than  One                              (1.000  %) from the rate of interest I have been paying for the preceding  6            months.  My interest rate will never be greater than  12.490       % or less than  5.990   %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayment to reduce the amount of principal that I owe under this Note. However, the Note Holder may apply my prepayment to the accrued and unpaid interest on the prepayment amount before

applying my prepayment to reduce the principal amount of the Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase.

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of    **15**    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000**    % of my overdue payment of Interest for the first **Sixty**                                           (**60**   ) payments, and  **5.000**       % of my overdue payment of principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver by Note Holder**

Even if, at a time I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security

(Page 4 of 5)

Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

(Page 5 of 5)



If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

*Barbara Robinson    2/18/05*
- Borrower - BARBARA ROBINSON - Date -

Pay to the order of

_____

without recourse,

*[signature]*
Yvette Balderrama, Assistant Secretary
WMC Mortgage Corp.

[Sign Original Only]

.vtx . 07/00/2004        Page 5 of 5

(Page 1 of 3)

Copy 

## NOTE
### WITH BALLOON PAYMENT

ROBINSON
Loan #:
MIN:

Serv #:

**THIS LOAN IS PAYABLE IN FULL AT MATURITY. SINCE YOU HAVE SELECTED A PAYMENT SCHEDULE WHICH WILL NOT PAY THE LOAN IN FULL BY THE MATURITY DATE, YOU WILL NEED TO PAY A LUMP SUM, OR BALLOON PAYMENT, WHICH WILL PAY OFF THE ENTIRE AMOUNT OF THE PRINCIPAL BALANCE OF THE LOAN AND ANY UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL THEREFORE BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.**

February 16, 2005                     BELLEVUE                              , Washington
        *Date*                              *City*

13540 SOUTHEAST 159TH PLACE RENTON, WA 98058
                          *[Property Address]*

1.     **BORROWER'S PROMISE TO PAY**
       In return for a loan that I have received, I promise to pay U.S. $ 149,007.00     (this amount will be called "principal"), plus interest, to the order of the Lender. The Lender is   WMC MORTGAGE CORP.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note will be called the "Note Holder."

2      **INTEREST**
       I will pay interest at a yearly rate of 9.990      %.
       Interest will be charged on that part of principal which has not been paid. Interest will be charged beginning on the date of this Note and continuing until the full amount of principal has been paid.

3.     **PAYMENTS**
       I will pay principal and interest by making payments each month of U.S. $1,306.54
       I will make my payments on the 1st      day of each month beginning on April 1, 2005
I will make these payments every month until I have paid all of the principal and interest and any other charges, described below, that I may owe under this Note. If, on   March 1, 2020      I still owe amounts under this Note, I will pay all those amounts, in full, on that date.
       I will make my monthly payments at   6501 IRVINE CENTER DRIVE, IRVINE, CA 92618
                                                                            or at a different place if required by the Note Holder.

4.     **BORROWERS FAILURE TO PAY AS REQUIRED**
       **(A)     Late Charge for Overdue Payments**
       If the Note Holder has not received the full amount of any of my monthly payments by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000      % of my overdue payment, but not less than U.S. $ N/A      and not more than U.S. $ N/A      .
I will pay this late charge only once on any late payment.
       **(B)     Default**
       If I do not pay the overdue amount by the date stated in the notice described in Section 3 above, I will be in default.
       Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.
       **(C)     Notice From Note Holder**
       If I am in default, the Note Holder may send me a written notice telling me that, if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 10 days after the date on which the notice is mailed to me or, if it is not mailed, 10 days after the date on which it is delivered to me.

WASHINGTON — SECOND BALLOON MORTGAGE – 1/80 – FNMA/FHLMC UNIFORM INSTRUMENT
DOCUDLNI                                        Page 1 of 3                                    Form 3948
WMCDBLNL.VTX  11/11/2004

610   023072061   N   001   001

(Page 2 of 3)

Copy

**(D)   Payment of Note Holder's Costs and Expenses**
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back for all of its costs and expenses to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**5.   THIS NOTICE SECURED BY A DEED OF TRUST**
In addition to the protections given to the Note Holder under this Note, a Deed of Trust, dated **February 16, 2005**, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Deed of Trust describes how and under what conditions I may be required to make immediate payment in full of all amounts that I owe under this Note.

**6.   BORROWER'S PAYMENTS BEFORE THEY ARE DUE**
I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in a letter that I am doing so. A prepayment of all of the unpaid principal is known as a "full prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment."

I may make a full prepayment or a partial prepayment without paying any penalty. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no delays in the due dates or changes in the amounts of my monthly payments unless the Note Holder agrees in writing to those delays or changes. I may make a full prepayment at any time. If I choose to make a partial prepayment, the Note Holder may require me to make the prepayment on the same day that one of my monthly payments is due. The Note Holder may also require that the amount of my partial prepayment be equal to the amount of principal that would have been part of my next one or more monthly payments.

**7.   BORROWER'S WAIVERS**
I waive my rights to require the Note Holder to do certain things. Those things are: (A) to demand payment of amounts due (known as "presentment"); (B) to give notice that amounts due have not been paid (known as "notice of dishonor"); (C) to obtain an official certification of nonpayment (known as a "protest"). Anyone else who agrees to keep the promises made in this Note, or who agrees to make payments to the Note Holder if I fail to keep my promises under this Note, or who signs this Note to transfer it to someone else also waives these rights. These persons are known as "guarantors, sureties and endorsers."

**8.   GIVING OF NOTICES**
Any notice that must be given to me under this Note will be given by delivering it or by mailing it by certified mail addressed to me at the Property Address above. A notice will be delivered or mailed to me at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by certified mail to the Note Holder at the address stated in Section 3 above. A notice will be mailed to the Note Holder at a different address if I am given a notice of that different address.

Copy

§ 9.    RESPONSIBILITY OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each of us is fully and personally obligated to pay the full amount owed and to keep all of the promises made in this Note.  Any guarantor, surety, or endorser of this Note (as described in Section 7 above) is also obligated to do these things.  The Note Holder may enforce its rights under this Note against each of us individually or against all of us together.  This means that any one of us may be required to pay all of the amounts owed under this Note.  Any person who takes over my rights or obligations under this Note will have all of my rights and must keep all of my promises made in this Note.  Any person who takes over the rights or obligations of a guarantor, surety, or endorser of this Note (as described in Section 7 above) is also obligated to keep all of the promises made in this Note.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

*Barbara Robinson*  2/18/05
- Borrower - BARBARA ROBINSON - Date -

Pay to the order of
_____
without recourse.

*Arminda Caldirama*
Arminda Caldirama, Assistant Secretary
WMC Mortgage Corp.

# EXHIBIT L

# MERS Non-Disclosure

Take Judicial Notice

Regarding Case No: 2:17-CV-000610JLR

Robinson, Barbara Ann

        Plaintiff,


vs.


WELLS FARGO BANK
NATIONAL ASSOCIATION, AS
TRUSTEE FOR THE
CERTIFICATE HOLDERS OF THE
MLMI TRUST, MORTGAGE
LOAN ASSET-BACKED
CERTIFICATES, SERIES 2005
WMC2;MORTGAGE
ELECTRONIC REGISTRATION
SYSTEMS, INC.;NATIONSTAR
MORTGAGE BANK OFAMERICA;
JAY BRAY; AZTEC
FORECLOSURE CORPORATION
OF WASHINGTON

        Defendant(s).

Topic: Mortgage Electronic Registration Systems, Inc.
(MERS)/BANK OF AMERICA (Banks of America)

## ISSUE #1
### (NON-DISCLOSURE & MISREPRESENTATION)

**DEED OF TRUST**
Borrower is the trustor under this Security Instrument.
© "Lender" is WMC MORTGAGE SOLUTIONS, INC.
Lender is a WASHINGTON CORPORATION
and existing under the laws of WASHINGTON STATE
Lender's address is 6320 Canoga Avenue Woodland Hills, CA, 91367

**DEED OF TRUST**
"MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary
under this Security Instrument. MERS is organized and existing under the laws of Delaware.

**MERS/NB AGREEMENT**
This SECURITY AGREEMENT (as amended, supplemented or modified from time to time, this "Security Agreement") is dated as of June 30, 1998 and is between MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware corporation (the "Borrower"), and WELLS FARGO, a national banking association (the "Bank").

**MERS/NB AGREEMENT**
Section 6.8 Governing Law. This Security Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Virginia.

The Deed of Trust – Fannie Mae Standard Uniform Instrument was created by mandate to contain all terms and conditions sealed within the 4 corners absent all hidden and concealed terms. The addition of MERS obliterates the 4 corner rule and mandate with MERS connection to the MERS/NB Security Credit Agreement.

How is it possible for a consumer, reasonable or otherwise for that matter, to conduct competent due diligence to a prudent decision of acceptance absent all terms and conditions. Competent is a key word on the back end with foreclosure, as we are deemed irresponsible, deadbeats and dragged into kangaroo court that finds for the plaintiffs' while we are deemed as 'incompetents'.

Secondly, did we not enter into agreement with a pretend lender to terms and conditions within the 4-corners of the Fannie Standard Uniform Instrument – with understanding MERS was a merely a 'utility function' of Fannie and Freddie... to laws governed by the state of Delaware?.... ... The MERS/NB agreement to references Delaware as the state of registration, BUT TO TERMS AND CONDITIONS TO THE COMMONWEALTH OF VIRGINIA? Again, this is an issue of mutual assent and nondisclosure to materially pertinent facts necessary to mutual assent....this being to the laws of the Commonwealth of Virginia, which as the paper's writing and diagrams comes with hidden terms and conditions attached of detrimental consequence.

Although it is written that MERS is a separate corporation, if so, where are the terms and conditions of agreement, or did we acquiesce by not requesting said agreement prior to our execution. I do not believe so as not a single borrower had any reps nor disclosure of MERS, not even by name until the closing, and reps and disclosure of MERS was nonchalant to 'MERS is just a utility function of Fannie Mae to track mortgages".

A principal passing false representations through innocent representations of his agent though is fraud.

So what we have is an intentionally concealed agreement and by all rights a fraudulent agreement... BUT, we do not want to scream fraud though to kill this agreement as the Fannie Standard Uniform Instrument is actually a CONCEALED INTER VIVOS TRUST to which we are the grantor to a future donation, which in and of itself is 'unconscionable'.

### ISSUE #2
### Commonwealth of Virginia

Originally, the commonwealth of Virginia had no Maritime jurisdiction, as this was conferred to the federal government in the Constitution of 1787. Over the years, however, Virginia retained "concurrent jurisdiction" over territory, which had otherwise been properly ceded to the United States. Where both the commonwealth and the federal government have enacted legislation over a particular subject

matter, Virginia courts can take cognizance of the matter. This is done in a 'vice-admiralty" capacity, and has given rise to the current "one form of action", which has abrogated the state Citizens' access to due process in the course of the common law.

The second link to the juristic entities is due to the various types of citizenship in the United States. There is a clear difference between federal (U.S.) citizens, and state Citizens (see U.S. v. Cruikshank – need cite –), and this difference lies mainly in their "privileges and immunities" (see Twining v. New Jersey –need cite--). State Citizens are guaranteed due process in the course of the common law (U.S. Constitutional Amendments IV, V, and VI, and Va. Const. Art. I, §§ 8, 11, &c.). <u>Federal (U.S. citizens are entitled only to the due process mentioned in the so-called 14th Amendment to the U.S. Constitution, which has come to mean due process in the course of the civil law.</u>

The important link to the Commonwealth of Virginia is "public money", all of which is hypothecated on credit of the United States. Only departments and agencies of United States Government and instrumentalities of the United States, including the District of Columbia, Puerto Rico, the Virgin Islands, Guam, American Samoa, and the Northern Mariana Islands, and officers and employees of these governments, are entitled to receive and use "public money". This is the key link with the banking system: The Federal Deposit Insurance Corporation insures only deposits of "public money". Specification of who is entitled to receive and use public money is spelled out in regulations relating to Treasury Tax and Loan depositories at 31 CFR § 202.1:

"The regulations in this part govern the designation of Depositories and Financial Agents of the Government (hereinafter referred to as depositories), and their authorization to accept deposits of public money and to perform other services Public money includes, without being limited to, revenue and funds of the United States, and any funds the deposit of which is subject to the control or regulation of the United States or any of it officers, agents, or employees"

Those in the constitutionalist movement go on and on about the Federal Reserve Note, which amounts to private-issue scrip. In reality, the Federal Reserve Note is a minor issue compared to public money. Virtually all transaction accounts such as checking and passbook savings accounts are colorable hpythecated on credit of the United States even though financial institutions chartered and/or regulated by federal government, FDIC, and/or the Federal Reserve System employ deceptive, fraudulent, and unlawful means to issue private bills of credit. Credit of the United States is public money.

The Commonwealth of Virginia is an accommodation party in a scheme of cooperative federalism, as the commonwealth receives federal funds in exchange for administering federal mandates. Virginia's link to the "public money" is at § 2.1-360 and § 2.1-195:

**§2.1-360 Definitions**
**As used in this chapter, unless the context otherwise requires: (a) The term "public deposit" shall mean moneys of the Commonwealth or of any county, city, town or other political subdivision thereof, including moneys of any commission, institution, committee, board or officer of the foregoing and any date, circuit, county or municipal court, which moneys are deposited in any qualified public depository in any of the following types of accounts: nonnegotiable or registered time deposits, demand deposits, savings deposits, and any other transaction accounts, and security for such deposit is required by other provisions of law, or is required due to an election of the public depositor. (b) The term "qualified public depository" shall mean any national banking association, federal savings and loan association or federal savings and located in Virgina and any bank, trust company or savings institution organized under Virginia law that**

**receives or holds public deposits which are secured pursuant to this chapter.**

**§2.1-195 General accounting and clearance through Comptroller In the Department of Accounts the Comptroller shall maintain a complete system of general accounting to comprehend the financial transactions of every state department, division, officer, board, commission, institution or other agency owned or controlled by the Commonwealth, whether at the seat of government or not. All transactions in public funds shall clear through the Comptroller's office.**

The Commonwealth of Virginia is a prime trafficker in the hypothecated credit of the United States through and by terms and conditions in the intentionally concealed MERS/NB Security/Credit Agreement that amounts to human trafficking.

The "United States of America", treated separately, is a confederation or compact of insular possessions of the United States, the entity exclusive of and foreign to States of the Union. The section above confirms links to the foreign "United States of America" and "public funds", i.e., "public money", which is the object of the normal tax and the exclusive medium federally chartered and/or regulated financial institutions are authorized by law to traffic in. Since Constitution of the United States mandates that Congress mint gold and silver coin for a national currency, and prohibits the several States from emitting bills of credit or making anything but gold and silver coin a tender for payment of debt, the Federalism/Cooperative Federalism scheme rests on the notion that all people throughout the nation are government officers and employees engaged in "trade or business" entitled to use of "public money" as deferred compensation.

These alleged mortgage loans are in fact and truth lease agreements to future annuities or stated otherwise – deferred compensation.

In and of itself, the juristic, trade or commercial name, i.e., JOHN DOE instead of John Doe, might be insignificant except that it provides a colorable means for holding real people accountable for the artificial entity that theoretically exists at the pleasure of the State. In original capacity, federally chartered, licensed, or regulated financial institutions are associations which can solicit and provide basic financial services such as checking accounts only for qualified association members, those being officers and employees of United States Government and instrumentalities of the United States. So through the Commonwealth of Virginia, and through the intentionally concealed MERS/NB Credit Agreement we are being trafficked exclusively on public money. Both State and Federal income tax systems are privilege excise taxes where the "wage" is not the object, but the measure of the tax. The government officer or employee, and us included are construed to be engaged in "trade or business", and he functions in commerce under a juristic, trade or commercial name. All "credit" colorable extended via federally chartered and/or regulated financial institutions is hypothecated on credit of the United States, with said "credit" not paying, but deferring payment of debt (15 USC § 1602).

Use of the fictional or juristic name, JOHN DOE, is fraud of the first order. It's simply one more device employed as a transparent, insulating barrier over lawful government to defeat and thereby render constitutions of the United States and the de jure commonwealth of Virginia ineffective. For instance, the Circuit Court in the city of Charlottesville accommodate the scheme via civil law process, thus depriving the people of due process in the course of the common law secured by Article I § 11 of the Constitution of the State of Virginia.

The very fact that we are held to terms and conditions in an agreement we have no knowledge nor any disclosure even exists governed by laws of the Commonwealth of Virginia endears us an

accommodating to "public money" policies. No wonder judges rule against us, it is through these policies and the terms and conditions of the MERS/NB agreement that to third-world economic status and involuntary servitude....or in plain terms: SLAVERY.

Usurpation of power not delegated by applicable constitutions, whether as a perpetrator or by accommodation, is betrayal of public trust. Depriving the people of constitutionally secured due process in the course of the common law abridges an indispensable constitutionally secured right. So what is MERS then? It is an accommodation party to the Commonwealth of Virginia to public money, which is an extension of out agreeing to the same by virtue of nominating MERS as mortgagee, beneficiary, and holder. By uninformed consent, by incorporation by reference, by intentional concealment and omission, we were agreeing to indentured slavery.

**ISSUE #3**
**Intentional Concealment of MERS®**

The intentionally concealed **Mortgage Electronic Registration Systems, Inc (MERS)/Nationsbank Credit/Security Agreement** is a publicly accessible document recorded on the Trademark side of the United States Patents and Trademarks Office (USTPO), under the United States Registered Service Mark of MERS

Reg. No. 2,084,831
MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC. (DELAWARE CORPORATION)
1125 15TH STREET, NW
WASHINGTON, DC 20005

FOR: REAL ESTATE DATABASE SERVICES, NAMELY, PROVIDING AND MAINTAINING A REGISTRY OF THE TRANSFER OF MORTGAGE SERVICING RIGHTS, MORTGAGE OWNERSHIP, SECURITY INTERESTS IN MORTGAGES AND THE RELEASE OF MORTGAGES FOR USE BY THOSE IN THE MORTGAGE BANKING INDUSTRY,

IN CLASS 36 (U.S. CLS. 100, 101, AND 102).
FIRST USE 2-1-1996;
IN COMMERCE 2-1-1996.
SN 75-031,300, FILED 11-21-1995.
RICHARD KIM, EXAMINING ATTORNEY

It is interesting that nowhere on the Deed of Trust/Mortgage is there a single representation of the MERS® which is an intentional omission materially pertinent fact necessary to mutual assent. For one, had it been represented there is not a single one of us who would have executed these fraudulent phony mortgage loans.

The damage this omission has had on foreclosures amounts to a massive fraud upon the court. The foreclosure clowns file foreclosure action on real property transaction that has nothing to do with real property, having everything to do with a mortgage to a copyright with assignment in Trademark. How many have gone into court arguing missing assignments and chains of title? We have been lured into a front end transaction purported as being a mortgage loan, when in fact it is an installment lease to future annuities to which we are the accommodating party in copyright, trademark, and patents to a back end wrongful and fraudulent foreclosure which assigns, conveys, and transfers by trademark....

making the entire transaction a misrepresentation.

Assignments, mortgages, conveyances, and transfers are all executed and recorded to a 'secret' side of the USTPO, while the liens post as UCC filings. There is not a single aspect of this transaction reminiscent of a UCC 3 negotiable instrument rooted in real property law.

The omission of MERS® to consumers amounts to a massive human trafficking and identity theft that is violation of the Lanham Act, hiding behind a famous mark that not a single consumer was given disclosure of on the front end of the transaction.

### 15 U.S. Code § 1125 – False designations of origin, false descriptions, and dilution forbidden

(a)CIVIL ACTION

(1)Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A)

is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B)

in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

(2)

As used in this subsection, the term "any person" includes any State, instrumentality of a State or employee of a State or instrumentality of a State acting in his or her official capacity. Any State, and any such instrumentality, officer, or employee, shall be subject to the provisions of this chapter in the same manner and to the same extent as any nongovernmental entity.

(3)

In a civil action for trade dress infringement under this chapter for trade dress not registered on the principal register, the person who asserts trade dress protection has the burden of proving that the matter sought to be protected is not functional.

(b)IMPORTATION

Any goods marked or labeled in contravention of the provisions of this section shall not be imported into the United States or admitted to entry at any customhouse of the United States. The owner, importer, or consignee of goods refused entry at any customhouse under this section may have any recourse by protest or appeal that is given under the customs revenue laws or may have the remedy given by this chapter in cases involving goods refused entry or seized.

(c)DILUTION BY BLURRING; DILUTION BY TARNISHMENT

(1)INJUNCTIVE RELIEF

Subject to the principles of equity, the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at

any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

(2)DEFINITIONS

(A)For purposes of paragraph (1), a mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner. In determining whether a mark possesses the requisite degree of recognition, the court may consider all relevant factors, including the following:

(i)

The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties.

(ii)

The amount, volume, and geographic extent of sales of goods or services offered under the mark.

(iii)

The extent of actual recognition of the mark.

(iv)

Whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.

(B)For purposes of paragraph (1), "dilution by blurring" is association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark. In determining whether a mark or trade name is likely to cause dilution by blurring, the court may consider all relevant factors, including the following:

(i)

The degree of similarity between the mark or trade name and the famous mark.

(ii)

The degree of inherent or acquired distinctiveness of the famous mark.

(iii)

The extent to which the owner of the famous mark is engaging in substantially exclusive use of the mark.

(iv)

The degree of recognition of the famous mark.

(v)

Whether the user of the mark or trade name intended to create an association with the famous mark.

(vi)

Any actual association between the mark or trade name and the famous mark.

(C)

For purposes of paragraph (1), "dilution by tarnishment" is association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark.

(3)EXCLUSIONSThe following shall not be actionable as dilution by blurring or dilution by tarnishment under this subsection:

(A)Any fair use, including a nominative or descriptive fair use, or facilitation of such fair use, of a famous mark by another person other than as a designation of source for the person's own goods or services, including use in connection with—

(i)

advertising or promotion that permits consumers to compare goods or services; or

(ii)

identifying and parodying, criticizing, or commenting upon the famous mark owner or the goods or services of the famous mark owner.

(B)

All forms of news reporting and news commentary.

(C)

Any noncommercial use of a mark.

(4)BURDEN OF PROOFIn a civil action for trade dress dilution under this chapter for trade dress not registered on the principal register, the person who asserts trade dress protection has the burden of proving that—

(A)

the claimed trade dress, taken as a whole, is not functional and is famous; and

(B)

if the claimed trade dress includes any mark or marks registered on the principal register, the unregistered matter, taken as a whole, is famous separate and apart from any fame of such registered marks.

(5)ADDITIONAL REMEDIESIn an action brought under this subsection, the owner of the famous mark shall be entitled to injunctive relief as set forth in section 1116 of this title. The owner of the famous mark shall also be entitled to the remedies set forth in sections 1117(a) and 1118 of this title, subject to the discretion of the court and the principles of equity if—

(A)

the mark or trade name that is likely to cause dilution by blurring or dilution by tarnishment was first used in commerce by the person against whom the injunction is sought after October 6, 2006; and

(B)in a claim arising under this subsection—

(i)

by reason of dilution by blurring, the person against whom the injunction is sought willfully intended to trade on the recognition of the famous mark; or

(ii)

by reason of dilution by tarnishment, the person against whom the injunction is sought willfully intended to harm the reputation of the famous mark.

(6)OWNERSHIP OF VALID REGISTRATION A COMPLETE BAR TO ACTIONThe ownership by a person of a valid registration under the Act of March 3, 1881, or the Act ofFebruary 20, 1905, or on the principal register under this chapter shall be a complete bar to an action against that person, with respect to that mark, that—

(A)

is brought by another person under the common law or a statute of a State; and

(B)

(i)

seeks to prevent dilution by blurring or dilution by tarnishment; or

      **(ii)**

asserts any claim of actual or likely damage or harm to the distinctiveness or reputation of a mark, label, or form of advertisement.

    **(7)**SAVINGS CLAUSE

      Nothing in this subsection shall be construed to impair, modify, or supersede the applicability of the patent laws of the United States.

  **(d)**CYBERPIRACY PREVENTION

    **(1)**

      **(A)**A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person—

        **(i)**

has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and

        **(ii)**registers, traffics in, or uses a domain name that—

          **(I)**

in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;

          **(II)**

in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark; or

          **(III)**

is a trademark, word, or name protected by reason of section 706 of title 18 or section 220506 of title 36.

      **(B)**

        **(i)**In determining whether a person has a bad faith intent described under subparagraph (A), a court may consider factors such as, but not limited to—

          **(I)**

the trademark or other intellectual property rights of the person, if any, in the domain name;

          **(II)**

the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;

          **(III)**

the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;

          **(IV)**

the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;

          **(V)**

the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or

with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

### (VI)

the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

### (VII)

the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;

### (VIII)

the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and

### (IX)

the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c).

### (ii)

Bad faith intent described under subparagraph (A) shall not be found in any case in which the court determines that the person believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful.

### (C)

In any civil action involving the registration, trafficking, or use of a domain name under this paragraph, a court may order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark.

### (D)

A person shall be liable for using a domain name under subparagraph (A) only if that person is the domain name registrant or that registrant's authorized licensee.

### (E)

As used in this paragraph, the term "traffics in" refers to transactions that include, but are not limited to, sales, purchases, loans, pledges, licenses, exchanges of currency, and any other transfer for consideration or receipt in exchange for consideration.

### (2)

(A) The owner of a mark may file an in rem civil action against a domain name in the judicial district in which the domain name registrar, domain name registry, or other domain name authority that registered or assigned the domain name is located if—

### (i)

the domain name violates any right of the owner of a mark registered in the Patent and Trademark Office, or protected under subsection (a) or (c); and

(ii) the court finds that the owner—

### (I)

is not able to obtain in personam jurisdiction over a person who would have been a defendant in a civil action under paragraph (1); or

    **(II)**through due diligence was not able to find a person who would have been a defendant in a civil action under paragraph (1) by—

    **(aa)**

sending a notice of the alleged violation and intent to proceed under this paragraph to the registrant of the domain name at the postal and e-mail address provided by the registrant to the registrar; and

    **(bb)**

publishing notice of the action as the court may direct promptly after filing the action.

    **(B)**

The actions under subparagraph (A)(ii) shall constitute service of process.

    **(C)**In an in rem action under this paragraph, a domain name shall be deemed to have its situs in the judicial district in which—

    **(i)**

the domain name registrar, registry, or other domain name authority that registered or assigned the domain name is located; or

    **(ii)**

documents sufficient to establish control and authority regarding the disposition of the registration and use of the domain name are deposited with the court.

    **(D)**

    **(i)**The remedies in an in rem action under this paragraph shall be limited to a court order for the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark. Upon receipt of written notification of a filed, stamped copy of a complaint filed by the owner of a mark in a United States district court under this paragraph, the domain name registrar, domain name registry, or other domain name authority shall—

    **(I)**

expeditiously deposit with the court documents sufficient to establish the court's control and authority regarding the disposition of the registration and use of the domain name to the court; and

    **(II)**

not transfer, suspend, or otherwise modify the domain name during the pendency of the action, except upon order of the court.

    **(ii)**

The domain name registrar or registry or other domain name authority shall not be liable for injunctive or monetary relief under this paragraph except in the case of bad faith or reckless disregard, which includes a willful failure to comply with any such court order.

    **(3)**

The civil action established under paragraph (1) and the in rem action established under paragraph (2), and any remedy available under either such action, shall be in addition to any other civil action or remedy otherwise applicable.

    **(4)**

The in rem jurisdiction established under paragraph (2) shall be in addition to any other jurisdiction that otherwise exists, whether in rem or in personam.

**Code of Virginia - Title 8.01 - Civil Remedies and Procedure**
    **Chapter 9 Personal Jurisdiction in Certain Actions**

**§ 8.01-328. Person defined**
As used in this chapter, "person" includes an individual, his executor, administrator, or other personal representative, or a corporation, partnership, association or any other legal or commercial entity, whether or not a citizen or domiciliary of this Commonwealth and whether or not organized under the laws of this Commonwealth.

Respectfully Submitted by Special Deposit,

Robinson, Barbara



# MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

# MERS

**Single Family - Fannie Mae/Freddie Mac-UNIFORM INSTRUMENT-MERS**

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware,

The beneficiary for this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns and the successors and assigns of MERS.

Borrower understands and agrees that MERS' holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns)

**What is not represented in the borrowers agreements which has been intentionally omitted?**

VOID

# MERS®

**Were MERS®, as Opposed to MERS, Disclosed in the Borrower Uniform Instrument Documents, Due Diligence Would Have Produced the Service Mark Below**

Int. Cl.: 36

Prior U.S. Cls.: 100, 101, and 102

Reg. No. 2,084,831

United States Patent and Trademark Office    Registered July 29, 1997

## SERVICE MARK
## PRINCIPAL REGISTER

### MERS

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (DELAWARE CORPORATION)
1125 15TH STREET, NW
WASHINGTON, DC 20005

FOR: REAL ESTATE DATABASE SERVICES, NAMELY, PROVIDING AND MAINTAINING A REGISTRY OF THE TRANSFER OF MORTGAGE SERVICING RIGHTS, MORTGAGE OWNERSHIP, SECURITY INTERESTS IN

MORTGAGES AND THE RELEASE OF MORTGAGES FOR USE BY THOSE IN THE MORTGAGE BANKING INDUSTRY, IN CLASS 36 (U.S. CLS. 100, 101 AND 102).

FIRST USE 2-1-1996; IN COMMERCE 2-1-1996.

SN 75-031,300, FILED 11-21-1995.

RICHARD KIM, EXAMINING ATTORNEY

http://tsdr.uspto.gov/#caseNumber=2084831&caseType=US_REGISTRATION_NO&searchType=documentSearch

# WHAT IF MERS® .....AND NOT MERS

You would be hard pressed in finding a single borrower who possessed an inkling of knowledge or for that matter even a mention by name, **Mortgage Electronic Registration Systems, Inc. (MERS) prior to entering the closing room.**

It is highly likely also, the closing agent was not forthcoming in disclosing MERS either, it was rather the borrowers who very responsibly made the inquiry. The closing agents response was likely, nonchalant in tone, inflected in a matter of fact sort of voice, that MERS was just a National statistical database to more accurately track housing sales. ..And with that, the closing moved forward, and find ourselves where we are today

## But.....What if borrowers sat down at the closing to see MERS® as opposed to the MERS

It is doubtful there are more than a handful of consumers (borrowers) who possess a working knowledge on the topic of trademarks, much more above recognizing the ® that represents a trademarked product. The numbers are probably greater who would not even know this......which makes the fact it was not disclosed at all even more heinous.

A MERS® disclosed in text puts the closing agent in a bit of spot, does it not...A trademark in a sea of text stands out, and you can bet there are going to be more than a few borrowers doing some research after they depart the closing.

......Good Bet Many Borrowers Would be Exercising the Three-Day Rescission......

**The plain language text of MERS Service Mark is not reflected to representations of MERS within the borrower agreement**

REAL ESTATE DATABASE SERVICES, NAMELY, PROVIDING AND MAINTAINING A REGISTRY OF THE TRANSFER OF MORTGAGE SERVICING RIGHTS. MORTGAGE OWNERSHIP, SECURITY INTERESTS IN MORTGAGES AND THE RELEASE OF MORTGAGES FOR USE BY THOSE IN THE MORTGAGE BANKING INDUSTRY

A PROVIDER of an MIR to a hospital may also be responsible in MAINTAINING the equipment's operation. Performing an MIR however is not under a maintenance contract, rather by specially trained technicians.

So how does a provider that maintains the operation of a database acquire rights, including those of beneficial ownership outside of its represented Service Mark.

(E) "MERS®" is Mortgage Electronic Registration Systems, Inc. MERS® is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS® is the beneficiary under this Security Instrument. MERS® is organized and existing under the laws of Delaware,

Prior to the registration of any MERS Mortgage Loan, each Party shall provide to the other its MERS "ORG ID" number, which shall be used by the other Party solely for the activities permitted pursuant to this SA. For each MERS Mortgage Loan, Lender will provide Subservicer with the Mortgage Identification Number ("MIN") and designate whether or not it is a MERS as Original Mortgagee ("MOM") loan. Such information shall be provided in a format reasonably specified by Subservicer. Following receipt of such information, Subservicer shall promptly populate the MIN, registration date, MOM and registration flag, and Lender's and Subservicer's ORG ID fields on the Fidelity System master file of the MERS Mortgage Loan.

(2) The foreclosure of any MERS Mortgage Loan shall identify MERS as the mortgagee of record and party to whom title should be conveyed upon completion of foreclosure, unless Lender otherwise designates in writing at the time Lender approved the MERS Mortgage Loan for foreclosure. If Lender requires that the foreclosure occur in a name other than MERS, Subservicer may elect to automatically, on an individual case basis, complete the deregistration of the MERS Mortgage Loan and, if reinstatement occurs, any re-registration of the MERS mortgage loan.

Lender and the party to whom the MERS Mortgage Loan is to be transferred shall be responsible for review and verification of transfer information, confirmation or correction of the terms of transfer, and all documentation required by MERS in connection with the transfer. Subservicer may elect to perform this function on behalf of Lender provided all necessary information is provided in a timely manner.

(5) At all times during the Term of this SA, Lender shall maintain such authorizations with MERS as are necessary to permit Subservicer to perform its obligations. Lender acknowledges that Subservicer shall be entitled to execute on behalf of Lender, or authorize MERS to execute on behalf of Lender or in MERS own name, documents to the same extent as Subservicer or its designated employees, as officers of Lender, are authorized to execute documents in Lender's name pursuant to the terms of this SA. Upon request of the Subservicer, Lender shall adopt such resolutions or ratify the scope of authority of such resolutions with respect to MERS Mortgage Loans.

(6) Lender shall be responsible for maintaining any investor, warehouse financing, permanent financing or securitization information on MERS for the MERS Mortgage Loans for obtaining any consents required by MERS of any parties holding any ownership or collateral security interest in connection with the registration, deregistration, release or transfer of any interest in a MERS Mortgage Loan.

(7) All MERS costs and expenses associated with MERS Mortgage Loans, whether incurred by third parties or billed by MERS, shall be billed to and paid by Lender, excepting only that Subservicer shall bear the cost of maintaining its MERS membership.

(b) The Parties acknowledge that the subservicing of MERS Mortgage Loans is being made at Lender's request and direction and for Lender's convenience and, as a result thereof, Subservicer shall, except to the extent that Subservicer fails to fulfill its express undertakings with respect to MERS Mortgage Loans pursuant to this SA, be entitled to full indemnification by Lender pursuant to Section 8.3. Each Party shall promptly notify the other of any claim or demand filed by MERS or any other party with respect to a MERS Mortgage Loan.

# WHAT IF MERS.....AND NOT MERS

## A Scenario for illustrative Purposes

It is 2005, Mr. & Mrs. Homebuyer , having already exchanged pleasantries with the closing agent take their seats at the table.. The closing agent already seated places a pen before each Mr and Mrs. Telling them it is time to begin. The first set of document s are slid  before the couple ,  something  instantly catches the eye of the Mrs, a name unfamiliar. Perplexed she points out the name Mortgage Electronic Registration Systems, Inc to her husband.

He shakes his head exclaiming  ABC Mortgage never mentioned  this MERS before. It must be product of some sort though because it bears the designating symbol of a Trademark.....Like Coke and Pepsi is a product and bears the same symbol.

The closing agent breaks in confirming  MERS is indeed a product , a registry of sorts he says, that keeps track of mortgages all across the United States for statistical purposes . Satisfied with this explanation, the closing continues  forward, completing shortly thereafter.

# WHAT IF MERS®.....AND NOT MERS

## Scenario......cont'd

The designating symbol of a trademark that labels a product is intended for notice, and sticks out quite clearly, especially surrounded by a sea of text as is contained in the loan documents. MERS ® certainly had not left the minds of Mr. & Mrs. Homebuyer, deciding the following to morning track down the trademark text for the product of MERS.

THANK GOODNESS FOR THE THREE DAY RECISSION PERIOD, AS MR.. & MRS. HOMEBUYER IMMEDIATELY TOOK THE RECISSION GIVEN THE INFORMATION DISCOVERED

The purpose of this little WHAT IF scenario is to illustrate a MERS ® disclosed would have never been publically accepted strengthening the motive in intentionally concealing consideration to take into account as we travel through the material.

# MERS®

## ........Per Borrowers Uniform Security Instrument

**"MERS"** is Mortgage Electronic Registration Systems, Inc. **MERS** is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS** is the beneficiary under this Security Instrument. **MERS** is organized and existing under the laws of Delaware,

The beneficiary of this Security Instrument is **MERS** (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of **MERS.**

Borrower understands and agrees that **MERS'** holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, **MERS** (as *nominee for Lender and Lender's successors and assigns)*

### Washington Mutual Mortgage Pass-Through Certificates, WMALT Series 2006-AR10
**Prospectus Supplement to Prospectus Dated December 18, 2006**

'In accordance with the rules of membership of Merscorp, Inc. and/or Mortgage Electronic Registration Systems, Inc., or **MERS®**, assignments of the mortgages for the mortgage loans held by the related trust will be registered electronically through Mortgage Electronic Registration Systems, Inc., or **MERS®** System. With respect to mortgage loans registered through the **MERS®** System, **MERS® shall serve as mortgagee** of record **solely as a nominee** in an *administrative capacity on behalf of the trust and will not have any interest in any of those mortgage loans.'*

# EX-10.1 MORTGAGE LOAN SUBSERVICING AGREEMENT

## 2.9.3 MERS Mortgage Loans

(a) If the related box appearing immediately after the signature blocks of the Parties to this SA contains an "X" at the time of execution of this SA by Lender, or if at any time hereafter, any MERS Mortgage Loans are subserviced by Subservicer, then Subservicer's duties to Lender and Lender's duties to Subservicer with respect to the MERS Mortgage Loans shall be only those same duties specified in this SA applicable to one-to-four family residential Mortgage Loans, except as follows:

(1) Subservicer shall, on behalf of Lender, be responsible for the registration of any Mortgage Loans with MERS closed on acceptable MERS documentation. In the event that preparation and recording of any mortgage assignments or other documentation is required to perfect the eligibility of any Mortgage Loan to be a MERS Mortgage Loan, these functions remain the responsibility of Lender. Lender shall be either the owner of the servicing rights to, or the beneficial owner of each MERS Mortgage Loan. Subservicer shall be identified as the subservicer for each MERS Mortgage Loan.

**SEPTEMBER 25TH, 2006                    EBANK/SUNSHINE MORTGAGE**

1st Nationwide Mortgage, MD
Alliance Mortgage Company, FL
Allied Group Mortgage, Inc., IA
American Land Title Association, DC
American Home Funding, V A
Crestar Mortgage Corp ., V A
Corinthian Mortgage Corporation, KS

LaSalle Home Mortgage Corporation, IL
Lau Capital Funding, CA
Merrill Lynch Credit Corp., FL
MGIC, WI
Mortgage Bankers Assoc. of America, DC
Norwest Mortgage, Inc., IA
PMI Mortgage Insurance Company, CA

## MERS CHARTER MEMBERSHIP

Fannie Mae, DC
Freddie Mac, VA
GE Capital Mortgage Services, Inc., NC
GMAC Residential Funding Corp., MN
Hamilton, Carter, Smith & Co., CA
HomeSide Lending, Inc., FL
Knutson Mortgage Corp., MN

PNC Mortgage Corporation of America, 1L
ReliaStar Mortgage Corp., IA
Source One Mortgage Services Corp., MI
Stewart Title Guaranty Company, TX
Texas Commerce Bank, N.A., TX
Chase Manhattan Mortgage
Weyerhaeuser Mortgage Company, CA

**900229283    07/25/2012**

| TRADEMARK ASSIGNMENT |
|---|

Electronic Version v1.1
Stylesheet Version v1.1

| SUBMISSION TYPE: | NEW ASSIGNMENT |
|---|---|
| NATURE OF CONVEYANCE: | MERGER |
| EFFECTIVE DATE: | 02/27/2012 |

**CONVEYING PARTY DATA**

| Name | Formerly | Execution Date | Entity Type |
|---|---|---|---|
| MERSCORP, Inc. | | 02/27/2012 | CORPORATION: DELAWARE |

**RECEIVING PARTY DATA**

| | |
|---|---|
| Name: | MERSCORP Holdings, Inc. |
| Street Address: | 1818 Library Street |
| Internal Address: | Suite 300 |
| City: | Reston |
| State/Country: | VIRGINIA |
| Postal Code: | 20190 |
| Entity Type: | CORPORATION: DELAWARE |

**PROPERTY NUMBERS  Total: 2**

| Property Type | Number | Word Mark |
|---|---|---|
| Registration Number: | 3714948 | PROCESS LOANS, NOT PAPERWORK. |
| Registration Number: | 2084831 | MERS |

**CORRESPONDENCE DATA**

Fax Number:          7037480183
*Correspondence will be sent to the e-mail address first; if that is unsuccessful, it will be sent via US Mail.*
Phone:                703-738-0232
Email:                anneb@mersinc.org
Correspondent Name:   Anne Braucher
Address Line 1:       1818 Library Street
Address Line 2:       Suite 300
Address Line 4:       Reston, VIRGINIA   20190

| NAME OF SUBMITTER: | Anne Braucher |
|---|---|

**TRADEMARK
REEL: 004828 FRAME: 0725**

| Signature: | /AnneBraucher/ |
|---|---|
| Date: | 07/25/2012 |

Total Attachments: 5
source=MERSCORP Holdings Merger Doc#page1.tif
source=MERSCORP Holdings Merger Doc#page2.tif
source=MERSCORP Holdings Merger Doc#page3.tif
source=MERSCORP Holdings Merger Doc#page4.tif
source=MERSCORP Holdings Merger Doc#page5.tif

**TRADEMARK**
**REEL: 004828 FRAME: 0726**

# Delaware

PAGE   1

## The First State

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF OWNERSHIP, WHICH MERGES:

"MERSCORP HOLDINGS, INC.", A DELAWARE CORPORATION,

WITH AND INTO "MERSCORP, INC." UNDER THE NAME OF "MERSCORP HOLDINGS, INC.", A CORPORATION ORGANIZED AND EXISTING UNDER THE LAWS OF THE STATE OF DELAWARE, AS RECEIVED AND FILED IN THIS OFFICE THE TWENTY-SEVENTH DAY OF FEBRUARY, A.D. 2012, AT 9:05 O'CLOCK A.M.

A FILED COPY OF THIS CERTIFICATE HAS BEEN FORWARDED TO THE NEW CASTLE COUNTY RECORDER OF DEEDS.

2915165   8100M

120227531

You may verify this certificate online
at corp.delaware.gov/authver.shtml

Jeffrey W. Bullock, Secretary of State

AUTHENTICATION: 9390564

DATE: 02-27-12

**TRADEMARK
REEL: 004828 FRAME: 0727**

State of Delaware
Secretary of State
Division of Corporations
Delivered 09:05 AM 02/27/2012
FILED 09:05 AM 02/27/2012
SRV 120227531 - 2915165 FILE

# CERTIFICATE OF OWNERSHIP AND MERGER

## MERGING

## MERSCORP HOLDINGS, INC.

## WITH AND INTO

## MERSCORP, INC.

*Pursuant to Section 253 of the*
*General Corporation Law of the State of Delaware*

MERSCORP, Inc., a Delaware corporation (the "Company"), does hereby certify

to the following facts relating to the merger (the "Merger") of MERSCORP Holdings, Inc., a

Delaware corporation (the "Subsidiary"), with and into the Company, with the Company

remaining as the surviving corporation under the name of MERSCORP Holdings, Inc.:

**FIRST:**     The Company is incorporated pursuant to the General Corporation

Law of the State of Delaware (the "General Corporation Law").  The Subsidiary is incorporated

pursuant to the General Corporation Law.

**SECOND:**   The Company owns all of the outstanding shares of each class of

capital stock of the Subsidiary.

**THIRD:**     On October 20, 2011, the Board of Directors of the Company, by

the following resolutions, duly determined to merge the Subsidiary with and into the Company

pursuant to Section 253 of the General Corporation Law:

> **"WHEREAS,** the Company desires to change its name to
> MERSCORP Holdings, Inc., pursuant to Section 253(b) of the
> General Corporation Law (the "Name Change");
>
> **WHEREAS,** in order to effect the Name Change, the
> Company incorporated a corporation named MERSCORP
> Holdings, Inc. (the "Subsidiary") under the General Corporation
> Law and acquired one hundred (100) shares of Common Stock, par

**TRADEMARK**
**REEL: 004828 FRAME: 0728**

value $.01 per share, of the Subsidiary (collectively, the "Incorporation");

**WHEREAS**, the Company owns all of the outstanding shares of the capital stock of the Subsidiary; and

**WHEREAS**, in order to effect the Name Change, the Board of Directors of the Company has deemed it advisable that the Subsidiary be merged with and into the Company (the "Merger"), pursuant to Section 253 of the General Corporation Law.

**NOW, THEREFORE, BE IT AND IT HEREBY IS**

**RESOLVED**, that the Incorporation is hereby authorized, approved, ratified, and confirmed in all respects; and it is further

**RESOLVED**, that the Company is hereby authorized to effect the Name Change by merging the Subsidiary with and into the Company pursuant to Section 253 of the General Corporation Law; and it is further

**RESOLVED**, that by virtue of the Merger and without any action on the part of the holder thereof, each then outstanding share of Class A Common Stock, par value $.01 per share, of the Company (the "Class A Common Stock"), Class B Common Stock, par value $.01 per share, of the Company (the "Class B Common Stock") and Class C Common Stock, par value $.01 per share, of the Company (the "Class C Common Stock") shall remain unchanged and continue to remain outstanding as one share of Class A Common Stock, Class B Common Stock or Class C Common Stock, as applicable, held by the person who was the holder of such share immediately prior to the Merger; and it is further

**RESOLVED**, that by virtue of the Merger and without any action on the part of the holder thereof, each then outstanding share of Common Stock, par value $.01 per share, of the Subsidiary shall be cancelled and no consideration shall be issued in respect thereof; and it is further

**RESOLVED**, that the Certificate of Incorporation of the Company as in effect immediately prior to the effective time of the Merger shall be the certificate of incorporation of the surviving corporation, except that Article I thereof shall be amended to read in its entirety as follows:

-2-

**TRADEMARK**
**REEL: 004828 FRAME: 0729**

**"Article I**

Name

The name of the corporation (the "Corporation") is MERSCORP Holdings, Inc."

     **RESOLVED**, that the proper officers of the Company be and they hereby are authorized and directed to do all acts and things that may be necessary to carry out and effectuate the purpose and intent of the resolutions relating to the Name Change, the Incorporation, and the Merger; and it is further

     **RESOLVED**, that the proper officers of the Company be and they hereby are authorized and directed to make, execute and acknowledge, in the name and under the corporate seal of the Company, a certificate of ownership and merger for the purpose of consummating the Merger and to file the same in the office of the Secretary of State of the State of Delaware, and to do all other acts and things that may be necessary to carry out and effectuate the purpose and intent of the resolutions relating to the Merger."

**FOURTH:**    The Company shall be the surviving corporation of the Merger.

**FIFTH:**    The certificate of incorporation of the Company as in effect immediately prior to the effective time of the Merger shall be the certificate of incorporation of the surviving corporation, except that Article I thereof shall be amended to read in its entirety as follows:

**"Article I**

Name

The name of the corporation (the "Corporation") is MERSCORP Holdings, Inc."

-3-

TRADEMARK
REEL: 004828 FRAME: 0730

IN WITNESS WHEREOF, the Company has caused this Certificate of Ownership and Merger to be executed by its duly authorized officer this ___22___ day of February, 2012.

MERSCORP, INC.

By: _____
Name: William Beckmann
Office: President

**TRADEMARK**
REEL: 004828 FRAME: 0731

**900229283    07/25/2012**

## TRADEMARK ASSIGNMENT

Electronic Version v1.1
Stylesheet Version v1.1

| SUBMISSION TYPE: | NEW ASSIGNMENT |
|---|---|
| NATURE OF CONVEYANCE: | MERGER |
| EFFECTIVE DATE: | 02/27/2012 |

**CONVEYING PARTY DATA**

| Name | Formerly | Execution Date | Entity Type |
|---|---|---|---|
| MERSCORP, Inc. | | 02/27/2012 | CORPORATION: DELAWARE |

**RECEIVING PARTY DATA**

| | |
|---|---|
| Name: | MERSCORP Holdings, Inc. |
| Street Address: | 1818 Library Street |
| Internal Address: | Suite 300 |
| City: | Reston |
| State/Country: | VIRGINIA |
| Postal Code: | 20190 |
| Entity Type: | CORPORATION: DELAWARE |

**PROPERTY NUMBERS  Total: 2**

| Property Type | Number | Word Mark |
|---|---|---|
| Registration Number: | 3714948 | PROCESS LOANS, NOT PAPERWORK. |
| Registration Number: | 2084831 | MERS |

**CORRESPONDENCE DATA**

Fax Number:          7037480183

*Correspondence will be sent to the e-mail address first; if that is unsuccessful, it will be sent via US Mail.*

Phone:                703-738-0232
Email:                anneb@mersinc.org
Correspondent Name:   Anne Braucher
Address Line 1:       1818 Library Street
Address Line 2:       Suite 300
Address Line 4:       Reston, VIRGINIA   20190

| NAME OF SUBMITTER: | Anne Braucher |
|---|---|

**TRADEMARK**
**REEL: 004828 FRAME: 0725**

| Signature: | /AnneBraucher/ |
| --- | --- |
| Date: | 07/25/2012 |

**Total Attachments: 5**
source=MERSCORP Holdings Merger Doc#page1.tif
source=MERSCORP Holdings Merger Doc#page2.tif
source=MERSCORP Holdings Merger Doc#page3.tif
source=MERSCORP Holdings Merger Doc#page4.tif
source=MERSCORP Holdings Merger Doc#page5.tif

# *Delaware*

PAGE 1

### *The First State*

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF OWNERSHIP, WHICH MERGES:

"MERSCORP HOLDINGS, INC.", A DELAWARE CORPORATION,

WITH AND INTO "MERSCORP, INC." UNDER THE NAME OF "MERSCORP HOLDINGS, INC.", A CORPORATION ORGANIZED AND EXISTING UNDER THE LAWS OF THE STATE OF DELAWARE, AS RECEIVED AND FILED IN THIS OFFICE THE TWENTY-SEVENTH DAY OF FEBRUARY, A.D. 2012, AT 9:05 O'CLOCK A.M.

A FILED COPY OF THIS CERTIFICATE HAS BEEN FORWARDED TO THE NEW CASTLE COUNTY RECORDER OF DEEDS.

2915165    8100M

120227531

You may verify this certificate online
at corp.delaware.gov/authver.shtml

Jeffrey W. Bullock, Secretary of State

AUTHENTICATION: 9390564

DATE: 02-27-12

**TRADEMARK
REEL: 004828 FRAME: 0727**

State of Delaware
Secretary of State
Division of Corporations
Delivered 09:05 AM 02/27/2012
FILED 09:05 AM 02/27/2012
SRV 120227531 - 2915165 FILE

# CERTIFICATE OF OWNERSHIP AND MERGER

## MERGING

## MERSCORP HOLDINGS, INC.

## WITH AND INTO

## MERSCORP, INC.

*Pursuant to Section 253 of the*
*General Corporation Law of the State of Delaware*

MERSCORP, Inc., a Delaware corporation (the "Company"), does hereby certify to the following facts relating to the merger (the "Merger") of MERSCORP Holdings, Inc., a Delaware corporation (the "Subsidiary"), with and into the Company, with the Company remaining as the surviving corporation under the name of MERSCORP Holdings, Inc.:

**FIRST:**    The Company is incorporated pursuant to the General Corporation Law of the State of Delaware (the "General Corporation Law"). The Subsidiary is incorporated pursuant to the General Corporation Law.

**SECOND:**    The Company owns all of the outstanding shares of each class of capital stock of the Subsidiary.

**THIRD:**    On October 20, 2011, the Board of Directors of the Company, by the following resolutions, duly determined to merge the Subsidiary with and into the Company pursuant to Section 253 of the General Corporation Law:

"**WHEREAS**, the Company desires to change its name to MERSCORP Holdings, Inc., pursuant to Section 253(b) of the General Corporation Law (the "Name Change");

**WHEREAS**, in order to effect the Name Change, the Company incorporated a corporation named MERSCORP Holdings, Inc. (the "Subsidiary") under the General Corporation Law and acquired one hundred (100) shares of Common Stock, par

**TRADEMARK**
**REEL: 004828 FRAME: 0728**

value $.01 per share, of the Subsidiary (collectively, the "Incorporation");

**WHEREAS**, the Company owns all of the outstanding shares of the capital stock of the Subsidiary; and

**WHEREAS**, in order to effect the Name Change, the Board of Directors of the Company has deemed it advisable that the Subsidiary be merged with and into the Company (the "Merger"), pursuant to Section 253 of the General Corporation Law.

### NOW, THEREFORE, BE IT AND IT HEREBY IS

**RESOLVED**, that the Incorporation is hereby authorized, approved, ratified, and confirmed in all respects; and it is further

**RESOLVED**, that the Company is hereby authorized to effect the Name Change by merging the Subsidiary with and into the Company pursuant to Section 253 of the General Corporation Law; and it is further

**RESOLVED**, that by virtue of the Merger and without any action on the part of the holder thereof, each then outstanding share of Class A Common Stock, par value $.01 per share, of the Company (the "Class A Common Stock"), Class B Common Stock, par value $.01 per share, of the Company (the "Class B Common Stock") and Class C Common Stock, par value $.01 per share, of the Company (the "Class C Common Stock") shall remain unchanged and continue to remain outstanding as one share of Class A Common Stock, Class B Common Stock or Class C Common Stock, as applicable, held by the person who was the holder of such share immediately prior to the Merger; and it is further

**RESOLVED**, that by virtue of the Merger and without any action on the part of the holder thereof, each then outstanding share of Common Stock, par value $.01 per share, of the Subsidiary shall be cancelled and no consideration shall be issued in respect thereof; and it is further

**RESOLVED**, that the Certificate of Incorporation of the Company as in effect immediately prior to the effective time of the Merger shall be the certificate of incorporation of the surviving corporation, except that Article I thereof shall be amended to read in its entirety as follows:

-2-

## "Article I

### Name

The name of the corporation (the "Corporation") is MERSCORP Holdings, Inc."

**RESOLVED**, that the proper officers of the Company be and they hereby are authorized and directed to do all acts and things that may be necessary to carry out and effectuate the purpose and intent of the resolutions relating to the Name Change, the Incorporation, and the Merger; and it is further

**RESOLVED**, that the proper officers of the Company be and they hereby are authorized and directed to make, execute and acknowledge, in the name and under the corporate seal of the Company, a certificate of ownership and merger for the purpose of consummating the Merger and to file the same in the office of the Secretary of State of the State of Delaware, and to do all other acts and things that may be necessary to carry out and effectuate the purpose and intent of the resolutions relating to the Merger."

**FOURTH:**    The Company shall be the surviving corporation of the Merger.

**FIFTH:**    The certificate of incorporation of the Company as in effect immediately prior to the effective time of the Merger shall be the certificate of incorporation of the surviving corporation, except that Article I thereof shall be amended to read in its entirety as follows:

## "Article I

### Name

The name of the corporation (the "Corporation") is MERSCORP Holdings, Inc."

-3-

TRADEMARK
REEL: 004828 FRAME: 0730

**IN WITNESS WHEREOF**, the Company has caused this Certificate of Ownership and Merger to be executed by its duly authorized officer this _22_ day of February, 2012.

MERSCORP, INC.

By: _W.P.R_____
    Name: William Beckmann
    Office: President

-4-

**TRADEMARK**
**REEL: 004828 FRAME: 0731**

# EXHIBIT M

# Notice of Special Deposit

**Return Address:**
P.O. Box 60093
Renton, Washington 98058



20160406000582
BARBARA A ROBIN          78.00
PAGE-001 OF 004
04/06/2016 13:42
KING COUNTY, WA

Please print or type information **WASHINGTON STATE RECORDER'S Cover Sheet** (RCW 65.04)

**Document Title(s)** (or transactions contained therein): (all areas applicable to your document **must** be filled in)

1. _Notice of Special Deposit_    2. _____

3. _____    4. _____

**Reference Number(s) of Documents assigned or released:** RE73989795SUS

Additional reference #'s on page _____ of document

**Grantor(s)** Exactly as name(s) appear on document

1. _Robinson_                    _Barbara Ann_

2. _____,  _____

Additional names on page _____ of document.

**Grantee(s)** Exactly as name(s) appear on document

1. _Robinson_                    _Barbara Ann_

2. _____,  _____

Additional names on page _____ of document.

**Legal description** (abbreviated: i.e. lot, block, plat or section, township, range)
_LOT 9 OF CEDARWOOD VI, ACCORDING TO THE PLAT THEREOF_
_Recording in Volume 817 of Plats, Pages(s) 28 through 34, in King County WA_

Additional legal is on page _____ of document.

**Assessor's Property Tax Parcel/Account Number**    ☐ Assessor Tax # not yet assigned
_147306-0090-01_

The Auditor/Recorder will rely on the information provided on this form. The staff will not read the document to verify the accuracy or completeness of the indexing information provided herein.

"I am signing below and paying an additional $50 recording fee (as provided in RCW 36.18.010 and referred to as an emergency nonstandard document), because this document does not meet margin and formatting requirements. Furthermore, I hereby understand that the recording process may cover up or otherwise obscure some part of the text of the original document as a result of this request."

Signature of Requesting Party

Note to submitter: Do not sign above nor pay additional $50 fee if the document meets margin/formatting requirements



**SPECIFIC AFFIDAVIT OF OWNERSHIP**
**\*NOTICE OF SPECIAL DEPOSIT\***
Invoice # RE739897455US

Date April 6, 2016

I, Robinson, Barbara Ann am writing by Special Appearance and Special Deposit without waiving any Equitable or Legal Rights, Remedies or Defenses, Statutory or Procedural as the Donor-Grantor-Beneficiary of the Equitable/Legal Title/Deed of Trust and, Security; Original Application/Promissory Note (Financial Asset), doing business as BARBARA ANN ROBINSON. I am hereby merging equitable and legal title to this Deed of Trust.

Notice as to Declared Intent or purpose of this tender of payment as a Special Deposit order of the Payor and Beneficiary and is to be credited to depositor's account as accord and satisfaction and payment in full and a discharge of any and all outstanding liabilities.

*I declare under penalty of perjury that the foregoing is true and correct. Without Prejudice, U.C.C. 1-308.*

_Robinson, Barbara Ann_

**Robinson, Barbara Ann** GRANTOR/SOLE BENEFICIARY/
HOLDER IN DUE COURSE and AGENT, for of
BARBARA ANN ROBINSON, E.I.N. XXX-XX-8868
c/o 13340 SE 159ᵗʰ place Renton, Washington 98058

NOTARY

IN WITNESS WHEREOF, _Barbara Ann Robinson_ has executed this Notice of Special Deposit as of the day and year above set forth.

King County        )
                   )ss:
Washington State   )

I have hereunto set my hand and seal of office On this _6ᵗʰ_ Day of _Apr. 1_ 2016

Notary Public _Kodi Elliott_

HEIDI ELLIOTT
COMMISSION EXP.
NOTARY
PUBLIC
01-01-2020
STATE OF WASHINGTON

**20130815000573**
CORELOGIC   AGT   14.00
PAGE-001 OF 001
08/15/2013 10:36
KING COUNTY, WA

When recorded mail to:
CoreLogic
Mail Stop: ASGN
1 CoreLogic Drive
Westlake, TX 76262-5823

This space for Recorder's use

Doc ID# 3701283131381130S

Tax ID#   147306-0090-01

Property Address:
13540 SE 159th Pl
Renton, WA 98058-6809
WA0-ADT 2583561   2892011 HS36A0C

Recording Requested By:
Bank of America, N.A.
Prepared By:
Marcus Jones

16001 N. Dallas Pkwy
Addison, TX 75001

## ASSIGNMENT OF DEED OF TRUST

For Value Received, Bank of America, N.A. whose address is 1800 TAPO CANYON ROAD, SIMI VALLEY, CA 93063 does hereby grant, sell, assign, transfer and convey unto NATIONSTAR MORTGAGE, LLC whose address is 350 HIGHLAND DRIVE, LEWISVILLE, TX 75067 all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

Original Lender:        MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR WMC MORTGAGE CORP.

Made By:              BARBARA ROBINSON AND SUGAR RAY ROBINSON, HUSBAND AND WIFE

Original Trustee:       BISHOP & LYNCH OF KING COUNTY
Date of Deed of Trust:  2/16/2005
Original Loan Amount:   $596,031.00

Recorded in King County, WA on: 2/18/2005, book N/A, page N/A and instrument number: 20050218002006

Property Legal Description:
LOT 9 OF CEDARWOOD VI, ACCORDING TO THE PLAT THEREOF RECORDED IN VOLUME 217 OF PLATS, PAGE(S) 28 THROUGH 34, IN KING COUNTY, WASHINGTON.

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on
JUL 1 0 2013

Bank of America, N.A.

By: _Karla V. Meelas_
      Karla V. Merlos
      Assistant Vice President

State of TX, County of      DALLAS

On    JUL 1 0 2013    before me, _____, a Notary Public, personally
appeared       Karla V Merlos                  Assistant Vice President        of Bank
of America, N.A. personally known to me to be the person(s) whose name(s) are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity
(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which
the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

__Jacqueline Sale-Granados__
Notary Public: Jacqueline Sale-Granados
My Commission Expires:    3-1-16

[Notary seal:] JACQUELINE SALE-GRANADOS
Notary Public, State of Texas
My Commission Expires
03/01/2016



STATE OF WASHINGTON }
County of King

The Director of Records & Licensing, King County, State of
Washington and exofficio Recorder of Deeds and other
instruments, do hereby certify the foregoing copy has been
compared with the original instrument as the same appears
on file and of record in the office and that the same is a true
and perfect transcript of said original and of the whole thereof.
Witness my hand and official seal this _____ day
of  MAR 3 1 2016  20_____

Director of Records & Licensing

By _____  Deputy
Patrick Dougherty

# EXHIBIT N

# Notice of Default, Adverse Claim and Injunction



**SPECIFIC AFFIDAVIT**
**DEMAND and NOTICE of DEFAULT**

**SPECIFIC AFFIDAVIT**
**\*DEMAND and NOTICE of DEFAULT\***

Date: MAY 2, 2016

Certified Mail: 70151520000330007783

| | |
|---|---|
| ™BARBARA ANN ROBINSON© ) | CASE NO.: 1122005566-BAR |
| A REGISTERED ORGANIZATION AND TRUST ACCOUNT ) | |
| Plaintiff ) | |
| vs. ) | |
| JAY BRAY d/b/a Chief Executive Officer ) | DEMAND AND NOTICE OF DEFAULT, |
| ) | NOTICE OF ADVERSE CLAIM |
| NATIONSTAR MORTGAGE, ) | AND MOTION TO INTERVENE |
| WELLS FARGO BANK N.A. as Trustee ) | WITH AN INJUNCTION |
| Respondent/Defendant ) | |
| _____ ) | |
| Robinson, Barbara Ann, Authorized Power of Attorney In Fact, ) | |
| Donor, Grantor, Beneficiary, Executor, Agent, ) | |
| Secured Party Creditor, ) | |
| Injured Third Party Intervener and Power of Attorney In Fact ) | |

**From:** Robinson, Barbara Ann, GRANTOR/SOLE BENEFICIARY/

c/o Post Office Box 60093, 13540 Southeast 159ᵗʰ Place,

Renton, washington, 98058

All My Rights and Remedies Are Exclusively Reserved.

**To:** JAY BRAY (NATIONSTAR MORTGAGE)

c/o 8950 Cypress Waters Boulevard,

Coppell, Texas, 75019

Wells Fargo Bank N.A.

9062 Old Annapolis Road MAC R1202-010

Columbia, MD 21045

**Regarding:** Default has occurred with respect to the obligation secured by the mortgage since February16ᵗʰ, 2005.

## NOTICE:

I, Robinson, Barbara Ann, in propria persona am writing by Special Appearance and Special Deposit without waiving any Equitable or Legal Rights, Remedies or Defenses Statutory or Procedural as the Donor-Grantor-Beneficiary of the Deed of Trust, and Security (Note) doing business as BARBARA ANN ROBINSON. Everything stated herein is the truth, the whole truth, and nothing but the truth and is true, correct, complete, and not misleading. I am able for stating the facts and lawful age for doing so (Sui Juris). Jay Bray d/b/a C.E.O. NATIONSTAR MORTGAGE and WELLS FARGO BANK N.A. has committed a FAULT and has DEFAULTED on all points concerning the above Regarding: Default has occurred with respect to the obligation secured by the mortgage. I, Robinson, Barbara Ann am entitled to enforce the mortgage non-judicially. NATIONSTAR MORTGAGE has committed a FAULT and has DEFAULTED and is now in Involuntary Bankruptcy with NOTICE OF FORFEITURE for all Property needed for satisfying $642,819.02 USD (Six Hundred Forty Two Thousand Eight Hundred Nineteen and Two Cents US Dollars) for Breach of Trust.

## SPECIFIC AFFIDAVIT
## DEMAND and NOTICE of DEFAULT

RCW 62A.4A defines Originator as the sender of the first payment order in a funds transfer.
RCW 62A.4A-104(a) Funds transfer means the series of transactions, beginning with the originator's payment order, made for the purpose of making payment to the beneficiary of the order. The term includes any payment order issued by the originator's bank or an intermediary bank intended to carry out the originator's payment order. A funds transfer is completed by acceptance by the beneficiary's bank of a payment order for the benefit of the beneficiary of the originator's payment order.

Bavand v. OneWest Bank, FSB, 309 P. 3d 636 – Wash: Court of Appeals, 1st Div 2013 MERS is not a proper beneficiary under the Deeds of Trust Act. The reason for this is that a proper beneficiary under the Act must be a "holder" of the note or other secured obligation.-MERS is not a holder of the note in this case.

¶ 26 MERS, a consortium of mortgage investment companies, altered this state's traditional three-party structure of a deed of trust.-As our supreme court explained in *Bain v. Metropolitan Mortgage Group, Inc.,* the system MERS established changed "a traditional three party deed of trust [into] a four party deed of trust, wherein MERS would act as the contractually agreed upon beneficiary for the lender and its successors and assigns."Thus, "the MERS business plan is based in large part on amending this traditional model. MERS is, in fact, neither a borrower nor a lender, but rather purports to be both `mortgagee of record' and a `nominee' for the mortgagee."

¶ 27 In *Bain, t*he supreme court decided the effect of this change on the traditional structure of the parties to a deed of trust. Specifically, it held that MERS cannot be a lawful beneficiary under our state's statutes. The plain language of RCW 61.24.005(2) defines a "beneficiary" as "the holder of the instrument or document evidencing the obligations secured by the deed of trust." As the supreme court concluded in *Bain,* "if MERS never `held the promissory note' then it is not a `lawful beneficiary.'"

TAKE NOTICE THAT pursuant to 1789 Constitution of the United States of America (as ratified without subsequent amendments) and 1789 Bill of Rights; Amendment X. The power not delegated to the United States by the Constitution, nor prohibited by it to the states, are reserved to the states respectively, or to the people. It is noted that said actors, agents, and fiduciaries are subject to the self-executing regulations of the 3rd and 4th sections of the 14th Amendment to the Bill of Rights to the Constitution for the United States of America whereby their offices are vacated and their salaries and retirement benefits are extinguished when they do not perform the duties of said offices.

Worthy of note is the fact that under title 12 § 24 paragraph 7 National Associations are only allowed or permitted to loan money and not credit, this prohibition started with the National Bank Act or Currency Act of June 3, 1864.

SUBCHAPTER I > § 24

Title 12

§ 24. Corporate power of associations

## SPECIFIC AFFIDAVIT
## DEMAND and NOTICE of DEFAULT

as the Comptroller of the Currency may by regulation prescribe. In no event shall the total amount of the investment securities of any one obligor or maker, held by the association for its own account, exceed at any time 10 per centum of its capital stock actually paid in and unimpaired and 10 per centum of its unimpaired surplus fund, except that this limitation shall not require any association to dispose of any securities lawfully held by it on August 23, 1935. As used in this section the term "investment securities" shall mean marketable obligations, evidencing indebtedness of any person, co partnership, association, or corporation in the form of bonds, notes and/or debentures commonly known as investment securities under such further definition of the term "investment securities" as may by regulation be prescribed by the Comptroller of the Currency. Except as hereinafter provided or otherwise permitted by law, nothing herein contained shall authorize the purchase by the association for its own account of any shares of stock of any corporation. The limitations and restrictions herein contained as to dealing in, underwriting and purchasing for its own account, investment securities shall not apply to obligations of the United States, or obligations of the Washington Metropolitan Area Transit Authority which are guaranteed by the Secretary of Transportation under section 9 of the National Capital Transportation Act of 1969, or obligations issued under authority of the Federal Farm Loan Act, as amended, or issued by the thirteen banks for cooperatives or any of them or the Federal Home Loan Banks, or obligations which are insured by the Secretary of Housing and Urban Development under title XI of the National Housing Act [12 U.S.C.§ 1749aaa et seq.] or obligations which are insured by the Secretary of Housing and Urban Development (hereinafter in this sentence referred to as the "Secretary") pursuant to § 207 of the National Housing Act [12 U.S.C. § 1713], if the debentures to be issued in payment of such insured obligations are guaranteed as to principal and interest by the United States, or obligation, participations, or other instruments of or issued by the Federal National Mortgage Association, or the Government National Mortgage Association, or mortgages, obligations or other securities which are or ever have been sold by the Federal Home Loan Mortgage Corporation pursuant to § 305 or § 306 of the Federal Home Loan Mortgage Corporation Act [12 U.S.C.. § 1454 or § 1455], or obligations of the Federal Financing Bank or obligations of the Environmental Financing Authority, or obligations other instruments or securities of the Student Loan Marketing Association, or such obligations of any local public agency (as defined in § 110(h) of the Housing Act of 1949 [42 U.S.C. § 1460 (h)] as are secured by an agreement between the local public agency, monies in an aggregate amount which (together with any other monies irrevocably committed to the payment of interest on such obligations) will suffice to pay, when due, the interest on and all installments (including the final installment) of the principal of such obligations, which monies under the terms of said agreement are required to be used for such payments, or such obligations of a public housing agency (as defined in the United States Housing Act of 1937, as amended [42 U.S.C. §1437 et seq.]) as are secured.

NATIONAL CURRENCY ACT (later called "NATIONAL BANK ACT") June 3, 1864, 1865, ch. 78 §§ 6, 7.

Post, p. 484, CHAP. CVI. - An Act to provide National Currency, secured by a Pledge of United States Bonds, and to provide for the Circulation and Redemption thereof.

SEC. 31. And be it further enacted, That every association in the cities hereinafter named shall, at all times, have on hand, in lawful money of the United States, an amount equal to at least twenty – five per centum of

## SPECIFIC AFFIDAVIT
### DEMAND and NOTICE of DEFAULT

amount of its outstanding notes of circulation and deposits and its lawful money of the United States shall be restored: Provided, That three fifths of said fifteen per centum may consist of balances due to an association available for the redemption of its circulating notes from associations approved by the comptroller of the currency, organized under this act, in the cities of Saint Louis, Louisville, Chicago, Detroit, Milwaukee, New Orleans, Cincinnati, Cleveland, Pittsburgh, Baltimore, Philadelphia, Boston, New York, Albany, Leavenworth, San Francisco, and Washington City: Provided, also, That clearing-house certificates, representing specie or lawful money specially deposited for the purpose of any clearing-house association belonging to such clearing-house holding and owning such certificate, and shall be considered to be a part of the lawful money which such association is required to have under the foregoing provisions of this section: Provided, That the cities of Charleston and Richmond may be added to the list of cities in the national associations of which other associations may keep three fifths of their lawful money, whenever, in the opinion of the comptroller of the currency, the condition of the southern states will warrant it. And it shall be competent for the comptroller of the currency to notify any association, whose lawful money reserve as aforesaid shall be below the amount to be kept on hand as aforesaid, to make good its reserve of lawful money of the United States, the comptroller may, with the concurrence of the Secretary of the Treasury, appoint a receiver to wind up the business of such association, as provided in this act.

SEC. 35. And be it further enacted, That no association shall make any loan or discount on the security of the shares of its own capital stock, nor be the purchaser or holder of any such shares, unless such security or purchases shall be necessary to prevent loss upon a debt previously contracted in good faith; and stock so purchased or acquired shall, within six months from the time of its purchase, be sold or disposed of at public or private sale, in default of which a receiver may be appointed to close up the business of the association, according to the provisions of this act. [This is where title 12 § 83 above came from].

SEC. 39. And be it further enacted, That no association shall at any time pay out on loans or discounts, or in purchasing drafts or bills of exchange, or in payment of deposits, or in any other mode pay or put in circulation the notes of any bank or banking association which shall not, at any such time, be receivable at par on deposit and in payment of debts by the association so paying out or circulating such notes; nor shall it knowingly pay out or put in circulation any notes issued by any bank or banking association which at the time of such paying out or putting in circulation is not redeeming its circulating notes in lawful money of the United States.

CHAPTER 2 > SUBCHAPTER IV > § 83

Title 12

§ 83. Loans by bank on its own stock

(a) General prohibitions

No national bank shall make any loan or discount on the security of the shares of stock.

>CHAPTER 5 > SUBCHAPTER I > § 582

## SPECIFIC AFFIDAVIT
## DEMAND and NOTICE of DEFAULT

section shall be deemed guilty of a misdemeanor and shall be fined not more than $1,000 and a further sum equal to one-third of the money so loaned. The officer or officers of any association who shall make any such loan shall be liable for a further sum equal to one-quarter of the money loaned; and any fine or penalty incurred by a violation of this section shall be recoverable for the benefit of the party bringing such suit."

Since WMC Mortgage Corp could not use its own capital stock or assets for the loan of money, where did WMC Mortgage Corp get the security and collateral for the alleged loan of money? No where is the word credit used in any of the above provisions. Since the alleged promissory note and security agreement do no state that WMC Mortgage Corp is loaning credit or that I have received credit as the bargained for consideration, what consideration and in what form and substance did WMC Mortgage Corp, give in exchange for the alleged promissory note and security agreement?

Just in case you do not understand the difference between money of exchange which is lawful money and money of account, I am going to spell it out in plain English. When Congress passed HJR 192 on June 5, 1933 it was against public policy for a contract to contain a clause which purports to give the obligee the right to demand payment in any kind of specie coin or currency of the United States. Title 12 § 152 stated that the "lawful money of the United States shall be construed to be gold and silver coin."

Statement of Financial Accounting Statement # 95 page 63 Foot Note #1 which states: "All charges and credits to those [deposit] accounts are cash receipts or payments to both the entity owning the account and the bank holding it. For example, a bank's granting of a loan by crediting the proceeds to a customer's demand deposit account is a cash payment by the bank and a cash receipt of the customer when the entry is made."

This plainly shows that when a check, draft, bill of exchange, or promissory note is deposited in an account it is not only a cash payment and cash receipt but in the equivalent of money and is so stated in title 12 § 1813 L (I). TO WIT:

(I) The Term: Deposit" means:
(1) the unpaid balance of money or its equivalent received or held by a bank or savings association in the usual course of business and for which it has given or is obligated to give credit, either conditionally or unconditionally, to a commercial, checking, savings, time, or thrift account, or which is evidenced by its certificate of deposit, thrift certificate, investment certificate, certificate of indebtedness, or other similar name, or a check or draft drawn against a deposit account and certified by the bank or savings association, or a letter of credit or a traveler's check on which the bank or savings association is primarily liable: Provided, That, without limiting the generality of the term "money or its equivalent", any such account or instrument must be regarded as evidencing the receipt of the equivalent of money when credited or issued in exchange for checks or drafts or for a promissory note upon which the person obtaining any such credit or instrument is primarily or secondarily liable, or for a charge against a deposit account, or in settlement of checks, drafts, or other instruments forwarded to such bank or savings association for collection.

Also Credit Banking is defined in Barron's Dictionary of Banking terms Third Edition by Thomas Fitch as:

3. "bookkeeping entry representing a deposit of funds into an account. In accounting, a credit entry notes an

# SPECIFIC AFFIDAVIT
## DEMAND and NOTICE of DEFAULT

Also the promissory note which is both the subject and object of the current action is a non-negotiable instrument due to the fact, that the note itself is subject to the security agreement, mortgage and trust deed, which makes the note a conditional promise to pay and takes it out of the category of a negotiable instrument under article 3 section 3-104 of the UCC and title 13 § 1303.03 (A) (1)(2)(3) of the O.R.C. ["A mortgage is not a negotiable instrument because it does not create an unconditional promise to pay money but merely creates a security interest in real estate to secure the payment of debt Mox v. Jordan (1990) 186 Michigan App. Pg. 42 463 N.W. 2d pg. 114, 13 UCCRS 2d pg. 770.]

All promissory notes are presented to be securities under the Howey test unless evidence is presented to rebut the presumption. All promissory notes are securities under Title 21 Chapter 21.20 § 21.20.005 (17) (a) of the Revised Code of Washington. "The term "security"  means any note, stock, treasury stock, security future, bond debenture, certificate of interest or participation in any profit-sharing agreement or in any oil, gas, or other mineral royalty or lease, any collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, any put, call, straddle, option, or privilege entered into on a national securities exchange relating to foreign currency, or in general, any instrument commonly known as a "security" or any certificate of interest or participation in temporary or interim certificate for, receipt for, or warrant or right to subscribe to or purchase, any of the foregoing; but shall not include currency or any note, draft bill of exchange, or banker's acceptance which has a maturity at the time of issuance of not exceeding nine months exclusive of days of grace or any renewal thereof the maturity of which is likewise limited." [title 15 § 78 c (10)]."

"We conclude, then, that in determining whether an instrument denominated a "note" is a "security,"courts are to apply the version of the "family resemblance" test that we have articulated here: A note is presumed to be a "security," and that presumption may be rebutted only by a showing that the note bears a strong resemblance (in terms of the four factors we have identified) to one of the enumerated categories of instrument. If an instrument is not sufficiently similar to an item on the list, the decision whether another category should be added is to be made by examining the same factors." [REVES v. ERNST & YOUNG. 494 U.S. 56 (1990)]. [SECURITIES AND EXCHANGE COMMISION v. W.J. HOWEY CO., 328 U.S. 293 (1946)] [Perryburg Twp. V. Rossford, 103 Ohio St. 3d 79 2004 – Ohio Supreme Court – 4362 following the Reves and Howey cases cited above].

The three elements for establishing an investment contract are: (1) "an investment of money," (2) "in common enterprise," 93) "with profits to come solely from the efforts of others." Id at 301.66 S. CT. at 1104 STEINHARDT GROUP INC. v. CITICORP 126 f. 3d 144 (3ʳᵈ Cir. 1997).

The economic reality of the promissory note and security agreement is that they are in substance an investment contract and a commercial transaction in form only as they contain all the elements of the family resemblance test as outlines in REVES v. ERNST & YOUNG and in S.E.C. v. HOWEY

"In contrast, the Eighth and District of Columbia Circuits apply the test we created in SEC v. W.J.

## SPECIFIC AFFIDAVIT
### DEMAND and NOTICE of DEFAULT

The note involved in this case is non-negotiable, is a security, has a maturity date of more than 9 months as stated in title 15 § 78c (10) and therefore does not fall in the category of an exception, and is a security with a 12 month maturity date stated in the Index at (B) page 2 of 4 of the promissory note/security, and is subject to the U.S. Treasury Securities ARM [Adjustable Rate Mortgage] Index that is transferable at page 1 of 4 in 1st paragraph of promissory note. Also s promissory note/security and security agreement cannot pass the "traditional family resemblance or the economical reality test," "When a note does not bear a strong family resemblance to these examples ["note secured by a mortgage on a home"] and has a maturity exceeding nine months as your note does, § 10(b) of the 1934 Act should generally be held to apply." Quoted at page 1138 of case The EXCHANGE NATIONAL BANK OF CHICAGO v. TOUCHE ROSS & CO. 544 F. 2D 1126 (1976). The above is further validated by the fact that the mortgage payments on the alleged loan as principle and interest to the BIH's [Beneficial Interest Holders] as pass through claims on the cash flow, paid out as interest and dividends to equity or direct participants by the indenture trustee as outlines in 's S-3/A Registration Statement and rule 424B5 Prospectuses filed at closing by WMC Mortgage Corp with the Securities exchange commission under rule 12G of S.E.C. Act of 1934.

In the Securities Act the term 'security' was defined to include by name or description many documents in which there are common trading for speculation or investment. Some, such as notes, bonds, and stocks, are pretty much standardized and the name alone carries well settled meaning. Others are of more variable character and were necessarily designated by more descriptive terms, such as 'transferable share,' "investment contract," and "in general any interest or instrument commonly known as a security." We cannot read out of the statute these general descriptive designations merely because more specific ones have been used to reach some kinds of documents. Instruments may be included within any of these definitions, as matter of law, if on their face they answer to the name or description. However, the reach of the Act does not stop with the obvious and commonplace. Novel, uncommon, or irregular devices, whatever they appear to be, are also reached if it be proved as matter of fact that they were widely offered or dealt in under terms or courses of dealing which established their character in commerce as a "security." The proof here seems clear that these defendants' offers brought their instruments within these terms. [320 U.S. 344, 352] SECURITIES AND EXCHANGE COM'N v. C. M. JOINER LEASING CORP., 320 U.S. 344 (1943)].

"Contrary to respondents' implication, the Court has never foreclosed the possibility that stock could be found to be a "security" simply because it is what it purports to be. In SEC v. C. M. Joiner Leasing Corp. 320 U.S. 344 (1943), THE Court noted: "[W]e do nothing to the words of the Act; we merely accept them...

In some cases, [proving that the documents were securities] might be done by proving the document itself, which on its face would be a note, a bond, or a share of stock." Id., at 355. Nor does Forman require a different result. Respondents are correct that in Forman we eschewed a "literal" approach that would invoke the Acts' coverage simply because the instrument carried the label "stock." Forman does not, however, eliminate the Court's ability to hold that an instrument is covered when its characteristics bear out the label. See supra, at 686-687. LANDRETH TIMBER CO v. LANDRETH 471 U.S. 681 QUOTED AT PG 691.

## SPECIFIC AFFIDAVIT
### DEMAND and NOTICE of DEFAULT

"[1]    The Issuer. The notes and mortgages given to the investors given to the investors by the Venture in 1985 and 1986 were investment contracts constituting securities under the Securities Act of 1933, 15 U.S.C. § 77b(1) (Supp. 1992). SEC v. Howey Co. 328 U.S. 293, 301, 66 S.CT. 1100, 1104, 90 L.ED. 1244 (1946); Safeway Portland Employees' Fed. Credit Union v. C.H. Wagner & Co., 501 F. 2d 1120, 1123 (9ᵗʰ Cir. 1993). [title 15 section 78j came from section 10 of the Securities Exchange Act of 1934].

[2,3] The issuer Scienter. If the representatives made by La Prade were fake, the issuer had the scienter that Ernst & Ernst v. Hockfelder. 424 U.S. 185. 96 S.CT. 1375. 47 L.E.D. 2d 668 (1976) requires for rule 10b.5 liability. Id. At 212 14. 96 S.CT at 1390 91. "[ARTHUR CHILDREN'S TRUST v. KEIM 994 f. 2D 1390 (9ᵗʰ Cir. 1993). [Title 15 section 78j came from section 10 of the Securities Exchange Act of 1934].

TITLE 15 > CHAPTER 2b > § 78c Prev | Next
§ 78c. Definitions and application [Securities Exchange Act of 1934]

(a) Definitions

(10)  The term "security"  means any note, stock, treasury stock, security future, bond debenture, certificate of interest or participation in any profit-sharing agreement or in any oil, gas, or other mineral royalty or lease, any collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, any put call, straddle, option, or privilege on any security, certificate of deposit, or group or index of securities (including any interest therein or based on the value thereof), or any put, call, straddle, option, or privilege entered into on a national securities exchange relating to foreign currency, or in general, any instrument commonly known as a "security"; or any certificate of interest or participation in, temporary or interim certificate for, receipt for, or warrant or right to subscribe to or purchase, any of the foregoing; but shall not include currency or any note, draft, bill of exchange, or banker's acceptance which has a maturity at the time of issuance of not exceeding nine months, exclusive of days of grace, or any renewal thereof the maturity of which is likewise limited.

2. The promissory note/security does not fall into the exception in the statute for "any note, which has a maturity at the time of issuance of not exceeding nine months." 15 U.S.C. 78c § (a)(10). The note issued in the instant case has a maturity exceeding the nine month exception as evidenced by The promissory note/security attached here as exhibit A contains at page 2 of 4 under subsection '(B) The Index "Beginning with the first Change Date, my interest rate will be based on an index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of 1 year, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

    If the index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice."

.3. The language of Securities Exchange Act of 193 at 15 U.S.C. § 77c(a) (3 defining a "Security" is virtually identical to the definition of a "Security" in the Securities Exchange Act of 1934 at 15 USC

## SPECIFIC AFFIDAVIT
### DEMAND and NOTICE of DEFAULT

(a)

(1) To effect a short sale, or to use or employ any stop-loss order in connection with the purchase or sale, of any security registered on a national securities exchange, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors. (2) Paragraph (1) of this subsection shall not apply to security futures products. (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement (as defined in section 206B of the Gramm-Leach-Bliley Act), any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

Rules promulgated under subsection (b) of this section that prohibit fraud, manipulation, or insider trading (but not rules imposing or specifying reporting or record keeping requirements, procedures, or standards as prophylactic measures against fraud, manipulation, or insider trading), and judicial precedents decided under subsection (b) of this section and rules promulgated thereunder that prohibit fraud, manipulation, or insider trading, shall apply to security based swap agreements (as defined in section 206B of the Gramm-Leach-Bliley Act) to the same extent as they apply to securities. Judicial precedents decided under § 77q (a) of this title and sections 78i, 78o, 78p, 78t, and 78u-1 of this title, and judicial precedents decided under applicable rules promulgated under such sections, shall apply to security-based swap agreements (as defined in section 206B of the Gramm-Leach-Bliley Act) to the same extent as they apply to securities.

TITLE 15 > CHAPTER 2A > SUBCHAPTER I > § 77q

§77q. Fraudulent interstate transaction:

(a) Use of interstate commerce for purpose of fraud or deceit:
It shall be unlawful for any person in the offer or sale of any securities or any security-based swap agreement (as defined in section 206B of the Gramm-Leach-Bliley Act) by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly -
(1) to employ any device, scheme, or artifice to defraud, or
(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.
(b) Use of interstate commerce for purpose of offering for sale
It shall be unlawful for any person, by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, to publish, give publicity to, or communication which, though not purporting to offer a security for sale, describes such security for a consideration received or to be received, directly or indirectly, from an issuer, underwriter, or dealer, without fully disclosing the receipt, whether past or prospective, of such consideration and the amount thereof.

**SPECIFIC AFFIDAVIT**
**DEMAND and NOTICE of DEFAULT**

G. Hidden Disguised Loans

Another tactic utilized by Enron and its banks to falsify Enron's financial condition and hide debt involved manipulative or deceptive transactions with J.P. Morgan, Citigroup and CS First Boston. J.P. Morgan used an entity it controlled known as "Mahonia," located in the Channel Islands off England. J.P. Morgan and Enron utilized a scheme which J.P. Morgan had utilized before with a commodities trader from Sumitomo, by which large bank loans were disguised as commodity trades. In fact, offsetting trades were arranged with the ultimate cost differential being in favor of the bank, representing the interest rate on the disguised loan. By utilizing this manipulative or deceptive device, J.P. Morgan and Enron falsified Enron's financial condition, concealing some $4 billion in debt. ¶44.14

CitiGroup and CS First Boston engaged in similar subterfuges to disguise large loans to Enron. CitiGroup lent Enron $2.4 billion via "pre-paid" swaps -- the so-called "Delta" transactions -- conducted through Citigroup's Cayman Islands subsidiary. These swap transactions perfectly replicated loans and were, in fact, loans -- but Enron never reported them as such on its balance sheet. CS First Boston also engaged in making disguised loans to Enron. CS First Boston gave Enron $150 million to be repaid over two years, with Enron's payments to vary with the price if oil. The transaction was made to appear to be a "swap," but was, in fact, a loan -- a reality admitted by the bank: "It was like a floating rate loan," said Pen Pendleton, a CS First Boston spokesman. "We booked the transaction as a loan." However, Enron did not show the loans on its balance sheet. ¶45.

By so doing, J.P. Morgan, CitiGroup and CS First Boston were able to secretly prop up Enron's deteriorating finances without disclosing that in fact Enron has borrowed between $4-$6 billion from those banks. Also astonishing about the Mahonia and Delta transactions is the way J.P. Morgan and CitiGroup were "paid off" to engage in this subterfuge. Based on Enron's purported investment grade credit rating, Enron could have borrowed money from banks at 3.75% - 4.25%. However, in the phony Mahonia and Delta transactions, Enron paid J.P. Morgan and CitiGroup between 6.5% - 7.0% for the disguised loans -- a huge difference from the cost of a legitimate bank loan -- which made these disguised loans hugely profitable for J.P. Morgan and CitiGroup -- in effect paying them off for participating in these bogus transactions ¶46.

14 Knowing Enron's true financial condition was precarious, J.P. Morgan attempted to insure against default on those disguised loans by buying performance bonds from several insurance companies. However, the insurers have refused to pay, alleging that in fact the commodity trades were fraudulent and a subterfuge to conceal the real nature of the transactions, i.e., done for the purpose of disguising loans. A federal district court judge has ruled that there is significant evidence to support the insurers' claims of fraud and deception and that these transactions were, in fact, disguised loans. ¶44.

H. Enron's Access to the Capital Markets

Enron required constant access to huge amounts of capital. For Enron to continue to appear to succeed it had to keep its investment grade credit rating and keep its stock price high. Enron's investment grade credit rating and keep its stock price high. Enron's investment grade credit rating and high stock price could only be maintained by (i) limiting the amount of debt shown on Enron's balance sheet; (ii) reporting

**SPECIFIC AFFIDAVIT**
**DEMAND and NOTICE of DEFAULT**

short-term debt and continue to operate. The Enron offerings involving J.P. Morgan are shown below (¶¶48, 655):15

---

15

15 J.P. Morgan also sold $1 billion of Marlin Trust notes in 7/01. ¶656.

## GRAMM – LEACH – BLILEY ACT

SEC. 206, DEFINITION OF IDENTIFIED BANKING PRODUCT.

(a) DEFINITION OF IDENTIFIED BANKING PRODUCT.—For purposes of paragraphs (4) and (5) of section 3(a) of the Securities Exchange Act of 1934 (15 U.S.C. 78c(a) (4), (5)), the term "identified banking product" means— (1) a deposit account, savings account, certificate of deposit, or other deposit instrument issued by a bank; (2) a banker's acceptance; (3) a letter of credit issued or loan made by a bank; (4) a debit account at a bank arising from a credit card or similar arrangement; (5) a participation in a loan which the bank or an affiliate of the bank (other than a broker or dealer) funds, participates in, or owns that is sold— (A) to qualified investors; or (B) to other persons that— (i) have the opportunity to review and assess any material information, including information regarding the borrower's creditworthiness; and net worth, and knowledge and experience in financial matters, have the capability to evaluate the information available, as determined under generally applicable banking standards or guidelines; or (6) any swap agreement, including credit and equity swaps, except that an equity swap that is sold directly to any person other than a qualified investor (as defined in section 3(a)(54) of the Securities Act of 1934) shall not be treated as an identified banking product. (b) DEFINITION OF SWAP AGREEMENT.—For purposes of subsection (a)(6), the term "swap agreement" means any individually negotiated contract, agreement, warrant, note, or option that is based, in whole or in part, on the value of, any interest in, or any quantitative measure or the occurrence of any event relating to, one or more commodities, securities, currencies, interest or other rates, indices, or other assets, but does not include any other identified banking product, as defined in paragraphs (1) through (5) of subsection (a). (c) CLASSIFICATION LIMITED.—Classification of a particular product as an identified banking product pursuant to this section shall not be construed as finding or implying that such product is or is not a security for any purpose under the securities laws, or is or is not an account, agreement, contract, or transaction for any purpose under the Commodity Exchange Act. (d) INCORPORATED DEFINITIONS.—For purposes of this section, the terms "bank" and "qualified investor" have the same meanings as given in section 3(a) of the Securities Exchange Act of 1934, as amended by this Act.

Coinage Act of 1792

Congress fixed the dollar as a specific weight of silver and gold in the form of coin. THIS MEANS ..... If there is no SILVER or GOLD; then there is no dollar!

TITLE 31 SUBTITLE IV > CHAPTER 51 > SUBCHAPTER II > § 5118

§ 5118. Gold clauses and consent to sue

## SPECIFIC AFFIDAVIT
### DEMAND and NOTICE of DEFAULT

(2) "public debt obligation" means a domestic obligation issued or guaranteed by the United States Government to repay money or interest.

(b) The United States Government may not pay out any gold coin. A person lawfully holding United States coins and currency may present the coins and currency to the Secretary of the Treasury for exchange (dollar for dollar) for other United States coins and currency (other than gold and silver coins) that may be lawfully held. The Secretary shall make the exchange under regulations prescribed by the Secretary.

(c)

(1) The Government withdraws its consent given to anyone to assert against the Government, its agencies, or its officers, employees, or agents, a claim—

(A) on a gold clause public debt obligation or interest on the obligation;

(B) for United States coins or currency; or

(C) arising out of the surrender, requisition, seizure, or acquisition of United States coins or currency, gold, or silver involving the effect or validity of a change in the metallic content of the dollar or in a regulation about the value of money.

(2) Paragraph (1) of this subsection does not apply to a proceeding in which no claim is made for payment or credit in an amount greater than the face or nominal value in dollars of public debt obligations or United States coins or currency involved in the proceeding.

(3) Except when consent is not withdrawn under this subsection, an amount appropriated for payment on public debt obligations and for United States coins and currency may be expended only dollar for dollar.

(d)

(1) In this subsection, "obligation" means any obligation (except United States currency) payable in United States money.

(2) An obligation issued containing a gold clause or governed by a gold clause is discharged on payment (dollar for dollar) in United States coin or currency that is legal tender at the time of payment. This paragraph does not apply to an obligation issued after October 27, 1977.

RCW 62A. 1-206

Presumptions.

Whenever this title creates a "presumption" with respect to a fact, or provides that a fact is "presumed," the trier of fact must find the existence of the fact unless and until evidence is introduced that supports a finding of its nonexistence.

In light of the above it brings to remembrance Luke 11:46-52 Jesus answered: "Woe unto you Lawyers also! You lay impossible burdens on men but will not lift a finger to lighten them. Woe unto you! You build the tombs of the prophets, but it was your fathers who murdered them. You show that you stand behind the deeds of your fathers: they committed the murders and you erect the tombs. That is why the wisdom of God has said, I will send them prophets and apostles; and some of these they will persecute and kill; so that this generation will have to account for the blood of Abel to the blood of Zechariah, who met his death between the altar and the sanctuary! Yes, I tell you, this generation will have to account for it,

## SPECIFIC AFFIDAVIT
### DEMAND and NOTICE of DEFAULT

"Abrogation of the Gold Clause." Spencer v. Sterling Bank (1998), Guaranty Trust Co. v. York (1945),
Hagar v. Reclamation District, 111 U.S. 701 (1884)

### DEMAND:

I, Robinson, Barbara Ann DEMAND that all involved parties regarding Case # *1122005566* to discharge
and dismiss any and all claims against the Third Party Plaintiff, Robinson, Barbara and/or her Private
Property and trust Account (BARBARA ANN ROBINSON) for lack of claim which relief can be granted
and lack of evidence to support all claims. I am hereby ordering NATIONSTAR MORTGAGE AND
WELLS FARGO N.A. to pay the tax. The donor may be deemed to have paid the tax by ordering the donee
to pay it to the IRS. Estate of Sachs v. Comm'r, 88 T.C. 769, 778 (1987), aff'd, F.2d (1988 WL 94421]
(1988) Send me the 1096 Tax returns for this account along with the 1099OID and 1099INT forms, these
will show who the Payor and Recipient of my Funds are containing the name and title of BARBARA ANN
ROBINSON, BARBARA A. ROBINSON, and any derivatives thereof. There is no contract to validate why
my private property is being used with out my lawful consent, authorization and permission so return them
back to me, the holder in due course in accordance with RCW62A.3-308. Eliminate all data and
information on NATIONSTAR'S websites containing the private name BARBARA ANN ROBINSON,
BARBARA A. ROBINSON, and any derivatives thereof and pay the Injured Third Party
Intervener/Counter Plaintiff, Robinson, Barbara Ann, $642,819.02 USD (Six Hundred Forty Two Thousand
Eight Hundred Nineteen and Two Cents US Dollars) NATIONSTAR MORTGAGE is permanently
enjoined from foreclosing on property at 1354 SE 159th Place Renton, Washington or, Pay all damages as
indicated in the SPECIFIC AFFIDAVIT OF DEMAND and NOTICE of DEFAULT, AND MOTION TO
INTERVENE WITH AN INJUNCTION.


**Via 1889 Washington State Constitution**
**Article I SECTION 7 INVASION OF PRIVATE AFFAIRS OR HOME PROHIBITED.** No person
shall be disturbed in his private affairs, or his home invaded, without authority of law.

**SECTION 23 BILL OF ATTAINDER, EX POST FACTO LAW, ETC.** No bill of attainder, ex post
facto law, or law impairing the obligations of contracts shall ever be passed.

**SECTION 16 EMINENT DOMAIN.** Private property shall not be taken for private use, except for private
ways of necessity, and for drains, flumes, or ditches on or across the lands of others for agricultural,
domestic, or sanitary purposes. No private property shall be taken or damaged for public or private use
without just compensation having been first made, or paid into court for the owner, and no right-of way
shall be appropriated to the use of any corporation other than municipal until full compensation therefor be
first made in money, or ascertained and paid into court for the owner, irrespective of any benefit from any
improvement proposed by such corporation, which compensation shall be ascertained by a jury, unless a
jury be waived, as in other civil cases in courts of record, in the manner prescribed by law. Whenever an
attempt is made to take private property for a use alleged to be public, the question whether the
contemplated use be really public shall be a judicial question, and determined as such, without regard to
any legislative assertion that the use is public: Provided, That the taking of private property by the state for
land reclamation and settlement purposes is hereby declared to be for public use

**SPECIFIC AFFIDAVIT**
**DEMAND and NOTICE of DEFAULT**

**ARTICLE XIX EXEMPTIONS**
**SECTION 1 EXEMPTIONS — HOMESTEADS, ETC.** The legislature shall protect by law from forced sale a certain portion of the homestead and other property of all heads of families.

**AND TAKE FURTHER NOTICE THAT** the material facts giving rise to this NOTICE OF DEFAULT AND MOTION TO INTERVENE WITH AN INJUNCTION are as follows:

1. Unalienable rights protected by 1889 Washington State Constitution right of privacy has been violated; in the past when NationStar attempted to sale property. **ARTICLE XIX EXEMPTIONS**
**SECTION 1 EXEMPTIONS — HOMESTEADS, ETC.** The legislature shall protect by law from forced sale a certain portion of the homestead and other property of all heads of families.

I reserve all my rights protected by above said Washington State Constitution and don't waive any part of my rights, abide by your oaths to it. There will be a charge of $100,000.00 and up dollars against you and your agents or contractors, which this is your contract where you agree to pay this amount to me Robinson, Barbara Ann in the Name BARBARA ANN ROBINSON FOR THE TRESPASS of my unalienable rights, protected by 1889 Washington State Constitution.

**AND TAKE FURTHER NOTICE THAT** THIS IS A CONTRACT, your failure to answer and rebut this affidavit is acquiescence, you have 72 hrs. to answer, then this contract is law.

*I declare under penalty of perjury that the foregoing is true and correct. Without Prejudice, U.C.C. 1-308.*

*Robinson, Barbara Ann*
_____
UCC 1-308, UCC 1-301, All Rights Reserved
Robinson, Barbara Ann, GRANTOR/SOLE BENEFICIARY/
HOLDER IN DUE COURSE and Agent, for of
BARBARA ANN ROBINSON, E.I.N. 587868868
c/o Post Office Box 60093, 13540 Southeast 159th Place,
Renton, washington, 98058

**JURAT**

State of Washington ]
                    ] ss:
King County         ]

On the __2ND__ day of ____MAY____, 2016 A.D., the above signed Secured Party Creditor, Robinson, Barbara Ann personally appeared before me with this SPECIFIC AFFADAVIT, DEMAND and NOTICE of DEFAULT, NOTICE OF ADVERSE CLAIM AND MOTION TO INTERVENE WITH AN INJUNCTION, and proved to me on the basis of satisfactory evidence and identification to be the woman whose name is subscribed to be within

NOTICE OF DISPUTE; DEMAND FOR VALIDATION AND PROOF OF CLAIM

July 18, 2016

From:   Robinson, Barbara Ann

Certified Mail# 7014 2120 0000 3472 9877

       c/o Po Box 60093

       Renton, washington 98058

       Hereinafter collectively referred to as Claimant

To:   NATIONSTAR MORTGAGE

     8950 CYPRESS WATERS BOULEVARD

     Coppell, Texas 75019

IN RE: NOTICE OF DEFAULT File No. 16-118804 CXE Account # 2989

This constitutes an **Official Notice** in accordance with the Fair Debt Collection Practices Act and the Truth In Lending Act, that I hereby **Dispute the debt** in the above referenced account.

It has come to my attention that there may have been some accounting irregularities in this account which have adversely affected me. In reviewing the account it has come to my attention that fraud and/or other violations of public policy may have occurred in the operation of this account, therefore, I will be conducting discovery to determine the true facts in this matter. This constitutes the exhaustion of my administrative remedy, in accordance with the Administrative Procedures Act, as concerns the above referenced matter.

This discovery process has been presented under Notarial Seal for the purpose of certifying the admissions, confessions and stipulations of the Parties, to create a public record thereof, via the issue and filing of an *Administrative Declaratory Judgment, by Notarial Protest.* Said Administrative Declaratory Judgment is issued under statutory authority and under the authority of the Secretary of State, acting as an agent of the Department of State, and carries the power and authority as if issued by the highest court in the land. Said Judgment constitutes res judicata, star decisis, collateral estoppel and judgment by estoppel.

Please take note that this discovery process has been served under Notarial Seal and *valid subpoena* establishing your *mandatory obligation* to timely respond and/or rebut the following, point by point and line by line, verified true, correct and complete, signed, sworn to and notarized in affidavit form and to provide certified copies of the requested documentation.

Please respond and/or rebut the following, point by point and line by line, in affidavit form, and provide documentary evidence to support your claim.

    o   It has come to my attention that since 1933, when Franklin D. Roosevelt took all of the gold and silver out of circulation, that we have no currency of value or substance with which to pay a debt. Our economic system operates on credit and debt. If we have no currency of value or substance in circulation today, then one must wonder, what did the Bank "loan" me?  It is unlawful for the bank loan me their credit.

       So, *what did the bank loan me?*

       What value/substance did the bank loan me?

       Please provide the evidence that the bank loaned me anything of value.

    o   At the closing table, I placed my signature on a *Promissory Note* which I gave to the bank *in the exchange.* Said Promissory Note had no value prior to my placing my signature on it. *Did it not?* There are no other signatures on said Promissory Note, therefore, it was my signature that gave the value to the *Promissory Note* which I gave to the bank in the exchange. *Was it not?*

ALL RIGHTS EXCLUSIVELY RESERVED
Robinson, Barbara Ann

NOTICE OF DISPUTE; DEMAND FOR VALIDATION AND PROOF OF CLAIM

o   Since 1933 the United States has operated upon the good faith and credit of the American people, not the good faith and credit of the Banking industry. *Has it not?* The government, including the government sanctioned corporations, institutions and banks, have no authority to create money. Only *We the American people* can create money. *We the American people* are the originators of the money and are therefore the Creditors. *Are we not?*

o   When I placed my signature on the Promissory Note, giving value to the Note, I was the originator of the funds and, therefore, the Creditor of the transaction. **Am I not?**

o   **Revised Code of Washington 21.20.005 (17)(a), and other similar state codes,** define a *Promissory Note* as a *security.* Title 12 section 1813 (L)(1) states that when one deposits a Promissory Note it becomes a *cash item.* Revised Code of Washington 21.20 states that I have a right to restitution and rescission if the bank sells an *unregistered security.*

o   It has come to my attention that the Promissory Note which I executed is an unregistered security and that it may have been sold, traded or assigned in violation of state statutes. Please provide me with a certified copy, front and back, of the original Promissory Note which I signed and presented to the Bank in this transaction and the lawful authority which authorized the Bank to engage in the sale of an unregistered Security, in this transaction. Your failure to provide me with documentary evidence of the lawful authority shall constitute your stipulation that no lawful authority exists and your tacit confession to the unlawful sale of an unregistered security in violation of state statute.

It has also come to my attention that shortly after the closing that the Bank deposited said Promissory Note as a cash item and ledgered said Note as a *liability* in the bank's *Payables Account* and identified *ME as the Creditor* in the account. *Did they not?*

o   It is also my understanding that the bank, in accordance with GAAP, ledgered the "Security", as an *asset* in the bank's *Receivables Account* and identified *ME as the debtor* in the account. *Did they not?*

o   It is further my understanding that because I failed to see through the bank's carefully designed illusion and instruct the bank to make the financial adjustments to zero the account in the set-off, the bank posted their liability/my asset in their Payables Account as an off balance sheet entry and after a period of time the funds were claimed as abandoned funds. *Were they not?*

o   It is also my understanding that the international accounting system called Basel II and/or Basel III have been fully implemented; that off balance sheet accounting is unlawful, and that all banks and lending institutions must be in compliance therewith. *Are they not? Please provide documentary evidence that you are Basel II & III compliant.*

o   RCW62A.3-104(a) & (e) and RCW62A.3-105 (a)(e) makes it clear that I was the Issuer, Drawer, Maker of the Note that I executed, giving it value, at the closing, while **RCW62A.8-102(12),(15), (9) and RCW62A.8-105** leaves no doubt that I am the holder of the entitlement right to the funds. I am the Creditor and entitlement holder with the authority to issue Entitlement Orders as concerns this transaction and/or this account. *Am I not?*

o   The Bank registered the "**TITLE**" but did not register the "Note", therefore, the "Note" is an unregistered security in accordance with the UCC and International Banking Law. *Is it not?*

Please provide me certified copies of the accounting of the Promissory Note that I executed at the closing, to wit: the Accounts Receivables and Accounts Payables ledgers of this Promissory Note.

Please provide me a certified copy, front and back, of the original Promissory Note as well as all assignments of the Note.

ALL RIGHTS EXCLUSIVELY RESERVED
Robinson, Barbara Ann

## NOTICE OF DISPUTE; DEMAND FOR VALIDATION AND PROOF OF CLAIM

I request, in the nature of a Demand in Recoupment, that the Bank merge the Accounts Payables with the Accounts Receivables Account to zero the account in accordance with GAAP and Public Policy and/or provide me with documentary evidence that authorizes the Bank to conceal said funds for the purpose of dispossessing me of said funds. Your failure herein shall constitute your admission that no valid authority exists and that the Bank's operation of this account is unlawful and fraudulent.

Your failure to timely respond and/or rebut the foregoing, point by point and line by line, in Affidavit form, shall constitute your admission and stipulation to the stated claims and establish the evidence as a matter of fact. Your failure to respond, a partial response, or a non-responsive response shall constitute a dishonor and your agreement and stipulation to the facts as set forth herein. Your failure to respond in affidavit form, signed, sworn to and notarized and/or your failure to provide certified copies of the requested documentation shall constitute you a dishonor and shall result in the issue of a Declaratory Judgment, by Default, certifying the stipulation and agreement of the Parties. Said Declaratory judgment, by Notarial Protest is as binging on the Parties and their privies as if issued by the highest court in the land and constitutes res judicata, star decisis and an estoppel.

Respondent's failure to respond shall constitute your agreement that the process is free of error and/or omission, lawful or otherwise, having had the opportunity to respond and provide documentary evidence in affidavit form, and choosing to demur and stipulate to the facts as set forth by Claimant creating a binding contract between the Parties.

Your dishonor constitutes an estoppel and your voluntary waiver of all rights and remedies that may otherwise exist and your agreement to confess judgment in this matter.

I now affix my autograph & declare under penalty of perjury under the laws of the State of Washington, the foregoing *Administrative Declaratory Judgment, by Notarial Protest.* is true and correct. Without Prejudice, U.C.C. 1-308.

Executed this _18th_ day of ___July___, 2016. by _Robinson, Barbara Ann_____

Robinson, Barbara Ann Authorized Representative

King County            )

                       ) ss:

Washington State       )

I have hereunto set my hand and seal of office On this _18th_ Day of July, 2016

Notary Public _Heidi Elliott_____

[Notary seal: HEIDI ELLIOTT, COMMISSION EXPIRES, NOTARY PUBLIC, 01-01-2020, STATE OF WASHINGTON]

NOTICE OF DISPUTE; DEMAND FOR VALIDATION AND PROOF OF CLAIM

*CC to:*

**OFFICE OF THE COMPTROLLER OF THE CURRENCY**
**DEPARTMENT OF THE TREASURY**
Thomas J. Curry, Comptroller, Administrator of National Banks
Washington, DC  20219

**ATTORNEY GENERAL, United States of America**
**U.S DEPARTMENT OF JUSTICE**
Loretta E. Lynch
950 Pennsylvania Avenue, NW
Washington, DC  20530-0001

**POSTMASTER GENERAL U.S. Postal Service**
Patrick R. Donahoe
475 L'Enfant Plaza, SW
Washington, DC  20260-0010

**CRIMINAL INVESTIGATIONS SERVICE CENTER**
**U.S. Postal Service, MAIL FRAUD DIVISION**
222 S. Riverside Plaza  Ste 1250
Chicago, IL.  60606-6100

**INTERNAL REVENUE SERVICE**
**CRIMINAL INVESTIGATION DIVISION**
500 N. Capitol Street NW
Washington, DC  20221

Bob Ferguson **ATTORNEY GENERAL**
**CONSUMER PROTECTION**
Attorney General's Office
800 5th Ave. Suite 2000
Seattle, WA  98104-3188

Consumer Response Center
**FEDERAL TRADE COMMISSION**
*Washington, D.C.  20580*

ALL RIGHTS EXCLUSIVELY RESERVED
Robinson; Barbara Ann

# EXHIBIT O

# 1099 A and OID

X   ☐ CORRECTED (if checked)

| | OMB No. 1545-0877 | **Acquisition or Abandonment of Secured Property** |
|---|---|---|

LENDER'S name, street address, city or town, state or province, country, ZIP or foreign postal code, and telephone no.

Barbara A. Robinson
13540 SE. 159th Place
Renton, Washington 98058

**20 15**

Form **1099-A**

**Copy B**
**For Borrower**

LENDER'S federal identification number | BORROWER'S identification number

| 1 Date of lender's acquisition or knowledge of abandonment | 2 Balance of principal outstanding |
|---|---|
| 2/16/2005 | $ 642,819.02 |

BORROWER'S name

NationStar Mortgage

| 3 | 4 Fair market value of property |
|---|---|
| | $ 600,000.00 |

Street address (including apt. no.)

8950 Cypress Waters Boulevard

City or town, state or province, country, and ZIP or foreign postal code

Coppell Texas 75019

5 If checked, the borrower was personally liable for repayment of the debt ▶ ☒

This is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if taxable income results from this transaction and the IRS determines that it has not been reported.

6 Description of property

Credit Used on Mortgage Account

Account number (see instructions)

989

Form **1099-A**     (keep for your records)     www.irs.gov/form1099a     Department of the Treasury - Internal Revenue Service

☐ VOID    ☐ CORRECTED

| PAYER'S name, street address, city or town, state or province, country, ZIP or foreign postal code, and telephone no. | 1 Original issue discount for 2015 | OMB No. 1545-0117 | |
|---|---|---|---|
| NationStar Mortgage<br>8950 Cypress Waters Blvd.<br>Coppell, Texas 7519 | $ <br>2 Other periodic interest<br><br>$ | 20**15**<br><br>Form **1099-OID** | **Original Issue Discount** |

| PAYER'S federal identification number | RECIPIENT'S identification number | 3 Early withdrawal penalty<br><br>$ | 4 Federal income tax withheld<br><br>$ | **Copy C** |
|---|---|---|---|---|
| ▬▬▬▬▬▬▬ | ▬▬▬▬▬▬▬ | 5 Market discount<br><br>$ | 6 Acquisition premium<br><br>$ | **For Payer** |
| RECIPIENT'S name<br><br>Barbara A. Robinson | | 7 Description<br><br>BARBARA A. ROBINSON | | **For Privacy Act and Paperwork Reduction Act Notice, see the 2015 General Instructions for Certain Information Returns.** |
| Street address (including apt. no.)<br><br>1356 SE 159th Place | | 8 Original issue discount on U.S. Treasury obligations<br><br>$ | | |
| City or town, state or province, country, and ZIP or foreign postal code | FATCA filing requirement ☐ | 9 Investment expenses<br><br>$ | | |
| Account number (see instructions)<br>▬▬▬▬▬▬ | 2nd TIN not. ☐ | 10 State | 11 State identification no. | 12 State tax withheld<br>$<br>$ |

Form **1099-OID**        www.irs.gov/form1099oid        Department of the Treasury - Internal Revenue Service

# EXHIBIT P

# Security Agreement

# COMMERCIAL SECURITY AGREEMENT

## NON-NEGOTIABLE – NON-TRANSFERABLE PRIVATE TITLE OF ORIGIN

### INVOICE# BARMG12021953-CSA

This non-negotiable and non-transferable Commercial Security Agreement is made and entered into this day of 26TH Day of January, by and between ™ BARBARA ANN ROBINSON ©, hereinafter "DEBTOR," Organization Number ▓▓▓▓▓▓and Robinson, Barbara Ann, hereinafter "Secured Party Creditor," Identification Number▓▓▓▓. The Parties, hereinafter "Parties," are identified as follows:

**DEBTOR:**
™BARBARA ANN ROBINSON©, A LEGAL ENTITY (REGISTERED ORGANIZATION)
1450 Poydras ST.
New Orleans, Louisiana 70112
**ORGANIZATION NUMBER** ▓▓▓▓▓XXX

**Secured Party Creditor:**
Robinson, Barbara Ann "Personam Sojourn and People of Posterity"
c/o P.O. BOX 60093
Renton, washington, 98058;
▓▓▓▓▓▓▓

**Creditor Identification Number** ▓▓▓▓▓▓x

## AGREEMENT

NOW, THEREFORE, the parties agree as follows:

DEBTOR, who deems itself insecure, hereby grants Secured Party Creditor a security interest in the collateral described generally herein or specifically on the enclosed Attachment "A" – Property List, incorporated herein as if fully set forth within this Commercial Security Agreement, hereinafter referred to as "collateral." This will secure all DEBTOR's property, as well as all income from every source, and all direct and indirect, absolute or contingent, due or to become due, now existing or hereafter arising, presumed or actual, parole or expressed public indebtedness and liabilities held by DEBTOR in consideration for Secured Party Creditor providing certain things and accommodations for DEBTOR, including but not limited to:

1. Secured Party Creditor signing by accommodation for DEBTOR, when necessary, where the signature of DEBTOR will be required. Secured Party Creditor reserves the right to make sufficient claims to secure such indebtedness until satisfied in whole.

2. Secured Party Creditor issuing a binding commitment to extend credit or to extend immediately available credit, whether or not drawn upon and whether or not reimbursed in the event of difficulties in collection; and

~~3. Secured Party Creditor providing the security for payment of all sums due or owing, or to become due or owing, by DEBTOR on every public contract entered into by DEBTOR.~~

DEBTOR declares that it is a legal entity recognized as such and has rights and privileges recognized under the laws of the UNITED STATES, as has been the case since its creation in 1983. All legal means to protect the security interest being established by this Agreement will be used by DEBTOR when necessary; and all support needed by Secured Party Creditor to protect her security interest in the collateral identified herein will be provided by DEBTOR.

Execution of this Commercial Security Agreement incorporates a promise that DEBTOR will execute such commercial forms as may be necessary, including but not limited to financing statements, to assure that Secured Party Creditor's interest is perfected. The security interest established by this Agreement will continue until Secured Party Creditor is relieved of all liability associated with said services provided to DEBTOR and until all owing and due consideration to Secured Party has been delivered, regardless of whether the collateral identified in this Agreement is in the possession of DEBTOR or Secured Party.

DEBTOR warrants that Secured Party Creditor's claim against the collateral is enforceable according to the terms and conditions expressed herein and according to all applicable laws promulgated for the purpose of protecting the interests of a creditor against a DEBTOR. DEBTOR also warrants that it holds good and marketable title to the collateral, free and clear of all actual and lawful liens and encumbrances, except for the interest established herein and except for such substantial interest as may have been privately established by agreement of the Parties with full attention to the elements necessary to establish a valid contract under international contract law. Public encumbrances belonging to DEBTOR, against the collateral, shall remain secondary to this Agreement, unless registered prior to the registration of Secured Party Creditor's interest in the same collateral, as is well established in international commercial law.

## GENERAL PROVISIONS

**Possession of Collateral.** Collateral or evidence of collateral may remain in the possession of DEBTOR, to be kept at the address given in this Agreement by DEBTOR or such other place(s) approved by Secured Party Creditor; and notice of changes in location must be made to Secured Party Creditor within ten (10) days of such relocation. DEBTOR agrees not to otherwise remove the collateral except as is expected in the ordinary course of business, including sale of inventory, exchange, and other acceptable reasons for removal. When in doubt as to the legal ramifications for relocation, DEBTOR agrees to acquire prior written authorization from Secured Party Creditor. DEBTOR may possess all tangible personal property included in collateral, have beneficial use of all other collateral, and may use it in any lawful manner consistent with this agreement. DEBTOR's right to possession and beneficial use may also apply to collateral that is in the possession of Secured Party Creditor if such possession is required by law to perfect Secured Party Creditor's interest in such collateral. If Secured Party Creditor, at any time, has possession of any part of the collateral, whether before or after an event of default, Secured Party Creditor shall be

deemed to have exercised reasonable care in the custody and preservation of the collateral, if Secured Party Creditor takes such action for that purpose as deemed appropriate by Secured Party Creditor under the circumstances.

**Proceeds and Products from Collateral.** Unless waived by Secured Party Creditor Unless waived by Secured Party Creditor, all proceeds and products from the disposition of the collateral, for whatever reason, shall be held in trust for Secured Party Creditor and shall not be commingled with any other accounts or funds without the consent of Secured Party Creditor. Notice of such proceeds shall be delivered to Secured Party Creditor immediately upon receipt. Except for inventory sold or accounts collected in the ordinary course of DEBTOR's public business, DEBTOR agrees not to sell, offer to sell, or otherwise transfer or dispose of the collateral, nor to pledge, mortgage, encumber, or otherwise permit the collateral to be subject to a lien, security interest, encumbrance, or charge, other than the security interest established by this Agreement, without the prior written consent of Secured Party Creditor.

**Maintenance of Collateral.** DEBTOR agrees to maintain all tangible collateral in good condition and repair, and not to commit or permit damage to or destruction of the collateral or any part of the collateral. Secured Party and her designated representatives and agents shall have the right at all reasonable times to examine, inspect, and audit the collateral wherever located. DEBTOR shall immediately notify Secured Party of all cases involving the return, rejection, repossession, loss, or damage of or to the collateral; of all requests for credit or adjustment of collateral, or dispute arising with respect to the collateral; and generally of all happenings and events affecting the collateral or the value or the amount of the collateral.

**Compliance with Law.** DEBTOR shall comply promptly with all laws, ordinances, and regulations of all governmental authorities applicable to the production, disposition, or use of the collateral. DEBTOR may contest in good faith any such law, ordinance, or regulation without compliance during a proceeding, including appropriate appeals, so long as Secured Party Creditor's interest in the collateral, in Secured Party Creditor's opinion, is not jeopardized. Secured Party Creditor may, at her option, intervene in any situation that appears to place the collateral in jeopardy.

**Public Disputes.** DEBTOR agrees to pay all applicable taxes, assessments, and liens upon the collateral when due, provided that such taxes, assessments, and liens are proved to be superior to the lawful claim established by this agreement and subsequently perfected by Secured Party Creditor by appropriate registration. In the event that DEBTOR elects to dispute such taxes, assessments, and liens, Secured Party Creditor's interest must be protected at all times, at the sole opinion of Secured Party Creditor, who may, at her option, intervene in any situation that appears to jeopardize Secured Party Creditor's interest in the collateral. DEBTOR may elect to continue pursuit of dispute of such taxes, assessments, and liens, only upon production of a surety bond by public claimants, in favor of Secured Party Creditor, sufficient to protect Secured Party Creditor from loss, including all costs and fees associated with such dispute. Should public judgment against DEBTOR result from such dispute, DEBTOR agrees to satisfy such judgment from its accounts established and managed by the UNITED STATES or its subdivisions, agents, officers, or affiliates, so as not to adversely affect Secured Party Creditor's interest in the collateral.

**Indemnification.** DEBTOR hereby indemnifies Secured Party Creditor from all harm as expressed in the Indemnity Bond, incorporated herein as if fully set forth within this Commercial Security Agreement.

### SUBORDINATION OF DEBTOR'S DEBTS
### TO SECURED PARTY

Providing that Secured Party Creditor, subsequent to the execution of this agreement, perfects her security interest in the collateral by appropriate county registration, DEBTOR agrees that its indebtedness to Secured Party Creditor, whether now existing or hereafter created, shall have priority over unregistered claims that third parties may raise against DEBTOR or the collateral, whether or not DEBTOR becomes insolvent. DEBTOR hereby expressly subordinates any claim that DEBTOR may have against Secured Party Creditor, upon any account whatsoever, to the claim that Secured Party Creditor has or will have against DEBTOR.

If Secured Party Creditor so requests, all notes or credit agreements now or hereafter established, evidencing debts or obligations of DEBTOR to third parties, shall be marked with a legend that the same are subject to this Agreement and shall be delivered to Secured Party Creditor. DEBTOR agrees, and Secured Party Creditor is hereby authorized, in the name of DEBTOR, to execute and file such financing statements and other commercial statements as Secured Party Creditor deems necessary or appropriate to perfect, preserve, and enforce her rights under this Agreement.

### DEFAULT

The following shall constitute events of default hereunder:

1. Failure by DEBTOR to pay a debt secured hereby when due;

2. Failure by DEBTOR to perform an obligation secured hereby when required to be performed;

3. Breach by DEBTOR of a warranty contained in this Agreement;

4. Evidence that a statement, warranty, or representation made or implied in this Agreement by DEBTOR is false or misleading in any material respect, either now or at the time made or furnished;

5. Evidence that this Agreement or a document of title is void or ineffective;

6. Dissolution or termination of DEBTOR's existence as a legal entity, the insolvency of DEBTOR, the appointment of a receiver for all or any portion of DEBTOR's property, an assignment for the benefit of public creditors, or the commencement of proceedings under bankruptcy or insolvency laws by or against DEBTOR;

7. Commencement of foreclosure, whether by action of a tribunal, self-help, repossession, or other method, by a creditor of DEBTOR against the collateral;

8. Garnishment of DEBTOR's deposit accounts or employment.

**Cure of Default.** If a fault or dishonor under this Agreement is curable through an account held by DEBTOR but managed by the UNITED STATES or one of its subdivisions, agents, officers, or affiliates, such fault or dishonor may be cured by DEBTOR with authorization by Secured Party Creditor and upon advice by the fiduciary that the fault or dishonor has been cured; and no event of default will have occurred. A dishonor under this Agreement, initiated by third party intervention, will not cause a default if such intervention is challenged by DEBTOR by its good faith effort to confirm or disprove the validity or reasonableness of a public claim which is the basis of the public creditor's

proceeding; but DEBTOR must, in that event, deposit such surety with Secured Party Creditor as is necessary to indemnify Secured Party Creditor from loss.

**Acceleration.** In the event of default, Secured Party Creditor may declare the entire indebtedness immediately due and payable without notice.

**Liquidation of Collateral.** In the event of default, Secured Party Creditor shall have full power to privately or publicly sell, lease, transfer, or otherwise deal with the collateral or proceeds or products therefrom, in her own name or in the name of DEBTOR. All expenses related to the liquidation of collateral shall become a part of DEBTOR's indebtedness. Secured Party Creditor may, at her discretion, transfer part or all of the collateral to her own name or to the name of her nominee.

**Rights and Remedies.** Secured Party Creditor shall have all the rights and remedies of a secured creditor under the provisions of the Uniform Commercial Code, as it has been adopted in the state where part or all of the collateral is located or presumed to be located, including but not limited to the right to proceed with self-help with or without a public court or tribunal. Rights and remedies available to Secured Party Creditor may be exercised singularly or jointly and in all venues and jurisdictions concurrently at the sole discretion of Secured Party Creditor.

## MISCELLANEOUS PROVISIONS

**Amendments.** This Agreement, together with all related documents, constitutes the entire understanding and agreement of the Parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless expressed in writing and signed by both Parties.

**Applicable Law.** The governing law of this Agreement is the agreement of the Parties, supported by the Uniform Commercial Code as adopted by the legislature of the STATE OF Washington, international contract law, the unwritten Law Merchant as practiced before the Uniform Commercial Code was promulgated, and applicable maxims of law.

**Expenses.** DEBTOR agrees to pay upon demand, from such accounts as DEBTOR may have, all Secured Party Creditor's costs and expenses, including reasonable attorney's fees and other expenses incurred by Secured Party Creditor to defend or enforce the provisions of this Agreement.

**Indebtedness.** The word "indebtedness" means the indebtedness evidenced by this Agreement as a claim against DEBTOR and all its present and future possessions identified in this Agreement as collateral; and all public obligations, debts, and liabilities ascribed to DEBTOR through its contracts and agreements, whether expressed or implied, known or unknown, or actual or constructive, that are with the UNITED STATES or its subdivisions, agents, officers, affiliates, or other public entities; and all claims made by Secured Party Creditor against DEBTOR, whether existing now or in the future, whether they are voluntary or involuntary, due or not due, direct or indirect, absolute or contingent, liquidated or unliquidated, regardless of whether DEBTOR is or may be liable individually or jointly, or is obligated as, or beneficiary of, a surety or accommodation party.

**Related Documents.** The phrase "related documents" means all promissory notes, credit agreements, loan agreements, guaranties, security agreements, mortgages, deeds of trust, applications, accounts, licenses, policies, permits, identification cards, account cards, receipts, forms, and all other documents and instruments that DEBTOR or its previous surety has or will execute in connection with DEBTOR's total indebtedness.

**Notices.** Except for revocation notices by DEBTOR, all notices required to be given by either Party under this Agreement shall be in writing and shall be effective when actually delivered or when deposited with the United States Post Office or a nationally recognized courier service, first class postage prepaid, addressed to the Party to whom the notice is to be given at the address shown on this Agreement or to such other address as either Party may designate to the other in writing.

**Severability.** If one or more provisions of this Agreement shall be held to be invalid or unenforceable for any reason, the remaining provisions shall continue to be valid and enforceable. If a qualified court finds that one or more provisions of this Agreement is invalid or unenforceable, but that by limiting such provision(s) it would become valid or enforceable, such provision(s) shall be deemed to be written, construed, and enforced as so limited. In the event that such a finding and limitation causes damage or hardship to either Party, the agreement shall be amended in a lawful manner to make all Parties whole.

**Waiver of Contractual Right.** The failure of either Party to enforce one or more provisions of this Agreement shall not be construed as a waiver or limitation of that Party's right to subsequently enforce and compel strict compliance with every provision of this Agreement. Secured Party Creditor shall not be deemed to have waived rights under this Agreement unless such waiver is given in writing and signed by Secured Party Creditor. No delay or omission on the part of Secured Party Creditor in exercising a right shall operate as a waiver of such right or any other right. A waiver by Secured Party Creditor of a provision of this Agreement shall not prejudice or constitute a waiver of Secured Party Creditor's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Secured Party Creditor, nor any course of dealing between Secured Party Creditor and DEBTOR, shall constitute a waiver of Secured Party Creditor's rights or of DEBTOR's obligations under this agreement as to future transactions. Whenever the consent of Secured Party Creditor is required under this agreement, the granting of such consent by Secured Party Creditor in one instance shall not constitute consent over the whole.

**Ambiguities and Interpretation.** Each Party acknowledges receipt of this agreement and has had the opportunity to have counsel review it. Any rule of construction claiming ambiguities is to be resolved in favor of Secured Party Creditor and shall not apply in the interpretation of this agreement or its amendments. All statements in this instrument are important to the Parties. Misunderstandings have been resolved prior to execution.

**Authority to Represent.** A signer of this agreement on behalf of a legal entity certifies that he has the authority to sign this agreement and that this transaction has been duly authorized by such entity.

**Gender.** All references within this agreement to a specific gender include the other.

**SIGNATURES**

Secured Party Creditor accepts all signatures in accordance with the Uniform Commercial Code and acknowledges DEBTOR's signature as representative of all derivations thereof.

Barbara Ann Robinson    L.S. Robinson, Barbara Ann 1/28/2016

™BARBARA ANN ROBINSON©, ENS LEGIS, DEBTOR    Robinson, Barbara Ann    Secured Party    Date

This instrument was prepared by Robinson, Barbara Ann.

**Notice**

*Using a notary on this document does not constitute any adhesion, nor does it alter my status in any manner. The purpose for notary is verification and identification only and not for entrance into any foreign jurisdiction.*

**Notary**

State of Washington    ]

 ] ss:

County of KING    ]

Subscribed and affirmed before me this 28th day for the January month in the year of Two Thousand and Sixteen (2016), A.D.

_____

Notary

Renton WA

Address of Notary

Nov 21 2018

My Notary Expires

Notary Public
State of Washington
BEN SHELTON
My Appointment Expires Nov 21, 2018

Seal



### Washington State Department of Licensing
### Uniform Commercial Code
### Debtor Information Search Report

**Search number:**  2016-245-7259-5S

**Name as provided:**

**Individual Name:**  ROBINSON, BARBARA, ANN (Secured Party)

**Name searched:**

**Individual Name:**  ROBINSONBARBARAANN

**Lien type searched:**  All
**Lien status searched:**  Unlapsed
**Search limited by:**
**Search logic used:**  Standard

**Report:**  9/1/2016 12:17:30 PM
**Through date:**  8/31/2016

**Copies:**

**Certification:**
The filing office certifies that the attached list (and copies, if any) is a true and exact representation of all financing statements and non-UCC liens for the name searched, as filed with the Department of Licensing, Uniform Commercial Code Program, as of the through date shown above. But a limited search may not reveal all records of the name searched and the searcher bears the risk of relying on such a search.

_Pat Kohler_

**Pat Kohler, Director, Department of Licensing**

1 of 1

Initial Financing Statement File Number: 2016-032-4881-7

Date and time filed: 2/1/2016 2:32:00 PM

Lapse date: 02/01/2021


(D)     BARBARA ANN ROBINSON

        1450 Poydras Street

        New Orleans, WA  70112      USA


(D)     NATIONSTAR MORTGAGE

        8950 Cypress Waters Boulevard

        Coppell, TX  70112      USA


(S)     Robinson, Barbara, Ann

        13540 SE 159th Place

        Renton, WA  98058      USA


History:

| Type of Record | Date & Time Filed | File# | #PGS |
|---|---|---|---|
| Initial (Agriculture Lien) | 2/1/2016 2:32:00 PM | 2016-032-4881-7 | 1 |

PAGE 2 OF 2

# EXHIBIT Q

# Mailings to Aztec Foreclosure



Certified Mail# 7014 2120 0000 3472 9938

**1889 Washington state Constitution Article I, Section 18: The Military shall be in strict subordination to the civil power.** Notice of Special Restricted Appearance: Barbara Ann Robinson Beneficial Owner 1ˢᵗ Lien Holder of BARBARA ANN ROBINSON ©®™

## CERTIFICATE OF SERVICE

It is hereby certified, that on the date noted below, **Robinson, Barbara Ann** mailed to:

**AZTEC FORECLOSURE CORPORATION OF WASHINGTON**

**1499 SE TECH CENTER PLACE, SUITE 255**

**VANCOUVER, WA 98683**

hereinafter, "Recipient," the documents and sundry papers pertaining to: Response to Notice of Trustee's Sale as follows:

1. Notice of Rescission of Signatures; 3 pages

2. Notice of Special Deposit; 3 pages

3. Demand and Notice of Default, Notice of Adverse Claim and Motion to Intervene with an Injunction ; 14 pages

4. Administrative Declaratory Judgment, by Notarial Protest. 6 pages

5. Copy of 12 CFR 226.23 (3) (h) Special Rules for Foreclosure; 1 page

6. Copy of 26 U.S. C. 856 (e) (1) Special Rules for foreclosure property; Foreclosure property defined; 1 page

7. Reference copy of this **Certificate of Service** by Certified Mail No: 70142120000034729938 Return Receipt attached by placing same in a postpaid envelope properly addressed to Recipient at the said address and depositing same at an official depository under the exclusive face and custody of the U.S. Postal Service within the State of Washington.

09/01/16

By: _Robinson, Barbara Ann_

Robinson, Barbara Ann, Beneficiary

Authorized Private Power of Attorney, Executor

and Administrative Office Located Near Post Office Box 60093

C/O 13540 SE 159ᵗʰ Place

Renton, Washington, 98058

Contact Number: 206-351-3461

**Page 1 of 1**
**ALL RIGHTS EXCLUSIVELY RESERVED**
**Robinson, Barbara Ann**

lease as in effect on whichever of the dates under subparagraph (B)(iii) is the latest, and

(ii) a lease of a property entered into after whichever of the dates under subparagraph (B)(iii) is the latest shall be treated as in effect on such date if—

(I) on such date, a lease of such property from the trust was in effect, and

(II) under the terms of the new lease, such trust receives a substantially similar or lesser benefit in comparison to the lease referred to in subclause (I).

**(D) Qualified lodging facility**

For purposes of this paragraph—

**(i) In general**

The term "qualified lodging facility" means any lodging facility unless wagering activities are conducted at or in connection with such facility by any person who is engaged in the business of accepting wagers and who is legally authorized to engage in such business at or in connection with such facility.

**(ii) Lodging facility**

The term "lodging facility" means a—

(I) hotel,

(II) motel, or

(III) other establishment more than one-half of the dwelling units in which are used on a transient basis.

**(iii) Customary amenities and facilities**

The term "lodging facility" includes customary amenities and facilities operated as part of, or associated with, the lodging facility so long as such amenities and facilities are customary for other properties of a comparable size and class owned by other owners unrelated to such real estate investment trust.

**(E) Operate includes manage**

References in this paragraph to operating a property shall be treated as including a reference to managing the property.

**(F) Related person**

Persons shall be treated as related to each other if such persons are treated as a single employer under subsection (a) or (b) of section 52.

**(e) Special rules for foreclosure property**

**(1) Foreclosure property defined**

For purposes of this part, the term "foreclosure property" means any real property (including interests in real property), and any personal property incident to such real property, acquired by the real estate investment trust as the result of such trust having bid in such property at foreclosure, or having otherwise reduced such property to ownership or possession by agreement or process of law, after there was default (or default was imminent) on a lease of such property or on an indebtedness which such property secured. Such term does not include property acquired by the real estate investment trust as a result of indebtedness arising from the sale or other disposition of property of the trust described in section 1221(a)(1) which was not originally acquired as foreclosure property.

**(2) Grace period**

Except as provided in paragraph (3), property shall cease to be foreclosure property with respect to the real estate investment trust as of the close of the 3d taxable year following the taxable year in which the trust acquired such property.

**(3) Extensions**

If the real estate investment trust establishes to the satisfaction of the Secretary that an extension of the grace period is necessary for the orderly liquidation of the trust's interests in such property, the Secretary may grant one extension of the grace period for such property. Any such extension shall not extend the grace period beyond the close of the 3d taxable year following the last taxable year in the period under paragraph (2).

**(4) Termination of grace period in certain cases**

Any foreclosure property shall cease to be such on the first day (occurring on or after the day on which the real estate investment trust acquired the property) on which—

(A) a lease is entered into with respect to such property which, by its terms, will give rise to income which is not described in subsection (c)(3) (other than subparagraph (F) of such subsection), or any amount is received or accrued, directly or indirectly, pursuant to a lease entered into on or after such day which is not described in such subsection,

(B) any construction takes place on such property (other than completion of a building, or completion of any other improvement, where more than 10 percent of the construction of such building or other improvement was completed before default became imminent), or

(C) if such day is more than 90 days after the day on which such property was acquired by the real estate investment trust and the property is used in a trade or business which is conducted by the trust (other than through an independent contractor (within the meaning of section (d)(3)) from whom the trust itself does not derive or receive any income).

For purposes of subparagraph (C), property shall not be treated as used in a trade or business by reason of any activities of the real estate investment trust with respect to such property to the extent that such activities would not result in amounts received or accrued, directly or indirectly, with respect to such property being treated as other than rents from real property.

**(5) Taxpayer must make election**

Property shall be treated as foreclosure property for purposes of this part only if the real estate investment trust so elects (in the manner provided in regulations prescribed by the Secretary) on or before the due date (including any extensions of time) for filing its return of tax under this chapter for the tax-

(g) *Tolerances for accuracy*—(1) *One-half of 1 percent tolerance.* Except as provided in paragraphs (g)(2) and (h)(2) of this section, the finance charge and other disclosures affected by the finance charge (such as the amount financed and the annual percentage rate) shall be considered accurate for purposes of this section if the disclosed finance charge:

(i) Is understated by no more than ½ of 1 percent of the face amount of the note or $100, whichever is greater; or

(ii) Is greater than the amount required to be disclosed.

(2) *One percent tolerance.* In a refinancing of a residential mortgage transaction with a new creditor (other than a transaction covered by § 226.32), if there is no new advance and no consolidation of existing loans, the finance charge and other disclosures affected by the finance charge (such as the amount financed and the annual percentage rate) shall be considered accurate for purposes of this section if the disclosed finance charge:

(i) Is understated by no more than 1 percent of the face amount of the note or $100, whichever is greater; or

(ii) Is greater than the amount required to be disclosed.

(h) *Special rules for foreclosures*—(1) *Right to rescind.* After the initiation of foreclosure on the consumer's principal dwelling that secures the credit obligation, the consumer shall have the right to rescind the transaction if:

(i) A mortgage broker fee that should have been included in the finance charge was not included; or

(ii) The creditor did not provide the properly completed appropriate model form in appendix H of this part, or a substantially similar notice of rescission.

(2) *Tolerance for disclosures.* After the initiation of foreclosure on the consumer's principal dwelling that secures the credit obligation, the finance charge and other disclosures affected by the finance charge (such as the amount financed and the annual percentage rate) shall be considered accurate for purposes of this section if the disclosed finance charge:

(i) Is understated by no more than $35; or

(ii) Is greater than the amount required to be disclosed.

[Reg. Z, 46 FR 20892, Apr. 7, 1981, as amended at 51 FR 45299, Dec. 18, 1986; 58 FR 40583, July 29, 1993; 59 FR 40204, Aug. 5, 1994; 59 FR 63715, Dec. 9, 1994; 60 FR 15471, Mar. 24, 1995; 61 FR 49247, Sept. 19, 1996; 66 FR 17339, Mar. 30, 2001; 72 FR 63974, Nov. 9, 2007; 73 FR 44601, July 24, 2008]

§ 226.24    Advertising.

(a) *Actually available terms.* If an advertisement for credit states specific credit terms, it shall state only those terms that actually are or will be arranged or offered by the creditor.

(b) *Clear and conspicuous terms.* Disclosures required by this section shall be made clearly and conspicuously.

(c) *Advertisement of rate of finance charge.* If an advertisement states a rate of finance charge, it shall state the rate as an "annual percentage rate," using that term. If the annual percentage rate may be increased after consummation, the advertisement shall state that fact. If an advertisement is for credit not secured by a dwelling, the advertisement shall not state any other rate, except that a simple annual rate or periodic rate that is applied to an unpaid balance may be stated in conjunction with, but not more conspicuously than, the annual percentage rate. If an advertisement is for credit secured by a dwelling, the advertisement shall not state any other rate, except that a simple annual rate that is applied to an unpaid balance may be stated in conjunction with, but not more conspicuously than, the annual percentage rate.

(d) *Advertisement of terms that require additional disclosures*—(1) *Triggering terms.* If any of the following terms is set forth in an advertisement, the advertisement shall meet the requirements of paragraph (d)(2) of this section:

(i) The amount or percentage of any downpayment.

(ii) The number of payments or period of repayment.

(iii) The amount of any payment.

(iv) The amount of any finance charge.

(2) *Additional terms.* An advertisement stating any of the terms in paragraph



Certified Mail# 7014 2120 0000 3472 9877

**1889 Washington state Constitution Article I, Section 18: The Military shall be in strict subordination to the civil power.** Notice of Special Restricted Appearance: Barbara Ann Robinson Beneficial Owner 1ˢᵗ Lien Holder of BARBARA ANN ROBINSON ©®™

# Notice of Rescission of Signatures

Robinson, Barbara Ann, GRANTOR/SOLE BENEFICIARY/
HOLDER IN DUE COURSE and Authorized Rep. for of
BARBARA ANN ROBINSON, E.I.N. ▓▓▓▓▓▓▓
c/o 13540 Southeast 159ᵗʰ Place
Renton, Washington 98058

ALL VENDORS/ALL GOVERNMENT ENTITIES, REAL, QUASI AND OTHERWISE, ALL TRADED AS PRIVATE & PUBLIC CORPORATIONS. ALL ENTITIES IN THE PAST, CURRENT AND FUTURE.

Respondents Nationstar Mortgage, Aztec Foreclosure Corporation

July 18, 2016

RE: RESCISSION OF SIGNATURES / WAIVER OF BENEFITS/PRIVILEGES / DISSOLUTION OF ALL ADHESION/UNILATERAL CONTRACTS / REVOCATION OF POWER(S) OF ATTORNEY IMPLIED AND/OR EXPRESSED, REVOCATION OF ALL TRUSTS/CONTRACTS IMPLIED AND/OR EXPRESSED INCLUDING ALL INITIALS, MARKS, ETC ON ALL CONTRACTS FOR CAUSE 12 CFR 226,23 ALSO TILA 226.23 APP'X.

SWORN DECLARATION UNDER PENALTY OF PERJURY – ACTUAL AND CONSTRUCTIVE NOTICE – SELF-EXECUTING RESCISSION OF ALL SIGNATURES, WAIVER OF BENEFITS & PRIVILEGES, DISSOLUTION OF ADHESION/UNILATERAL, ALL CONTRACTS, REVOCATION OF POWER(S) OF ATTORNEY, REVOCATION OF ALL TRUSTS/CONTRACTS.

Attention, NOTICE TO ALL VENDORS, PUBLIC & PRIVATE CORPORATIONS & GOVERNMENT AGENCIES:     I Robinson, Barbara Ann, THE GRANTOR/CREATOR of all Trusts/Contracts, a living man on the land until proven otherwise, do hereby rescind for cause of failure to disclose risks, perils, responsibilities, lack of valuable consideration, as well as non-disclosure of material facts including, but not limited to the fact that the "Borrower/Trustee in Error," BARBARA ANN ROBINSON by and through the undersigned's signature, created the energy for the credit used to fund all loans, taxes, services, CITY/COUNTY/STATE/ FOREIGN PRINCIPALS and subsequent fraudulent pilferage/obtainage, all signatures executed in my natural and representative capacities without exception on any and all offers, trusts, documents, instruments, process and contracts between December ⬤ 1953 through the date of this Actual and Constructive Notice through to the date of my natural death, issued to me or Ens Legis/legal fiction, BARBARA ANN ROBINSON, in all matters with the exception of any/all signatures executed for the purpose of Accepting for Value any such offers, documents, instruments, process actions and/or proceedings. – All such contracts, offers, documents, instruments, process, actions and or proceedings are



Certified Mail# 7014 2120 0000 3472 9877

**1889 Washington state Constitution Article I, Section 18: The Military shall be in strict subordination to the civil power.** Notice of Special Restricted Appearance: Barbara Ann Robinson Beneficial Owner 1st Lien Holder of BARBARA ANN ROBINSON ©®™

hereby ACCEPTED FOR VALUE and/or RETURNED FOR FULL CREDIT, by notice all such acceptance signatures whether expressed or implied remain in full force and effect.

All unconscionable contracts/trusts are subject to rescission under the common law for failure to make the proper disclosures in order to constitute an acceptance, where there is no meeting of the minds there is no contract as required by 12 CFR §226.23(a)(3) regarding notice of right to rescind as set forth in re Maxwell v. Fairbanks Capital Corporation, 281 B.R. 101, (2002); Banker. Lexis 759. The UCC addresses unconscionable in UCC §2-302.

I further waive and reject any and all benefits and/or privileges expressed, implied or otherwise arising from any such signatures, all resulting contracts, agreements or trusts resulting from force, under threat of being denied access to One's own credit among others, involuntary servitude and peonage by adhesion contract, committed against myself. Further, these adhesion contracts and any and all powers of attorney, contracts and all trusts whether expressed, implied or otherwise are hereby revoked, terminated, canceled nunc pro tunc from October 10, 1983 to 100 years from today's date.

## SWORN UNDER PENALTY OF PERJURY DECLARATION

I hereby Declare & Swear that I did not in the past, do not now or in the future intend and never do intend to purposely or otherwise avail myself or be held in economic and/or involuntary servitude, peonage, slavery, benefits, privileges, titles of nobility, Trusteeship and/or opportunities offered.

## SWORN DECLARATION OF GRANTOR STATUS
### CLAIM OF SOLE BENEFICIARYSHIP OF ALL TRUSTS

I, Robinson, Barbara Ann, herein "Affiant", the undersigned, being of sound mind and under no duress, being over the age of 18, do hereby certify, attest, affirm, Swear under Penalty of perjury and Declare that the following facts are true and correct, to wit:

1. As it has been declared and established by previous rescission of signature/ revocation of POA's (i.e. all grants of Power of Attorney) and Trusts public records doc #, I, Robinson, Barbara Ann, am the GRANTOR/TRUSTOR/ SETTLOR/SOLE BENEFICIARY OF THE CESTUI QUE TRUST, commonly known as BARBARA ANN ROBINSON; BARBARA ROBINSON, ANN ROBINSON;, BARBARA A ROBINSON., BARBARA, ANN, ROBINSON, I hereby declare, express and claim my GRANTOR status of CESTUI QUE TRUST & all TRUSTS encompassing and self-executing.

2. Therefore, as all trusts/contracts are derivations of the aforementioned master CESTUI QUE TRUSTS, OF WHICH I AM GRANTOR, Affiant asserts this Declaration. I, Robinson, Barbara Ann; am the

**ALL RIGHTS EXCLUSIVELY RESERVED**
**Robinson, Barbara Ann**



Certified Mail# 7014 2120 0000 3472 9877

<u>1889 Washington state Constitution Article I, Section 18: The Military shall be in strict subordination to the civil power.</u> Notice of Special Restricted Appearance: Barbara Ann Robinson Beneficial Owner 1ˢᵗ Lien Holder of BARBARA ANN ROBINSON ©®™

GRANTOR/TRUSTOR /SETTLOR/SOLE BENEFICIARY of the CESTUI QUE TRUST and all trusts that sprang forth out of the original Trust and any/all Trusts created by me or created unbeknownst to me. As GRANTOR, I appoint myself Sole Beneficiary of all Trusts, As the GRANTOR/ CREATOR and Sole Beneficiary, I will be appointing Trustees as, if and when I see fit, Orders I give, the Trustees I appoint will follow my orders to the letter, period.

3. There has been no other claimant known to Affiant, there never will be any other claimant for the GRANTORSHIP, TRUSTORSHIP/ SETTLORSHIP/ SOLE BENEFICIARYSHIP OF MY CESTUI QUE TRUST therefore I DEMAND all escrow (not services) be closed, assets liquidated and returned to me, the Grantor/Creator Settler/Sole Beneficiary & Holder in Due Course, immediately.

Executed without the UNITED STATES INC., I now affix my autograph & declare under penalty of perjury under the laws of the united states of America, Rescissions of Signatures, Revocations of POA's & Revocations of all Trusts/Contracts. Without Prejudice, U.C.C. 1-308.

by: _Robinson, Barbara Ann_
Robinson, Barbara Ann, Beneficial Owner, Special Executor
for BARBARA ANN ROBINSON EIN# ▓▓▓▓

NOTARY

IN WITNESS WHEREOF, _Barbara Ann Robinson_ has executed and delivered this Rescission of Signature as of the day and year above set forth.

King County           )
                      ) ss:
Washington State      )

I have hereunto set my hand and seal of office On this _18ᵗʰ_ Day of _July_ 2016

Notary Public _Heidi Elliott_

HEIDI ELLIOTT
COMMISSION EXPIRES
NOTARY PUBLIC
01-01-2020
STATE OF WASHINGTON

Page 3 of 4
ALL RIGHTS EXCLUSIVELY RESERVED
Robinson, Barbara Ann

# EXHIBIT R

# Notice of Trustees Sale

# NOTICE OF CONTINUANCE OF TRUSTEE'S SALE

AFC #:16-118804 CXE

I.

NOTICE IS HEREBY GIVEN that the undersigned Trustee, AZTEC FORECLOSURE CORPORATION OF WASHINGTON had recorded a Trustee's Notice of Sale on August 16, 2016, establishing the date, time and location of the Trustee's Sale as December 16, 2016, at the hour of 10:00 AM, At the 4th Ave. entrance to the King County Administration Building, 500 4th Avenue, Seattle, WA.

On December 16, 2016 the Trustee, AZTEC FORECLOSURE CORPORATION OF WASHINGTON, appeared and continued the scheduled Trustee's Sale by oral proclamation to January 20, 2017, at the hour of 10:00 AM, At the 4th Ave. entrance to the King County Administration Building, 500 4th Avenue, Seattle, WA;

on January 20, 2017, AZTEC FORECLOSURE CORPORATION OF WASHINGTON, appeared and continued the scheduled Trustee's Sale by oral proclamation to February 24, 2017, at the hour of 10:00 AM, At the 4th Ave. entrance to the King County Administration Building, 500 4th Avenue, Seattle, WA, at which time the trustee will sell at public auction to the highest and best bidder, payable at time of sale, the following described real property, situated in the County of King, State of Washington, to-wit:

LOT 9 OF CEDARWOOD DIVISION VI, ACCORDING TO THE PLAT THEREOF RECORDED IN VOLUME 217 OF PLATS, PAGE(S) 28 THROUGH 34, IN KING COUNTY, WASHINGTON.

Abbrev. Legal: LT 9, CEDARWOOD DIV VI
Tax Parcel No.: 147306-0090-01
Commonly known as:  13540 Southeast 159th Place, Renton, WA 98058

which is the subject of that certain Deed of Trust dated February 16, 2005, recorded February 18, 2005, as Auditor's File No. 20050218002006, records of King County, Washington, from **Barbara Robinson and Sugar Ray Robinson, Husband and Wife**, as Grantor, to Bishop & Lynch of King County as Trustee, to secure an obligation in favor of Mortgage Electronic Registration Systems, Inc.("MERS") as nominee for WMC Mortgage Corp. its successor and assigns, as Beneficiary, the beneficial interest now held by Wells Fargo Bank, National Association, As Trustee For Merrill Lynch Mortgage Investors Trust Series 2005-WMC2.

A list of the persons this Notice was sent to is attached hereto as exhibit "A".

FAIR DEBT COLLECTION PRACTICES ACT NOTICE: AZTEC FORECLOSURE CORPORATION OF WASHINGTON may be attempting to collect a debt and any information obtained may be used for that purpose. If a discharge has been obtained by any party through bankruptcy proceedings, this shall not be construed to be an attempt to

16-118804 CXE
Notice of Continuance

collect the outstanding indebtedness or to hold you personally liable for the debt.

Dated _20th_, January, 2017

AZTEC FORECLOSURE CORPORATION OF
WASHINGTON

By: _____
Amy Connolly
Asst V.P. / Assistant Sec.
3636 N. Central Ave., Suite 400
Phoenix, AZ  85012
(360) 253-8017  / (877) 430-4787

ADDRESS FOR PERSONAL SERVICE
Aztec Foreclosure Corporation of Washington
1499 SE Tech Center Place, Suite 255
Vancouver, WA 98683

STATE OF ARIZONA           )
                           ) SS.
COUNTY OF MARICOPA         )

This instrument was acknowledged before me this _20_ day of January, 2017, by Amy Connolly, Asst
V.P. / Assistant Sec.

_____
Notary Public in and
for the State of Arizona

My Commission Expires: _2-12-17_

" OFFICIAL SEAL "
Elaine Malone
Notary Public - Arizona
Maricopa County
My Commission Expires 2/12/2017

Barbara Robinson
16013540 SE 154th Place
Renton, Washington republic [98058]

United States District CourtClerk's
700 Stewart Street
Room 2310
Seattle, Washington 98101

FILED
LODGED
RECEIVED

APR 03 2017

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                        DEPUTY

MAIL

US POSTAGE P
$7.20

P

PRIORITY MAIL ®1-D

Origin: 98058
Destination: 98101
1 Lb 12.30 Oz
Mar 30, 17
5470730266-07

1005

Expected Delivery Day: 03/31/2017

USPS TRACKING NUMBE

9505 5134 9783 7089 0841 84